UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Stephen W. Silberstein,<br><br>                    Plaintiff,<br><br>          - against -<br><br>Aetna Inc., Mark T. Bertolini, Fernando Aguirre,<br>Frank M. Clark, Betsy Z. Cohen, Molly J. Coye,<br>Roger N. Farah, Barbara Hackman Franklin,<br>Jeffrey E. Garten, Gerald Greenwald, Ellen M.<br>Hancock, Richard J. Harrington, Edward J.<br>Ludwig, and Joseph P. Newhouse,<br><br>                    Defendants. | 13-CV-8759 (AJN)<br><br><u>ORAL ARGUMENT REQUESTED</u> |

**MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, New York 10017
(212) 450-4000
*Attorneys for Defendants*

Dated: February 10, 2014

# TABLE OF CONTENTS

P<small>AGE</small>

PRELIMINARY STATEMENT ........................................................................................1

BACKGROUND ...........................................................................................................3

    A.    Aetna Voluntarily Agrees to Enhance Its Disclosure of Certain
           Political Contributions ............................................................................4

    B.    2012 and 2013 Shareholder Proposals Regarding Political Contributions ................5

    C.    The Current Litigation ...........................................................................7

APPLICABLE PLEADING STANDARDS .................................................................8

ARGUMENT ................................................................................................................9

    I.    PLAINTIFF'S CLAIM BASED ON THE 2012 PROXY STATEMENT
         (COUNT I) MUST BE DISMISSED BECAUSE HE FAILS TO ALLEGE A
         MATERIAL MISSTATEMENT OR OMISSION AND IT IS TIME-BARRED
         IN ANY EVENT ....................................................................................9

         A.    Plaintiff Fails to Allege a Misstatement or Omission in the 2012 Proxy
              Statement, Let Alone One that Is Material .................................................10

              1.    Plaintiff Does Not Allege that Aetna's Audit Committee Did
                   Not Review the Company's Political Contributions Reports
                   Prior to Publication ........................................................10

              2.    The Alleged Misstatement Concerning the Accessibility of
                   Aetna's Political Contributions Reports on Aetna's Website Is
                   Immaterial and Non-Actionable as a Matter of Law .......................11

              3.    Aetna's Political Contributions Reports Are Not Incorporated
                   into Its Proxy Statements and Are Not Materially Misstated ...........12

         B.    Plaintiff's Claim Based on the 2012 Proxy Statement Is Time-Barred ........15

    II.    PLAINTIFF'S CLAIM BASED ON THE 2013 PROXY STATEMENT
         (COUNT II) ALSO MUST BE DISMISSED BECAUSE HE FAILS TO
         ALLEGE A MATERIAL MISSTATEMENT OR OMISSION .............................17

    III.    PLAINTIFF'S COMPLAINT MUST BE DISMISSED BECAUSE HE IS NOT
         ENTITLED TO THE EXCLUSIVELY EQUITABLE RELIEF HE SEEKS ..........19

IV.    THE COMPLAINT'S SILENCE CONCERNING THE INDIVIDUAL
        DEFENDANTS REQUIRES DISMISSAL OF THE COMPLAINT AS
        AGAINST THEM...............................................................................................22

CONCLUSION.............................................................................................................24

## TABLE OF AUTHORITIES

### CASES

PAGE(S)

Ashcroft v. Iqbal,
556 U.S. 662 (2009)..................................................................................................8

In re Bank of Am. Corp. Sec., Derivative, and Emp. Ret. Income Sec. Act (ERISA) Litig.,
757 F. Supp. 2d 260 (S.D.N.Y. 2010)......................................................................22

Barnum v. Millbrook Care Ltd. P'ship,
850 F. Supp. 1227 (S.D.N.Y. 1994).........................................................................9

Basic Inc. v. Levinson,
485 U.S. 224 (1988)................................................................................................15

Bolger v. First State Fin. Servs.,
759 F. Supp. 182 (D.N.J. 1991) .............................................................................20

Bond Opportunity Fund v. Unilab Corp.,
No. 99 Civ. 11074 (JSM), 2003 WL 21058251 (S.D.N.Y. May 9, 2003)...................... passim

Bond Opportunity Fund v. Unilab Corp.,
87 F. App'x 772 (2d Cir. 2004) ..........................................................................9, 13

Cartier v. Symbolix, Inc.,
454 F. Supp. 2d 175 (S.D.N.Y. 2006).....................................................................20

Ceres Partners v. GEL Assocs.,
918 F.2d 349 (2d Cir. 1990)...................................................................................15

DCML LLC v. Danka Bus. Sys. PLC,
No. 08 Civ. 5829 (SAS), 2008 WL 5069528 (S.D.N.Y. Nov. 26, 2008) ................................9

Design Strategy Inc. v. Davis,
469 F.3d 284 (2d Cir. 2006)...................................................................................19

DiFolco v. MSNBC Cable LLC,
622 F.3d 104 (2d Cir. 2010)....................................................................................8

ECA & Local 134 IBEW Joint Pension Trust of Chi. v. JPMorgan Chase Co.,
553 F.3d 187 (2d Cir. 2009)..............................................................................15, 19

In re Exxon Mobil Corp. Sec. Litig.,
500 F.3d 189 (3d Cir. 2007)...................................................................................16

Forest City Daly Hous., Inc. v. Town of N. Hempstead,
    175 F.3d 144 (2d Cir. 1999)..........................................................................20

Gibbons v. Malone,
    703 F.3d 595 (2d Cir. 2013)............................................................................8

In re Global Crossing, Ltd. Sec. Litig.,
    313 F. Supp. 2d 189 (S.D.N.Y. 2003)........................................................15, 16

Halebian v. Berv,
    644 F.3d 122 (2d Cir. 2011)............................................................................8

Hulliung v. Bolen,
    548 F. Supp. 2d 336 (N.D. Tex. 2008) ...........................................................14

In re JPMorgan Chase Sec. Litig.,
    363 F. Supp. 2d 595 (S.D.N.Y. 2005).............................................................9

Kelen v. World Fin. Network Nat'l Bank,
    763 F. Supp. 2d 391 (S.D.N.Y. 2011)............................................................20

Kennecott Copper Corp. v. Curtiss-Wright Corp.,
    584 F.2d 1195 (2d Cir. 1978).........................................................................11

Koppel v. 4987 Corp.,
    167 F.3d 125 (2d Cir. 1999)...........................................................................14

LC Capital Partners v. Frontier Ins. Grp.,
    318 F.3d 148 (2d Cir. 2003)...........................................................................16

Litwin v. OceanFreight, Inc.,
    865 F. Supp. 2d 385 (S.D.N.Y. 2011).......................................................13, 14

Maier-Schule GMC v. Gen. Motors Corp.,
    850 F. Supp. 1095 (W.D.N.Y. 1994) ..............................................................20

Markewich v. Adikes,
    422 F. Supp. 1144 (E.D.N.Y. 1976) ...............................................................14

McLendon v. Cont'l Can Co.,
    908 F.2d 1171 (3d Cir. 1990)..........................................................................20

MTD Serv. Corp. v. Weldotron Corp.,
    No. 93 Civ. 4980 (MP), 1994 WL 455154 (S.D.N.Y. Aug. 19, 1994)...................21

Ognibene v. Parkes,
    671 F.3d 174 (2d Cir. 2011)...........................................................................................19

Parnes v. Gateway 2000,
    122 F.3d 539 (8th Cir. 1997) .........................................................................................15

In re Pfizer Inc. S'holder Derivative Litig.,
    722 F. Supp. 2d 453 (S.D.N.Y. 2010)........................................................................9, 18

Poindexter v. EMI Record Grp., Inc.,
    No. 11 Civ. 599 (LTS)(JLC), 2012 WL 1027639 (S.D.N.Y. Mar. 27, 2012) ..........................9

Pridgen v. Andresen,
    No. 3-94-CV-851, 1995 U.S. Dist. LEXIS 21987 (D. Conn. Mar. 13, 1995) ........................20

Quigley Corp. v. Karkus,
    No. 09-1725, 2009 WL 1383280 (E.D. Pa. May 15, 2009)....................................................21

Salit v. Stanley Works,
    802 F. Supp. 728 (D. Conn. 1992)..................................................................................23

Silverstein v. Penguin Putnam, Inc.,
    368 F.3d 77 (2d Cir. 2004) ............................................................................................19

Socialist Workers Party v. Att'y Gen. of the U.S.,
    642 F. Supp. 1357 (S.D.N.Y. 1986)................................................................................20

Take-Two Interactive Software, Inc. v. Brant,
    No. 06 Civ. 5279 (LTS), 2010 WL 1257351 (S.D.N.Y. Mar. 31, 2010)................................15

United Canso Oil & Gas Ltd. v. Clark,
    497 F. Supp. 111 (S.D.N.Y. 1980).................................................................................21

Va. Bankshares, Inc. v. Sandberg,
    501 U.S. 1083 (1991)....................................................................................................12

Vides v. Amelio,
    265 F. Supp. 2d 273 (S.D.N.Y. 2003).............................................................................11

In re Westinghouse Sec. Litig.,
    832 F. Supp. 989 (W.D. Pa. 1993)..................................................................................14

## <u>Statutes & Rules</u>

Section 14(a) of the Securities Exchange Act of 1934, 15 U.S.C. § 78n(a) ......................... <u>passim</u>

Private Securities Litigation Reform Act of 1995, 15 U.S.C. § 78u-4(b)(1) .................................9

15 U.S.C. § 78r(c) .................................................................................................................15

28 U.S.C. § 1658(b) .............................................................................................................15

SEC Rule 14a-9, 17 C.F.R. § 240.14a-9 ................................................................. <u>passim</u>

SEC Rule 14a-101, 17 C.F.R. § 240.14a-101 Note D ....................................................13

Fed. R. Civ. P. 12(b)(6).......................................................................................................1, 8

Defendants Aetna Inc. ("Aetna" or the "Company"), and Mark T. Bertolini, Fernando Aguirre, Frank M. Clark, Betsy Z. Cohen, Molly J. Coye, Roger N. Farah, Barbara Hackman Franklin, Jeffrey E. Garten, Gerald Greenwald, Ellen M. Hancock, Richard J. Harrington, Edward J. Ludwig, and Joseph P. Newhouse (collectively, the "Individual Defendants"), by and through their undersigned attorneys, respectfully submit this memorandum of law in support of their motion to dismiss Plaintiff's complaint ("Complaint") pursuant to Federal Rule of Civil Procedure 12(b)(6).

## PRELIMINARY STATEMENT

Plaintiff seeks to employ this Court's equitable powers to award the "extraordinary" remedy of injunctive relief in the form of voiding prior shareholder votes from 2012 and 2013 and compelling the inclusion of certain shareholder proposals at Aetna's 2014 annual meeting.  Plaintiff asserts that the relief he seeks is warranted because Aetna's 2012 and 2013 Proxy Statements were materially misleading, in violation of Section 14(a) of the Securities Exchange Act of 1934 ("Exchange Act"), insofar as they failed to disclose certain information about the Company's political contributions.  Not only were the 2012 and 2013 Proxy Statements compliant with all laws and regulations and complete and accurate in all material respects, but Aetna also discloses voluntarily more information about its political contributions than what is required by law.

Since 2004, the Company has voluntarily published an annual Political Contributions and Related Activity Report ("Political Contributions Report" or "Report"), which discloses, among other things, extensive information about the Company's political and lobbying expenditures. The Political Contributions Reports are available on the Company's website.  Shareholder proposals advanced in 2012 and 2013 requested that Aetna expand its disclosures to include, among other things, contributions to Section 501(c)(4) and Section 527 entities under the United

States Tax Code—substantially identical information sought by Plaintiff through this litigation. Each of the proposals was put to Aetna's shareholders and rejected by overwhelming margins, with nearly 90% of the shares voting on the 2012 proposal voted against it and more than 93% of the shares voting on the 2013 proposal voted against it.

Plaintiff nevertheless contends that these prior shareholder votes should be voided and that the same shareholder proposals be resubmitted to shareholders in 2014 because the 2012 and 2013 Proxy Statements supposedly included false and misleading statements, rendering shareholders unable to have cast an informed vote and "unwitting agents of self-inflicted damage." (Compl. ¶¶ 37, 49.)  Plaintiff is wrong.  Neither the 2012 nor 2013 Proxy Statement was misleading, let alone in any material respect.

Plaintiff first asserts that the 2012 and 2013 Proxy Statements were misleading when they told shareholders that Aetna's Audit Committee reviews its Political Contributions Reports prior to publication.  (Id. ¶¶ 39, 51.)  Yet, Plaintiff does not allege that this statement is untrue (id.), and it therefore cannot give rise to a federal securities violation.  Plaintiff next claims that the 2012 Proxy Statement was false because it stated that Aetna's 2010 Political Contributions Report was "easily accessible" on the Company's website.  (Id. ¶ 40.)  The Company's statement—apart from being true—is not material and is non-actionable, as a statement of opinion, under the federal securities laws.  Moreover, any claim based on the 2012 Proxy Statement is barred by the applicable one-year statute of limitations.  Finally, Plaintiff asserts that each of the 2012 and 2013 Proxy Statements was materially misstated because the 2010 and 2011 Political Contributions Reports, respectively, contained certain discrepancies and were incorporated by reference into the Proxy Statements themselves.  (Id. ¶¶ 41, 52.)  But there are specific legal requirements for when a document is incorporated by reference into a proxy

statement, and those requirements are not met here.  Indeed, the 2012 and 2013 Proxy Statements expressly told shareholders that the Political Contributions Reports were <u>not</u> incorporated by reference.  Even if they were, the alleged discrepancies in the Reports are, as Plaintiff himself recognized, "small" (<u>id.</u> ¶ 28) and thus immaterial as a matter of law.

Plaintiff's Complaint should be dismissed for the additional reason that he is not entitled to the equitable relief he is seeking.  He has not identified any harm—let alone irreparable harm—that he will suffer if the Court does not grant the relief requested.  Plaintiff has several alternative remedies in the form of any and all actions available to him as an Aetna shareholder, which includes proposing shareholder resolutions to Aetna directly.  Plaintiff does not claim that he is precluded from participating in the shareholder process in any way.

For all of these reasons, and for the additional reasons set forth below, Plaintiff has failed to state a claim upon which relief can be granted, and the Complaint should be dismissed with prejudice.

## BACKGROUND

Aetna is one of the nation's leading providers of diversified health care benefits.  Its mission is to help people achieve health and financial security by providing easy access to safe, cost-effective, high-quality health care and by protecting their finances against health-related risks.  <u>See</u> Aetna Mission and Values, <u>http://www.aetna.com/about-aetna-insurance/aetna-corporate-profile/aetna_mission_statement.html</u> (last visited Feb. 9, 2014).

As a leader in the health care industry, Aetna helps shape public policy solutions to various issues affecting the industry.  One of the ways Aetna does this is through its sponsorship of a political action committee—financed by voluntary employee contributions—that makes contributions to federal and state candidates, parties, and committees.  (<u>See, e.g.</u>, 2010 Political Contributions Report, attached hereto as Ex. 1, at 4-5; 2011 Political Contributions Report,

attached hereto as Ex. 2, at 5-6.)  When permissible, Aetna also pays dues to state and federal trade associations and coalitions and has made contributions to tax-exempt organizations, such as those qualifying under Sections 501(c)(4) and 527 of the United States Tax Code.

A.   **Aetna Voluntarily Agrees to Enhance Its**
     **Disclosure of Certain Political Contributions**

Since at least 2004, Aetna has prepared and published voluntarily annual Political Contributions Reports that disclose the activities of Aetna's political action committee and other corporate campaign and lobbying contributions.[1]  During the 2006-2007 proxy season, two Aetna shareholders, Mercy Investment Program and Sisters of Mercy Regional Community of Detroit, filed resolutions requesting that Aetna make additional and more detailed disclosures of its use of corporate funds for political expenditures.  (Compl. ¶ 9.)  On January 22, 2007, these shareholders agreed to withdraw their proposal, and Aetna agreed to make certain voluntary disclosures outlined in a letter agreement between the Company and the two shareholders. Among other things, Aetna agreed that, with respect to corporate funds used for political purposes, it would disclose:

- "The total amount of corporate funds expended by Aetna for state and federal lobbying and for political purposes . . . ."

- "The portion of all coalition and trade association payments (total dollars) paid by Aetna and allocated for lobbying, political and other non-deductible purposes (such as grassroots expenditures)."

- "The identity of the top trade associations receiving Aetna corporate funds ($50,000 plus) and the portion of our payments allocated by such coalitions or trade associations to lobbying, political or other non-deductible activities."

---

[1] Political Contributions Reports from 2004 through 2012 are available on Aetna's website at http://www.aetna.com/about-aetna-insurance/initiatives/aetna-political-contributions-related-activity-reports.html.

(Id. ¶ 10.)  Aetna did not agree to disclose contributions made for educational purposes or to 501(c)(4) or 527 organizations.  Since 2007, Aetna has incorporated these agreed-upon disclosures into its Political Contributions Reports.

   Dating back to at least 2005, Aetna has contributed to the Democratic Governors Association (the "DGA") and the Republican Governors Association (the "RGA").  In 2011, for example, Aetna paid annual dues of $100,000 to each of the DGA and the RGA.  Aetna disclosed each dues payment in its 2011 Political Contributions Report.  (2011 Political Contributions Report, Ex. 2, at 15.)  Also in 2011, Aetna prepaid its 2012 annual dues of $250,000 to each of the RGA and DGA, which amounts were then disclosed to shareholders in Aetna's 2012 Political Contributions Report.  (2012 Political Contributions Report, attached hereto as Ex. 3, at 17.)  The DGA and RGA each disclosed a donation from Aetna of $350,000 in its 2011 tax filings with the IRS.  (Compl. ¶ 27; 2011 RGA Year-End Report Form 8872 ("2011 RGA Form 8872"), attached hereto as Ex. 4; 2011 DGA Year-End Report Form 8872 ("2011 DGA Form 8872"), attached hereto as Ex. 5; reports available at http://forms.irs.gov/app/pod/basicSearch/search?execution=e1s1&max=10&offset=20.)

   In 2011 Aetna also made contributions of approximately $3.3 million to the American Action Network ("AAN"), a 501(c)(4) organization, and $4.0 million for voter education initiatives to the U.S. Chamber of Commerce ("Chamber of Commerce").  (Compl. ¶ 29; 2013 Proxy Statement, attached hereto as Ex. 6, at 77.)  Thus, such contributions were not subject to disclosure pursuant to Aetna's prior 2007 agreement.

### B.  2012 and 2013 Shareholder Proposals Regarding Political Contributions

   During the 2012 proxy season, the Service Employees International Union Master Trust ("SEIU") proposed a shareholder resolution requesting that Aetna disclose additional

information regarding political contributions, including "[p]olicies and procedures for making indirect political contributions and expenditures with corporate funds, including the board's role (if any) in that process"; "[i]ndirect monetary and non-monetary political contributions or expenditures through contributions to tax-exempt social welfare entities"; and "all recipients and the amount paid to each recipient from Company funds used by the organizations described above." (Compl. ¶ 12; 2012 Proxy Statement, attached hereto as Ex. 7, at 82.) In effect, the SEIU proposed that Aetna disclose contributions made to 501(c)(4) and 527 organizations, which disclosures were not covered by Aetna's prior 2007 agreement.

The SEIU proposal was included in the 2012 Proxy Statement and put to a vote at Aetna's 2012 annual meeting. (Compl. ¶ 12.) Aetna's Board of Directors (the "Board") opposed the SEIU proposal and recommended that shareholders vote against it. (Id. ¶ 13.) The Board agreed with SEIU that "transparency and accountability with respect to political expenditures are important" and explained "[t]hat is why the Company publishes annually its Political Contributions and Related Activity Report," stating that Aetna's 2010 Report "is available on our website www.aetna.com." (Id.; 2012 Proxy Statement, Ex. 7, at 83.) The Board further stated:

> The Company complies fully with all state and federal laws concerning the disclosure of its political and lobbying activity. With respect to oversight, the Company's Audit Committee reviews the Company's Political Contributions Report prior to publication. . . .
>
> We believe that the information currently available to shareholders is easily accessible and understandable and, coupled with the oversight of the Company's political activities by the Board, is in the best interest of the Company.

(2012 Proxy Statement, Ex. 7, at 83.) Aetna's shareholders overwhelmingly rejected the SEIU proposal: nearly 90% of the shares voted at the meeting were voted against the proposal. (Aetna Inc., Item 5.07 Submission of Matters to a Vote of Security Holders (Form 8-K), at No. 4 (May 21, 2012), attached hereto as Ex. 8, at 2.)

6

During the 2013 proxy season, the Unitarian Universalist Association of Congregations ("UUAC") proposed a shareholder resolution regarding Board oversight of Aetna's political contributions.  (Compl. ¶ 23.)  The UUAC proposal requested, inter alia, that Aetna:

> Assign to the Board responsibility for (a) formulating and revising [Aetna's Political Contributions Policy (the "Policy")] and (b) establishing the parameters of Aetna's commitment to publicly disclose political expenditures (in addition to legal disclosure requirements).
>
> Assign to the Audit Committee responsibility for analyzing and reporting to the full Board annually on (a) compliance with the Policy[,] and (b) the risks associated with Aetna's political activities, including those undertaken through politically active intermediaries such as trade associations and social welfare organizations[.]

(Id.; 2013 Proxy Statement, Ex. 6, at 77.)  The UUAC's Supporting Statement argued that its proposed oversight was necessary because Aetna had donated "$4,000,000 to the US Chamber of Commerce for unspecified 'voter education initiatives' and $3,000,000 to the American Action Network, a social welfare organization that sponsors ads regarding political candidates, in 2011." (2013 Proxy Statement, Ex. 6, at 77.)

The UUAC proposal was included in the 2013 Proxy Statement and put to a vote at Aetna's 2013 annual meeting.  (Compl. ¶ 23.)  The Board opposed the UUAC proposal and recommended that shareholders vote against it.  (Id. ¶ 24.)  Aetna's shareholders overwhelmingly rejected the UUAC proposal with over 93% of the shares voting on the proposal voting against it.  (Aetna Inc., Item 5.07 Submission of Matters to a Vote of Security Holders (Form 8-K), at No. 7 (May 22, 2013), attached hereto as Ex. 9, at 3.)

### C.  The Current Litigation

Plaintiff filed this action on December 10, 2013.  Plaintiff alleges that the 2012 and 2013 Proxy Statements were false and misleading in violation of Section 14(a) of the Exchange Act and Rule 14a-9 thereunder.  (Compl. ¶¶ 43, 54.)  Plaintiff seeks exclusively equitable relief in the

form of an order (i) declaring void the votes of the Aetna shareholders rejecting the 2012 SEIU and the 2013 UUAC proposals; (ii) requiring Aetna to amend its Political Contributions Reports for 2006 through 2012 "to provide full and accurate information"; (iii) requiring Aetna to "inform shareholders that [it] provided inaccurate and incomplete information" in the 2012 and 2013 Proxy Statements; (iv) requiring Aetna to inform its shareholders of the judgment in this action; (v) requiring Aetna to resubmit the 2012 SEIU and 2013 UUAC proposals at its 2014 shareholder meeting; and (vi) awarding Plaintiff his fees and costs.  (Compl. ¶¶ A-I.)

## APPLICABLE PLEADING STANDARDS

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Gibbons v. Malone, 703 F.3d 595, 599 (2d Cir. 2013) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)).  A claim is not "plausible" if it rests on "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." Iqbal, 556 U.S. at 678.  Rather, a plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.  Determining whether a complaint states a claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense," and pleadings that "are no more than conclusions are not entitled to the assumption of truth." Id. at 679.

"[I]t is well established that on a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), the court may also rely upon 'documents attached to the complaint as exhibits and documents incorporated by reference in the complaint.'" Halebian v. Berv, 644 F.3d 122, 130 n.7 (2d Cir. 2011) (quoting DiFolco v. MSNBC Cable LLC, 622 F.3d 104, 111 (2d Cir. 2010)). Courts may also consider on a motion to dismiss any other documents "integral" to the complaint where the complaint "relies heavily upon [the document's] terms and effect." DiFolco, 622 F.3d

at 111.  "If a document relied on in the complaint contradicts allegations in the complaint, the

document, not the allegations, control, and the court need not accept the allegations in the

complaint as true."  Poindexter v. EMI Record Grp., Inc., No. 11 Civ. 599 (LTS)(JLC), 2012 WL

1027639, at *2 (S.D.N.Y. Mar. 27, 2012) (citing Barnum v. Millbrook Care Ltd. P'ship, 850 F.

Supp. 1227, 1232-33 (S.D.N.Y. 1994)).

## ARGUMENT

To state a claim for violation of Section 14(a) and Rule 14a-9, Plaintiff must allege facts

that show: (1) the proxy statement contained a material misrepresentation or omission, which

(2) caused Plaintiff's injury, and (3) the proxy solicitation itself, rather than the particular defect

in the solicitation materials, was an essential link in the accomplishment of the transaction.  See

Bond Opportunity Fund v. Unilab Corp., 87 F. App'x 772, 773 (2d Cir. 2004); In re Pfizer Inc.

S'holder Derivative Litig., 722 F. Supp. 2d 453, 463 (S.D.N.Y. 2010).  Under the Private

Securities Litigation Reform Act (the "PSLRA"), which applies to claims asserted under Section

14(a) and Rule 14a-9, Plaintiff must specify "each statement alleged to have been misleading,"

explain "the reason or reasons why the statement is misleading," and, for any allegations on

information and belief, "state with particularity all facts on which that belief is formed."  15

U.S.C. § 78u-4(b)(1); see DCML LLC v. Danka Bus. Sys. PLC, No. 08 Civ. 5829 (SAS), 2008

WL 5069528, at *1 (S.D.N.Y. Nov. 26, 2008) (heightened pleading standards of the PSLRA

apply to Section 14(a) claims); In re JPMorgan Chase Sec. Litig., 363 F. Supp. 2d 595, 636

(S.D.N.Y. 2005) (same).

## I.   PLAINTIFF'S CLAIM BASED ON THE 2012 PROXY STATEMENT (COUNT I) MUST BE DISMISSED BECAUSE HE FAILS TO ALLEGE A MATERIAL MISSTATEMENT OR OMISSION AND IT IS TIME-BARRED IN ANY EVENT

Count I of the Complaint asserts that Aetna's 2012 Proxy Statement was materially

misstated because (i) its statement that the Audit Committee reviews Aetna's Political

9

Contributions Reports prior to publication was misleading; (ii) it incorrectly stated that the

Political Contributions Reports and the information contained therein are "easily accessible and

understandable"; and (iii) the 2010 Political Contributions Report was incorporated by reference

into the 2012 Proxy Statement and rendered that statement inaccurate because of an admittedly

"small discrepanc[y]" (of less than $2,000) between the amounts donated to the DGA and RGA

and the amounts disclosed.  (See Compl. ¶¶ 28, 39-42.)  None of these allegations can support a

claim for relief under Section 14(a), and Count I is barred by the applicable one-year statute

of limitations.

### A.    Plaintiff Fails to Allege a Misstatement or Omission in the 2012 Proxy Statement, Let Alone One that Is Material

Of Plaintiff's three alleged misstatements in the 2012 Proxy Statement, one is not alleged

to be false, one is not actionable, one is not even in the Proxy Statement, and all are immaterial

as a matter of law.

> 1.    *Plaintiff Does Not Allege that Aetna's Audit Committee Did Not Review the Company's Political Contributions Reports Prior to Publication*

Plaintiff does not allege that the statement "the Company's Audit Committee reviews the

Company's Political Contribution Report prior to publication" (Compl. ¶ 39) is false.  Instead,

Plaintiff contends that the statement "was designed to persuade shareholders that members of the

Board reviewed the Company's political contributions" when allegedly "they did not."  (Id.)

Plaintiff alleges no support for this assertion, which alone requires dismissal of Plaintiff's claim.

Plaintiff also offers no basis to conclude that Aetna's Board did not in fact review the

Company's political contributions.  Indeed, Plaintiff concedes that the statement that Aetna's

Audit Committee "reviews the Company's Political Contribution Report prior to publication" is

true.  (See id. ¶ 22 ("According to this statement, the Board reviewed only that information

included in the Political Contribution Reports.").)  Plaintiff cannot state a claim based upon the

contention that a true statement is "designed" to mean something other than what it actually says.

See Bond Opportunity Fund v. Unilab Corp., No. 99 Civ. 11074 (JSM), 2003 WL 21058251, at

*5 (S.D.N.Y. May 9, 2003) (dismissing proxy misrepresentation claims where plaintiff's

allegations depended on "impermissible speculation and extensive extrapolation as to

defendants' purposes and motives") aff'd, 87 F. App'x 772 (2d Cir. 2004); Vides v. Amelio, 265

F. Supp. 2d 273, 280 (S.D.N.Y. 2003) (dismissing 14a-9 claim where plaintiff pled, without

basis, that proxy language was drafted in a "confusing manner").

2.     *The Alleged Misstatement Concerning the Accessibility of*
*Aetna's Political Contributions Reports on Aetna's Website*
*Is Immaterial and Non-Actionable as a Matter of Law*

Plaintiff takes issue with the statement in the 2012 Proxy Statement that the 2010

Political Contributions Report was "easily accessible and understandable" because, "[i]n reality,

the Political Activity and Contribution Reports were not easily accessible, but were concealed

behind a tab [on Aetna's website] entitled 'Health Care Initiatives.'" (Compl. ¶ 40.)  Plaintiff

offers no allegation that explains how or why the alleged inclusion of the Reports behind a tab

entitled "Health Care Initiatives" renders them inaccessible.  Plaintiff does not dispute that the

Reports are available on Aetna's website, and Plaintiff is notably silent as to the website's search

function, which readily pulls up all of the Company's Political Contributions Reports.  See

Aetna, About Us, http://www.aetna.com/about-aetna-insurance (last visited Feb. 9, 2014).

Plaintiff further fails to allege how or why the placement of the Reports on Aetna's website is

material or that he, or any other shareholder, was unable to find the information contained

therein.  To the contrary, Plaintiff relies extensively on the contents of the Political Contributions

Reports that he now contends were so difficult to find.  For all of these reasons, Plaintiff cannot

sustain a Section 14(a) claim on this basis.  See Kennecott Copper Corp. v. Curtiss-Wright Corp.,

584 F.2d 1195, 1200 (2d Cir. 1978) (reversing district court's finding that defendant's disclaimer of having conducted a "detailed study" of the transaction failed to adequately disclose that defendant had not conducted a "thorough investigation," noting that such a semantic distinction was an inadequate basis for liability because "nit-picking should not become the name of the game" and "[f]air accuracy, not perfection, is the appropriate standard") (internal citations omitted).

Moreover, the statement that the reports were "easily accessible" is a statement of opinion that is not actionable under the securities laws absent an allegation, made with particularity, of objective and subjective falsity. Bond Opportunity Fund, 2003 WL 21058251, at *5 (citing Va. Bankshares, Inc. v. Sandberg, 501 U.S. 1083, 1093-98 (1991) (holding that opinions are actionable only when it is shown that the speaker did not sincerely hold the opinion expressed and the opinion is false as shown by "objective evidence")). Such particularized factual allegations, if taken as true, "must show both that the directors did not actually hold the belief or opinion stated, and that the opinion stated was in fact incorrect." Id. No such allegations are found in the Complaint—indeed, the Complaint alleges nothing about Aetna's or the Individual Defendants' subjective belief regarding the accessibility of the Political Contributions Reports, let alone particularized factual allegations that, if true, would show the directors actually did not believe that the Reports were "easily accessible." (See infra Section IV.)

3. *Aetna's Political Contributions Reports Are Not Incorporated into Its Proxy Statements and Are Not Materially Misstated*

Plaintiff's final alleged misstatement concerning the 2012 Proxy Statement is that the 2010 Political Contributions Report was incorporated therein by reference and rendered the Proxy Statement materially misleading because the Report disclosed $200,000 in contributions to

the RGA and DGA when the contributions actually totaled $121,665—i.e., $1,665 more than the amount reflected in the Report.  Such a claim cannot be sustained.

First, Section 14(a) and Rule 14a-9 require Plaintiff to allege a misstatement in <u>proxy solicitation materials</u>.  <u>See</u> 17 C.F.R. § 240.14a-9(a) (prohibiting proxy solicitation "by means of a proxy statement . . . which . . . is false or misleading); <u>Bond Opportunity Fund</u>, 87 F. App'x at 773 ("In order to recover under Section 14(a) and Rule 14a-9, plaintiffs must show that . . . a <u>proxy statement contained</u> a material misrepresentation or omission.") (emphasis added). Plaintiff does not dispute that the Political Contributions Reports are published on Aetna's website and are not distributed with Aetna's proxy materials.  (<u>See</u> Compl. ¶¶ 13, 18, 25.) Plaintiff instead asserts that because the Political Contributions Reports are "referenced by" the 2012 Proxy Statements, the reports are thereby incorporated by reference.  (<u>See</u> <u>id.</u> ¶ 18.) Plaintiff is wrong.

In the context of required SEC filings, "'incorporation by reference' is a precise term of art" defined by SEC regulation.  <u>Litwin v. OceanFreight, Inc.</u>, 865 F. Supp. 2d 385, 394 n.6 (S.D.N.Y. 2011) (rejecting Section 14(a) claim alleging that certain materials referenced in a Form F-4 were incorporated by reference).  As such, SEC rules governing proxy statements dictate that documents are <u>not</u> incorporated into a proxy statement by reference <u>unless</u> the issuer expressly states "on the last page(s) of the proxy statement as to which documents, or portions of documents, are incorporated by reference."  17 C.F.R. § 240.14a-101 Note D.  The last page of Aetna's 2012 Proxy Statement expressly stated that "[t]he information contained on Aetna's website . . . <u>is not part of this proxy solicitation and is not incorporated by reference into this Proxy Statement or any other proxy materials.</u>" (2012 Proxy Statement, Ex. 7, at 84 (emphasis added).)  Accordingly, the 2010 Political Contributions Report was not incorporated into the

2012 Proxy Statement as a matter of law and cannot provide the basis for a Section 14(a) claim.

See Litwin, 865 F. Supp. 2d at 394 n.6 (explaining that materials are not deemed part of the

proxy materials if "the registrant does not use [the] term ["incorporation by reference"] in the

proxy, but merely alludes to other documents without expressly incorporating them by

reference"); Hulliung v. Bolen, 548 F. Supp. 2d 336, 340 (N.D. Tex. 2008) (holding proxy

statement's "mere mention" of 10-K's availability to shareholders did not rise to the level of

specific incorporation required by law); In re Westinghouse Sec. Litig., 832 F. Supp. 989, 1001

(W.D. Pa. 1993) ("Liability does not attach to statements made in annual reports that only

'accompany,' or are 'effectively' incorporated into proxy materials. . . . [Such reports] may only

support a claim for violation of Rule 14a-9 . . . when they are specifically incorporated by

reference into the proxy statement."); Markewich v. Adikes, 422 F. Supp. 1144, 1147 (E.D.N.Y.

1976) ("Absent a specific declaration of incorporation, a mere mention of the annual report does

not incorporate it by reference[,] . . . otherwise an annual report would automatically be

incorporated by reference in any proxy statement, whichever recognized the existence of, or

merely accompanies, an annual report."); see also Koppel v. 4987 Corp., 167 F.3d 125, 132 (2d

Cir. 1999) (finding that consultant report referenced in proxy solicitation was not part of

information available to shareholders in part due to solicitation disclaimer that "there is no

document not included herewith which is incorporated by reference").

Second, even if the 2010 Political Contributions Report had been incorporated into the

2012 Proxy Statement, which it was not, the Complaint would not support a Section 14(a) claim

because Plaintiff does not allege that the Report contained a material misstatement.  The sole

purported "misstatement," according to Plaintiff, is that the Report supposedly underreported

Aetna's donations to the RGA and DGA by $1,350 and $315, respectively.  (See Compl. ¶ 28.)

Plaintiff effectively concedes that such alleged underreporting is immaterial, himself calling the discrepancy "small."  (See id.)  The Report disclosed contributions to the RGA and DGA of $70,000 and $50,000, so the purportedly underreported amounts were only 1.93% and 0.63%, respectively, of the contributions to the RGA and DGA.  Even taking the allegations as true, these alleged discrepancies are immaterial as a matter of law because there is not "a substantial likelihood that a reasonable shareholder would consider it important in deciding how to [act]." ECA & Local 134 IBEW Joint Pension Trust of Chi. v. JPMorgan Chase Co., 553 F.3d 187, 197 (2d Cir. 2009) (quoting Basic Inc. v. Levinson, 485 U.S. 224, 231-32 (1988)); see also id. at 204 (affirming dismissal of Section 10(b) claim alleging a $2 billion misclassification; change in "accounting treatment of approximately 0.3% of JPM Chase's total assets [$2 billion of $715 billion] from trades to loans would not have been material to investors"); Parnes v. Gateway 2000, 122 F.3d 539, 547 (8th Cir. 1997) (finding that "[d]efendants' alleged overstatement of assets by $6.8 million was immaterial as a matter of law [because] [t]aken in context, this amount represented only 2% of Gateway's total assets").

### B.  Plaintiff's Claim Based on the 2012 Proxy Statement Is Time-Barred

Even if Plaintiff had alleged a Section 14(a) claim in Count I upon which relief could be granted—which he has not—Count I fails for the separate and independent reason that it is untimely.  Claims brought pursuant to Section 14(a) and Rule 14a-9 must be filed within one year of the discovery of the alleged violation.  15 U.S.C. § 78r(c); Ceres Partners v. GEL Assocs., 918 F.2d 349, 364 (2d Cir. 1990); Take-Two Interactive Software, Inc. v. Brant, No. 06 Civ. 05279 (LTS), 2010 WL 1257351, at *4 (S.D.N.Y. Mar. 31, 2010); In re Global Crossing,

Ltd. Sec. Litig., 313 F. Supp. 2d 189, 198 (S.D.N.Y. 2003).[2]  The one-year limitations period

begins to run after the plaintiff obtains actual knowledge of the facts giving rise to the action, or

notice of facts from which a duty of inquiry arises and from which, in the exercise of reasonable

diligence, an investor would have discovered such facts giving rise to the action.  LC Capital

Partners v. Frontier Ins. Grp., 318 F.3d 148, 154 (2d Cir. 2003); Bond Opportunity Fund, 2003

WL 21058251, at *12 (applying inquiry notice standard to Section 14(a) claims).

     The limitations period for Plaintiff's 2012 Proxy Statement claim began running on April

2, 2012, the date the 2012 Proxy Statement was filed.  A reasonably diligent plaintiff should

have discovered facts giving rise to knowledge of the alleged misstatements in the 2012 Proxy

Statement at the time it was filed and made available to shareholders.  That the 2010 Political

Contributions Report was not—in Plaintiff's opinion—"easily accessible" could be discovered as

soon as Plaintiff visited Aetna's website.  Further, the 2010 Political Contributions Report

disclosing Aetna's contributions to the DGA and RGA was published in 2011.  The IRS Forms

8872, upon which Plaintiff relies for the alleged $1,665 discrepancy in Aetna's "actual" donation

to the RGA and DGA, were posted to the IRS's website on January 31, 2012—before the 2012

Proxy Statement was even filed.  (See 2011 RGA Form 8872, Ex. 4; 2011 DGA Form 8872,

Ex. 5.)

     Plaintiff waited until December 10, 2013 to file this action—nearly twenty months after

the 2012 Proxy Statement was filed and nearly eight months after the statute of limitations

expired on April 2, 2013.  His claim, therefore, is time-barred and must be dismissed.  See, e.g.,

---

[2] The Sarbanes-Oxley Act of 2002 altered the statute of limitations period to two years for private causes of action under the securities laws "involv[ing] a claim of fraud, deceit, manipulation, or contrivance." 28 U.S.C. § 1658(b). Courts have uniformly held that this provision does not apply to claims under Section 14(a) because a Section 14(a) claim does not require a showing of fraudulent intent.  See, e.g., In re Exxon Mobil Corp. Sec. Litig., 500 F.3d 189, 198-99 (3d Cir. 2007); In re Global Crossing, Ltd. Sec. Litig., 313 F. Supp. 2d at 198 ("[B]y its plain text, the amendment does not apply to claims under sections 11 and 14.").

Bond Opportunity Fund, 2003 WL 21058251, at *12-13 (finding Section 14(a) claim time-barred where plaintiffs were made sufficiently aware of defendant's involvement in the alleged violation at the time of the proxy filing but filed their complaint nearly two years later).

## II.   PLAINTIFF'S CLAIM BASED ON THE 2013 PROXY STATEMENT (COUNT II) ALSO MUST BE DISMISSED BECAUSE HE FAILS TO ALLEGE A MATERIAL MISSTATEMENT OR OMISSION

Count II of the Complaint asserts that Aetna's 2013 Proxy Statement was materially misstated because (i) its statement that the Audit Committee reviews Aetna's Political Contributions Reports prior to publication was misleading; and (ii) the 2011 Political Contributions Report was incorporated by reference into the 2013 Proxy Statement and rendered that Proxy Statement inaccurate because (a) it did not disclose the correct amounts of Aetna's 2011 political contributions to the DGA and RGA, (b) it disclosed in a footnote (and in the wrong amount) a 2011 contribution to the Chamber of Commerce for voter education initiatives, and (c) it did not disclose a 2011 contribution to AAN, a 501(c)(4) organization. Just as Count I fails to state a claim for relief under Section 14(a), the same is true for Count II. The 2011 Political Contributions Report was not incorporated by reference into the 2013 Proxy Statement, and the Complaint fails to allege any material misstatements in the 2011 Report in any event.[3]

As discussed above, under the applicable SEC rules, documents are not incorporated by reference into a proxy statement unless the proxy materials themselves expressly say so.  (See supra Section I.A.3.)  Aetna's 2013 Proxy Statement, like Aetna's 2012 Proxy Statement, not

---

[3] Although Plaintiff contends that the 2013 Proxy Statement, like the 2012 Proxy Statement, was misleading because it allegedly stated that "the Company's Audit Committee reviews the Company's Political Contribution Report prior to publication," (Compl. ¶ 51), those words actually do not appear in the 2013 Proxy Statement.  (See 2013 Proxy Statement, Ex. 6.)  Plaintiff cannot assert a violation of Section 14(a) based upon what appears to be a cut-and-paste error in Plaintiff's Complaint.  In any event, for the reasons discussed above, supra Section I.A.1, Plaintiff never alleges this statement to be false and his claim should be dismissed on this ground alone.

only failed to incorporate by reference Aetna's 2011 Political Contributions Report, but it also

expressly told shareholders just the opposite.  The last page of Aetna's 2013 Proxy Statement

stated:

> Website addresses are included for reference only. The information contained on websites referred to in this Proxy Statement (other than Aetna's website to the extent specifically referred to herein as required by the SEC's rules) is not part of this proxy solicitation and is not incorporated by reference into this Proxy Statement or any other proxy materials.

(2013 Proxy Statement, Ex. 6, at 77-78 (emphasis added).)  The 2011 Report therefore cannot

provide the basis for a misstatement claim under Section 14(a) and Rule 14a-9.

In any event, none of the alleged inaccuracies in Aetna's 2011 Political Contributions

Report rise to the level of a material misstatement or omission.  Plaintiff's contention that the

2013 Proxy Statement is misleading because the 2011 Political Contributions Report failed to

disclose Aetna's donation to the AAN is unsupportable.  (See Compl. ¶ 29.)  The 2013 Proxy

Statement itself disclosed that donation.  As set forth above, the 2013 Proxy Statement included

a statement by the UUAC in support of its proposal which disclosed that Aetna "gave . . .

$3,000,000 to the American Action Network."  (2013 Proxy Statement, Ex. 6, at 77.)  Plaintiff

does not—because he cannot—allege that the Company was required to disclose its AAN

contribution under any state or federal law or SEC regulation.  Plaintiff, accordingly, cannot base

his claim on the supposed non-disclosure of the AAN contribution in Aetna's 2011 Political

Contributions Report.  See In re Pfizer Inc. S'holder Derivative Litig., 722 F. Supp. 2d at 463-65

(finding no material omission in proxy materials where plaintiff failed to identify applicable duty

to disclose and where other materials available to shareholders conveyed substance of

alleged omissions).

Furthermore, the very purpose of the UUAC proposal was to require Aetna to disclose

contributions made to 501(c)(4) and 527 entities, such as AAN, so shareholders knew that the

AAN contribution was not currently disclosed in the 2011 Political Contributions Report.  And

over 93% of the shares voted on the UUAC proposal were voted against it.

The remaining alleged inaccuracies in the 2011 Political Contributions Report also are

immaterial as a matter of law.  As explained above, a fact is not material unless a reasonable

shareholder would consider it important in deciding how to act or would believe that it altered

the "total mix" of information available.  See ECA & Local 134 IBEW, 553 F.3d at 197.  The

supposed discrepancy between the $100,000 contributions to the DGA and RGA disclosed in the

2011 Political Contributions Report and the $350,000 in contributions that these entities reported

in their IRS filings could have no such impact on a shareholder.  Aetna accurately disclosed the

amounts of its contributions to the DGA and RGA attributable to 2011; the $350,000 of

payments made in 2011 included prepaid dues for 2012, which were subsequently disclosed in

the Company's 2012 Political Contributions Report.  (See 2012 Political Contributions Report,

Ex. 3, at 17.)

## III.    PLAINTIFF'S COMPLAINT MUST BE DISMISSED BECAUSE HE IS
       NOT ENTITLED TO THE EXCLUSIVELY EQUITABLE RELIEF HE SEEKS

The Complaint must be dismissed for the additional and independent reason that Plaintiff

has failed to allege the essential prerequisite for the equitable relief that he seeks: irreparable

harm.[4]  "The grant of injunctive relief is an extraordinary measure."  Silverstein v. Penguin

Putnam, Inc., 368 F.3d 77, 84 (2d Cir. 2004).  A plaintiff seeking permanent injunctive relief

must demonstrate that he will suffer "irreparable harm," that is, an actual and imminent injury

that cannot be remedied by an award of money damages, if an injunction is not issued.  See

Ognibene v. Parkes, 671 F.3d 174, 182 (2d Cir. 2011) ("The party requesting permanent

_____

[4]  Because Plaintiff seeks exclusively equitable relief, his demand for a jury trial is improper.  See Design Strategy, Inc. v. Davis, 469 F.3d 284, 299 (2d Cir. 2006) ("[O]nly those claims that can be classified as suits at common law trigger the right to a jury trial.") (internal quotation marks omitted).

19

injunctive relief must demonstrate (1) irreparable harm . . . and (2) actual success on the merits.") (citing Cartier v. Symbolix, Inc., 454 F. Supp. 2d 175, 186 (S.D.N.Y. 2006)); see also Forest City Daly Hous., Inc. v. Town of N. Hempstead, 175 F.3d 144, 153 (2d Cir. 1999) ("Irreparable harm" requires an injury that is "neither remote nor speculative," but rather "actual and imminent."); Pridgen v. Andresen, No. 3-94-CV-851, 1995 U.S. Dist. LEXIS 21987, at *22 (D. Conn. Mar. 13, 1995) (irreparable harm required in order to grant injunctive relief in a Section 14(a) case); Bolger v. First State Fin. Servs., 759 F. Supp. 182, 191 (D.N.J. 1991) ("[P]ermanent injunctive relief will be granted 'only where a threat of harm exists, not just where potential harm exists.'") (quoting McLendon v. Cont'l Can Co., 908 F.2d 1171, 1182 (3d Cir. 1990)). "To obtain injunctive relief based on past injury the plaintiff must show a real and immediate threat that the injury will be continued or repeated." Maier-Schule GMC v. Gen. Motors Corp., 850 F. Supp. 1095, 1101 (W.D.N.Y. 1994) (quoting Socialist Workers Party v. Att'y Gen. of the U.S., 642 F. Supp. 1357, 1425 (S.D.N.Y. 1986)).

Plaintiff has failed to allege that he has been harmed at all or that he will suffer any future harm in the absence of injunctive relief. He does not allege that he—or any other shareholder— would have voted differently had Aetna corrected the alleged errors in the Political Contributions Reports. His formulaic recitation that Aetna's 2012 and 2013 Proxy Statements "render[ed] the shareholders unable to case [sic] an informed vote" on the prior SEIU and UUAC proposals (Compl. ¶¶ 43, 54), or rendered them "unwitting agents of self-inflicted damage" (Compl. ¶¶ 37, 49), cannot stand in for factual allegations of future irreparable harm. Accordingly, the Complaint must be dismissed. See Kelen v. World Fin. Network Nat'l Bank, 763 F. Supp. 2d 391, 394 (S.D.N.Y. 2011) (dismissing claim seeking equitable relief for plaintiff's failure to

"allege that she would suffer any injury whatsoever, let alone any irreparable harm, if a permanent injunction were not granted").

Plaintiff has several remedies available to him: any and all actions available to him as an Aetna shareholder.  Plaintiff has provided no reason why the Court should use its equitable powers to force the submission of shareholder resolutions when similar resolutions can be submitted in the absence of judicial intervention.  See, e.g., MTD Serv. Corp. v. Weldotron Corp., No. 93 Civ. 4980 (MP), 1994 WL 455154, at *1, 7 (S.D.N.Y. Aug. 19, 1994) (declining to set aside a previously held shareholders meeting despite the fact that "th[e] Court theoretically has the equitable power" to do so and dismissing the case as "stale and devoid of equity"); Quigley Corp. v. Karkus, No. 09-1725, 2009 WL 1383280, at *7 (E.D. Pa. May 15, 2009) (declining to "exercise [its] equitable powers to wade more deeply into the upcoming proxy fight by dictating various details" to resolve issues that are "largely moot").  Notably, entirely independent of and even before Plaintiff filed this lawsuit, Aetna had received, and will include in its forthcoming 2014 Proxy Statement, two shareholder proposals that are substantively the same as—if not virtually identical to—the two proposals Plaintiff is asking this Court to compel the Company to submit for its 2014 annual meeting.

Finally, Plaintiff's demand for equitable relief should be denied because of his delay in bringing this litigation.  The core of Plaintiff's Complaint is that Aetna's 2010 and 2011 Political Contributions Reports contained inaccuracies and omitted certain contributions.  (Compl. ¶¶ 41, 52.)  These reports were published in 2011 and 2012; the 2012 and 2013 Proxy Statements were filed on April 9, 2012 and April 5, 2013, respectively.  Plaintiff nevertheless waited until December 2013 to bring this suit and should not be rewarded for his delay by the award of equitable relief to which he is not entitled in any event.  See United Canso Oil & Gas Ltd. v.

Clark, 497 F. Supp. 111, 115 (S.D.N.Y. 1980) ("[T]he eleventh hour nature of the lawsuit

commenced only a few weeks before the stockholders' meeting and almost six months after the

allegedly defective SEC filings, justifies denial of injunctive relief.").

IV.   **THE COMPLAINT'S SILENCE CONCERNING THE
      INDIVIDUAL DEFENDANTS REQUIRES DISMISSAL
      OF THE COMPLAINT AS AGAINST THEM**

In addition to the Complaint's many defects that require its dismissal as against all

Defendants, the Complaint also must be dismissed as to the Individual Defendants because

Plaintiff has failed to plead any facts that would show, as required, that the supposed

misrepresentations he identifies were the result of any negligent conduct by the Individual

Defendants.

A Section 14(a) claim asserted against an individual defendant cannot be sustained on a

motion to dismiss absent factual allegations that would show that the individual should have

known of the inaccuracy of the alleged misstatements.  See Bond Opportunity Fund, 2003 WL

21058251, at *10 (dismissing proxy misrepresentation claim against individual defendants where

plaintiff failed to plead that company directors "should have known of the alleged flaws" in

proxy statement and where no facts were pled "that they were negligent in not discovering that

their belief was incorrect"); cf. In re Bank of Am. Corp. Sec., Derivative, and Emp. Ret. Income

Sec. Act (ERISA) Litig., 757 F. Supp. 2d 260, 324 (S.D.N.Y. 2010) (finding negligence

adequately pled where plaintiff "alleged that [defendant directors] should have been aware that

[proxy statement] did not disclose" alleged material fact) (emphasis added).  Here, Plaintiff

makes no allegation about the Individual Defendants—and certainly no allegation that they

"should have known" about the alleged misrepresentations.  Indeed, Plaintiff specifically alleges

that the members of Aetna's Board did not know of the allegedly omitted information.  (See

Compl. ¶ 22 ("[T]he Board, like the public, remained in the dark about all contributions not

22

specifically listed in the reports.").)  Consequently, Plaintiff's claim against the Individual

Defendants is inadequately pled and must be dismissed.[5]  See Salit v. Stanley Works, 802 F.

Supp. 728, 734 (D. Conn. 1992) ("Where plaintiffs have not pled that the individual defendants

knew of the facts allegedly omitted from the proxy statement (and, not being alleged to have

been personally involved in its issuance, therefore, had no duty to see that they were included in

the statement), plaintiffs have insufficiently pled a negligence claim.").

---

[5] Individual Defendant Gerald Greenwald should be dismissed with respect to Plaintiff's Count II claim for
the additional reason that he retired from Aetna's Board in 2012 and, thus, was not a member of the Board at the
time the 2013 Proxy Statement was issued.

## CONCLUSION

For the foregoing reasons, Plaintiff cannot state a claim upon which relief can be granted,

and Defendants respectfully request that the Court dismiss the Complaint with prejudice.

Respectfully Submitted,

New York, New York
February 10, 2014

DAVIS POLK & WARDWELL LLP

By: /s/ Dana M. Seshens
Dana M. Seshens
Jonathan D. Martin

450 Lexington Avenue
New York, New York 10017
(212) 450-4000

*Attorneys for Defendants Aetna Inc., Mark.
T. Bertolini, Fernando Aguirre, Frank M.
Clark, Betsy Z. Cohen, Molly J. Coye,
Roger N. Farah, Barbara Hackman
Franklin, Jeffrey E. Garten, Gerald
Greenwald, Ellen M. Hancock, Richard J.
Harrington, Edward J. Ludwig, and Joseph
P. Newhouse.*