## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| Stephen M. Silberstein, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | Case No.: 13-CV-8759 (AJN) |
| Aetna, Inc., Mark T. Bertolini, Fernando | ) | |
| Aguirre, Frank M. Clark, Betsy Z. Cohen, | ) | |
| Molly J. Coye, Roger N. Farah, Barbara | ) | |
| Hackman Franklin, Jeffrey E. Garten, Gerald | ) | |
| Greenwald, Ellen M. Hancock, Richard J. | ) | |
| Harrington, Edward J. Ludwig, and Joseph | ) | |
| P. Newhouse, | ) | |
| | ) | |
| Defendants. | ) | |

## AMENDED COMPLAINT

Plaintiff Stephen M. Silberstein ("Plaintiff") alleges the following for his complaint against the defendants.

## NATURE OF THE ACTION

1.     Plaintiff brings this action against defendants Aetna, Inc., ("the Company" or "Aetna"), Aetna's Chairman, Chief Executive Officer, and President Mark T. Bertolini ("Bertolini"), and members of Aetna's Board of Directors, including Fernando Aguirre, Frank M. Clark, Betsy Z. Cohen, Molly J. Coye, Roger N. Farah, Barbara Hackman Franklin, Jeffrey E. Garten, Gerald Greenwald, Ellen M. Hancock, Richard J. Harrington, Edward J. Ludwig, and Joseph P. Newhouse (collectively with Aetna and Mr. Bertolini, the "Defendants"), for false and misleading proxy statements in 2012 and 2013 that fail to comply with Securities and Exchange Commission ("SEC") regulations governing the content of proxy statements.  The proxy statements solicited shareholder rejection of resolutions requesting that the Board of Directors

amend the Company's political contributions policy at the May 18, 2012 and May 17, 2013 annual meetings of Aetna shareholders.

## JURISDICTION AND VENUE

2.      The claims herein arise under § 14(a) of the Securities Exchange Act of 1934, as amended (the "Exchange Act"), 15 U.S.C. § 78n(a), and Rule 14a-9, 17 C.F.R. § 240.14a-9, of the SEC regulations promulgated thereunder, Schedule 14A, 26 C.F.R. § 240.14a-101.

3.      The jurisdiction of this Court is founded on § 27 of the Exchange Act, 15 U.S.C. § 78aa, and on 28 U.S.C. § 1331.

4.      Venue is proper in this District pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1391(b) and (c).  Substantial acts in furtherance of the wrongdoing alleged and its effects occurred in this District.  Plaintiff and other shareholders purchased their Aetna shares through the New York Stock Exchange.  Additionally, Aetna transacts business in this District, and the Company solicited proxies from persons and entities in this District, including shareholders of all types, ranging from large institutional investors – such as the New York City Employees' Retirement System, the New York City Fire Department Pension Fund, and the New York City Board of Education Retirement System – to small individual investors.

## PARTIES

5.      Plaintiff Stephen M. Silberstein is a shareholder of Aetna and has been a shareholder continuously since on or about July 1, 2003, and throughout the time of the wrongs alleged herein to the present.  He presently owns 2,108 shares of Aetna common stock, valued at approximately $150,490 as of February 27, 2014.

6.      Defendant Aetna is incorporated in the Commonwealth of Pennsylvania and its principal place of business is Hartford, Connecticut. It has offices and does business across the country, including in this District. The Company is one of the nation's leading providers of health care, dental, pharmacy, group life, and disability insurance, and employee benefits. The Company's fiscal year ends on December 31. As of September 30, 2013, it had 367,050,000 common shares of stock issued and outstanding. The Company's common stock is traded on the New York Stock Exchange.

7.      Individual defendants Fernando Aguirre, Frank M. Clark, Betsy Z. Cohen, Roger N. Farah, Gerald Greenwald, Barbara Hackman Franklin, Jeffrey E. Garten, Ellen M. Hancock, Richard J. Harrington, Edward J. Ludwig, and Joseph P. Newhouse constituted the Company's Board of Directors and authorized the distribution of the Notice of Annual Meeting and Proxy Statement dated April 9, 2012 ("the 2012 Proxy Statement") to solicit the proxies of Aetna's shareholders to oppose, *inter alia*, a shareholder proposal the Service Employees International Union Master Trust ("SEIU") planned to present at the annual meeting on May 18, 2012. Defendant Bertolini signed a letter accompanying the 2012 Proxy Statement, specifically asking shareholders to vote their shares promptly. Each of the individually named defendants has at least minimum contacts with the United States.

8.      Individual defendants Fernando Aguirre, Frank M. Clark, Betsy Z. Cohen, Molly J. Coye, Roger N. Farah, Barbara Hackman Franklin, Jeffrey E. Garten, Ellen M. Hancock, Richard J. Harrington, Edward J. Ludwig, and Joseph P. Newhouse constituted the Company's Board of Directors and authorized the distribution of the Notice of Annual Meeting and Proxy Statement dated April 5, 2013 ("the 2013 Proxy Statement") to solicit the proxies of Aetna's shareholders to oppose, *inter alia*, a shareholder proposal the Unitarian Universalist Association

of Congregations ("UUAC") planned to present at the annual meeting on May 17, 2013.

Defendant Bertolini signed a letter accompanying the 2013 Proxy Statement, specifically asking

shareholders to vote their shares promptly.  Each of the individually named defendants has at

least minimum contacts with the United States.

## FACTUAL ALLEGATIONS

9.     In the 2006-2007 proxy season, Mercy Investment Services ("Mercy"), then two

separate investors – Mercy Investment Program and Sisters of Mercy Regional Community of

Detroit – filed a shareholder resolution requesting that Aetna disclose its use of corporate funds

for political expenditures.

10.     The resolution was withdrawn after Aetna agreed to implement a political

spending policy.  The policy, outlined in a letter of agreement dated January 22, 2007, states:

> Aetna will annually disclose (in either its Political Contributions Report or some
> newly created report and on its external website) the following information with
> respect to the use of corporate funds for political purposes:
>
> > The total annual amount of corporate funds expended by Aetna for state
> > and federal lobbying and for political purposes (which includes
> > compensation paid by Aetna for lobbying, outside consultant fees,
> > coalition and trade association payments used for lobbying, etc.).
> >
> > The portion of all coalition and trade association payments (total dollars)
> > paid by Aetna and allocated for lobbying, political and other non-
> > deductible purposes (such as grassroots expenditures).
> >
> > The identity of the top trade associations receiving Aetna corporate funds
> > ($50,000 plus) and the portion of our payments allocated by such
> > coalitions or trade associations to lobbying, political or other non-
> > deductible activities.

11.     In a letter dated July 9, 2012, sent to defendant Bertolini, Mercy explained that its

shareholder resolution had been withdrawn in good faith, with the understanding that the

agreement establishing oversight and transparency would be followed, revised as best practices

evolved, and would be used in preparing the Company's annual reports. Mercy then questioned

how Aetna's 2009 contribution to America's Health Insurance Plans, which later transferred a

staggering $86.2 million to the U.S. Chamber of Commerce ("Chamber of Commerce" or the

"Chamber") to oppose the then-pending Affordable Care Act, adhered to the negotiated policy.

12.     At Aetna's 2012 annual shareholder meeting, SEIU offered a shareholder

resolution that requested Aetna prepare and annually update a report, to be presented to the

pertinent Board committees and posted on Aetna's website. That resolution asked the Company

to disclose:

> (a) Policies and procedures for making indirect political contributions and
> expenditures with corporate funds, including the board's role (if any) in that
> process, and

> (b) Indirect monetary and non-monetary political contributions or expenditures
> through contributions to tax-exempt social welfare entities, as well as the portion
> of any dues or payments that are made to any trade association and that are used
> for an expenditure or contribution that, if made directly by the Company, would
> not be tax-deductible.

The SEIU proposal also recommended that these Company reports "identify all recipients and

the amount paid to each recipient from Company funds used by the organizations described

above."

13.     In the 2012 Proxy Statement, the Board of Directors solicited shareholder proxies

to be voted against SEIU's proposal, although the Company agreed "transparency and

accountability with respect to political expenditures are important." The Board reassured

investors by explaining, "That is why the Company publishes annually its Political Contributions

and Related Activity Report. Our 2010 report is available on our website **www.aetna.com**."

14.     With regard to oversight, the Board further reassured investors by stating that the

Company's Audit Committee "reviews the Political Contributions Report prior to publication"

and, "In addition, management regularly discusses public policy issues and political activities with our full Board."

15.     The Board also claimed the information available to shareholders is "easily accessible and understandable and, coupled with the oversight of the Company's political activities by the Board, is in the best interest of the Company.  As a result, we do not believe additional disclosure is warranted at this time."

16.     In summary, the Board argued, the SEIU shareholder proposal was "not in the best interests of Aetna or its shareholders."

17.     A transcript of the Company's May 18, 2012 Annual Shareholder Meeting reveals that when SEIU offered its shareholder proposal, defendant Bertolini personally argued against its adoption, contending that the Company already disclosed information regarding political contributions.  Moreover, although defendant Bertolini agreed "transparency and accountability are important," he insisted additional disclosures were not warranted.

18.     The Company's website on which Aetna relied in opposing the 2012 Proxy Statement claimed, in a paragraph captioned, "Aetna Legislative and Regulatory Activities":

> Aetna is committed to supporting the development of sound public policy in health care.  We work with many organizations across the political spectrum on a variety of health and other topics that impact our members, our customers, our providers, our industry, our employees, and the communities we serve.

Not until the second paragraph did the Company vaguely offer:

> We are a member of trade associations and coalitions that advocate for our industry and free enterprise, and we support policy development organizations and think tanks.  Support for third-party organizations is guided by our Involvement Criteria.  A list of the 501(c)(6) trade associations to which we contribute more than $50,000 annually can be found in our Political Contributions and Related Activity Report.

19.     A separate link on the Aetna website, "Involvement Criteria," included a single caption: "Associations, Coalitions and Other Groups," under which the Company provided the following criteria:

> The group's involvement and degree of relevance to Aetna's business and public policy priorities
>
> The group's general perspective and support of free enterprise and understanding of market-based principles in guiding approach to health care systems
>
> The experience and/or potential of the group to execute its activities in a sound and professional manner.

The Company further represented it conducts a legal review of all payments to assure compliance with all laws.  The Aetna website, however, provided no definition of "Associations, Coalitions and Other Groups," and offered no explanation as to who recommended and/or approved expenditures of corporate funds to these organizations.

20.     Aetna's website addressed the Board's role in approving political contributions under the heading "Oversight of Legislative, Regulatory and Political Activities," which included a subheading, "Role of the Aetna Board of Directors (acting on its own or through the Audit Committee)."  The language provided:

> Our Board of Directors annually reviews the company's list of Government Affairs Priorities, its Contributions Criteria, and its Involvement Criteria.  The Board reviews the company's Political Contribution and Related Activity Report prior to its publication and oversees compliance with policy and process.  Further, our Board reviews the independent audit reports of Aetna Inc. and the Aetna Political Action Committees.

21.     According to this statement, it appears the Board reviews only that information included in the Political Contribution and Related Activity Reports ("Political Contribution Reports").  Therefore, by its own assertion, the Board, like company shareholders, may be

uninformed about all contributions not specifically listed in the reports, including those made to the unnamed "coalitions and other groups," referred to under the "Involvement Criteria."

22.     During Aetna's 2013 annual shareholder meeting, the UUAC presented a shareholder proposal requesting that Aetna's Board of Directors amend the Company's Political Contributions Policy ("the Policy") to increase Board oversight of the Company's political expenditures.  The shareholder proposal specifically sought to:

> Assign to the Board responsibility for (a) formulating and revising the Policy, and (b) establishing the parameters of Aetna's commitment to disclosing its political expenditures (in addition to legal disclosure requirements);

> Assign to the Audit Committee responsibility for analyzing and reporting to the full Board annually on (a) compliance with the Policy; and (b) the risks associated with Aetna's political activities, including those undertaken through politically active intermediaries such as trade associations and social welfare organizations ("Intermediaries"); and

> Establish specific criteria tailored to analyzing whether to make payments to Intermediaries for political purposes, requiring articulation of the business rationale for each payment and consideration of the use(s) to which the funds will be put by the Intermediary.

23.     In the 2013 Proxy Statement, the Board of Directors recommended a vote against the proposal, explaining, in part:

> The Company is an active participant in the political process at all levels of government and seeks to promote political interests that are aligned with the business interests of the Company, its shareholders and its members.  Given the importance of this issue to the Company, the Company recently expanded the information available on its website about its policies and procedures regarding political contributions and the related oversight of those activities.  This information can be found at *http://www.aetna.com/about-aetna-insurance/initiatives/political-action-committee.html*.  In addition, as it has done for many years, the Company annually publishes a Political Contributions and Related Activity Report with extensive information about its political contributions.  Our 2011 and past reports are available on our website http://www.aetna.com/about-aetna-insurance/document-library/pac/2011-Aetna-PAC-annual-report.pdf.  The 2012 report will become available after it has been reviewed and approved by the Audit Company.

24.     In the Company's 2011 Political Contributions and Related Activity Report ("2011 Political Contribution Report") relied on, referenced by, and therefore incorporated in, the 2013 Proxy Statement and to which a website link was provided, Aetna described the report as detailing the corporate political contributions of Aetna and its subsidiaries, suggesting the report includes *all* of its corporate political contributions.

25.     Two of the contributions listed in the referenced 2011 Political Contribution Report are $100,000 to the Republican Governors Association ("RGA") and $100,000 to the Democratic Governors Association ("DGA").

26.     Tax forms filed by both the RGA and the DGA with the Internal Revenue Service ("IRS"), however, demonstrate these disclosures are grossly inaccurate.  As groups organized under section 527 of the Tax Code, the RGA and the DGA are required to reveal their donors. According to the RGA's IRS form 8872, in 2011 Aetna contributed $350,000 to the group. Similarly, the DGA's IRS form 8872 indicates that in 2011 it received $350,250 in contributions from Aetna subsidiary Aetna Schaller Anderson.  These undisclosed contributions increase Aetna's corporate political expenditure totals to the RGA and DGA for 2011 by 250% percent.

27.     These incorrect disclosures are not one-time errors.  The Company failed to fully disclose other contributions as well.  In 2009, for example, Aetna disclosed no contribution to either the RGA or the DGA, but the RGA reported receiving $100,000 from the Company and the DGA reported receiving $100,295, meaning Aetna's report was completely inaccurate.  In 2008, Aetna again disclosed no contributions to the RGA or the DGA, but in fact contributed $450 to the RGA and $100,125 to the DGA.  In 2007, Aetna disclosed no contribution to either the RGA or the DGA, but in fact contributed $50,000 to the RGA.  In 2006, the Company disclosed contributing $2,500 to the RGA and claimed no contributions to the DGA, but in

reality contributed $77,500 to the RGA and $50,000 to the DGA.  Even in 2010, when the disclosures most closely tracked the actual donations, there were small discrepancies: the Company reported contributing $70,000 to the RGA and $50,000 to the DGA, but tax forms indicate it actually contributed $71,350 to the RGA and $50,315 to the DGA.

28.  Further review of Aetna's 2010, 2011 and 2012 Political Contribution and Activity Reports reveals many other omissions and inaccuracies in addition to those pertaining to the RGA and DGA.  In 2010, federal and state campaign finance reports reveal the Company made at least nine contributions totaling a combined $17,150 that do not appear in its 2010 Political Activity and Contribution Report ("2010 Political Contribution Report").  The same year, federal and state campaign finance reports indicate the Company inaccurately reported at least another eight contributions, overreporting the dollar amount of some contributions by a combined total of $12,750, and underreporting the amounts of other contributions by a combined total of $1,500.  See Chart entitled, Omissions and Inaccuracies in Aetna's 2010-2012 Political Contribution Reports (attached as Exhibit 1).

29.  In 2011, federal and state campaign finance reports reveal the Company made at least four contributions totaling a combined $12,020 that do not appear in its 2011 Political Contribution Report.  The same year, federal and state campaign finance reports indicate the Company inaccurately reported at least another 11 contributions, overreporting the amount of some contributions by a combined total of $18,250, and underreporting the amounts of other contributions by a combined total of $1,000.  See Exhibit 1.

30.  Most significantly, Aetna never revealed in its 2011 Political Contribution Report the Company's $3,317,925 political contribution to the American Action Network ("AAN"), a § 501(c)(4) organization headed by former Sen. Norm Coleman (R-MN), although the group is

10

heavily involved in electoral politics and was a leading player in the 2012 elections.  Only because Aetna inadvertently revealed this $3,317,925 political contribution in a filing with the National Association of Insurance Commissioners ("NAIC"), and UUAC relied upon it in its statement in support of its shareholder resolution, did shareholders learn of it.  Further, Aetna also failed to correct or even address the omission in the 2013 Proxy Statement.

31.     Similarly, Aetna inadvertently revealed to the NAIC that in 2011, it made a political contribution of $4,479,200 to the Chamber of Commerce, which is well-known for its aggressive efforts to sway federal elections.

32.     While the Company buried the disclosure of a $4,000,000 payment to the Chamber of Commerce in a footnote in the 2011 Political Contribution Report, it underreported the payment by $479,200 – about 11 percent of the total amount.  In addition, Aetna falsely attributed this contribution as made to support "voter education initiatives."  A "voter education initiative" is generally understood as an initiative to increase voter registration and voting.  The Company's contribution to the Chamber of Commerce, however, had the undisclosed aim of supporting the Chamber's effort to defeat particular candidates for federal office.

33.     In November 2011, as part of what it referred to as the "largest voter education and grassroots mobilization campaign in its nearly 100 year history," the Chamber of Commerce began airing negative advertisements against members of Congress up for re-election in 2012 in Ohio, Iowa, Montana, Washington, Pennsylvania, and Nevada.  One example of its "voter education" effort was the Chamber's campaign against Sen. Sherrod Brown (D-OH).  The Chamber ran two advertisements against Sen. Brown.  One claimed Sen. Brown's energy policies would leave Ohio families in the cold, asserting "Brown voted to block energy production and increase energy taxes."  The second asserted Sen. Brown was "hiding from his

tax-raising, job killing record." PolitiFact, a news organization dedicated to helping citizens "find the truth in American politics," found the claims in both advertisements mostly false. Contributions made to the Chamber of Commerce to fund such ads, which were aimed at voters in the run up to hotly contested elections, clearly were political and should have been disclosed pursuant to Aetna's self-touted disclosure policy.

34.     So too, the contribution to AAN had a defined and deliberate – yet undisclosed – political purpose. According to its website, AAN "creates, encourages and promotes center-right policies based on the principles of freedom, limited government, American exceptionalism, and strong national security." The group purportedly pursues this "primary goal" by "engaging the hearts and minds of the American people and spurring them into active participation in our democracy." In 2012, AAN spent considerable funds supporting or opposing at least 35 candidates for the United States Congress. AAN also launched a $1.2 million dollar ad campaign to repeal the Affordable Care Act, a law that, in public, defendant Bertolini had supported as a "good market-based approach for providing access to health insurance." AAN specifically focused on competitive House races where the state parties had insufficient resources to support AAN's preferred candidates. In a July 2012 press release, AAN touted its planned political actions, including "direct mail, print advertising and robocalls," as well as web videos targeted at "select liberal members." Given these activities, Aetna's contribution to AAN was clearly political and should have been disclosed on the Company's 2011 Political Contribution Report.

35.     Notably, once confronted with the inadvertently disclosed payments to AAN and the Chamber of Commerce, the Company quickly amended its NAIC filings to delete all reference to them.

36.     In 2012, the most recent year for which Aetna has issued a Political Contribution and Activity Report ("2012 Political Contribution Report"), the pattern of omissions and inaccuracies and continued.  Federal and state campaign finance reports reveal Aetna made at least eight contributions totaling a combine $23,500 that do not appear in its Political Contribution Report.  The same year, federal and state campaign finance reports indicate Aetna inaccurately reported at least another 10 contributions, overreporting the amount of some contributions by a combined total of $8,500 and underreporting the amount of other contributions by a combined total of $1,000.  See Exhibit 1.  In addition, the report erroneously reported seven donations as made to members of the Texas State Legislature, when, in fact, they were made to members of the Tennessee State Legislature.

37.     Aetna's ongoing pattern and practice of failing to disclose and hiding contributions, including the contributions to the RGA, DGA, AAN and countless other state and federal candidates, campaign committees, and political action committees, its prompt amendment to its NAIC filing to remove reference to the AAN and Chamber of Commerce contributions, as well as its inaccurate characterization of its contribution to the Chamber of Commerce in its 2011 Political Contribution Report and its failure to include the AAN contribution in that report, demonstrates Aetna has made – and likely continues to make – other contributions without disclosing them.  While the RGA and the DGA must reveal their contributors, other organizations – including trade associations and social welfare organizations – need not and do not disclose this information.  Neither AAN nor the Chamber of Commerce are required to or do reveal the identities of their donors so it is impossible to confirm the accuracy of Aetna's partial, accidental disclosures.  These organizations and others like them,

however, use contributed funds for overtly political purposes such as running vitriolic political advertisements urging voters to cast votes against particular candidates.

38.     Ironically, in the same 2013 Proxy Statement in which Aetna refers shareholders to the deficient 2011 Political Contribution Report that fails to include the Company's AAN contribution and both understates and mischaracterizes its Chamber of Commerce contribution, in addition to other omissions and inaccuracies, the Company touted its alleged commitment to being transparent about those donations.

39.     In the 2013 Proxy Statement, the Board of Directors explained

Given the importance of this issue to the Company, the Company recently expanded the information available on its website about its policies and procedures regarding political contributions and the related oversight of those activities. This information can be found at http://www.aetna.com/about-aetna-insurance/initiatives/political-action-committee.html. In addition, as it has done for many years, the Company annually publishes a Political Contributions and Related Activity Report with extensive information about its political contributions. Our 2011 and past reports are available on our website http://www.aetna.com/about-aetna-insurance/document-library/pac/200-Aetna-PAC-annual report.pdf. The 2012 report will become available after it has been reviewed and approved by the Audit Committee.

The Company complies fully with all state and federal laws concerning the disclosure of its political and lobbying activity. In addition, it makes available additional information beyond that required by current laws and regulations. The 2012 Center of Political Accountability CPA-Zicklin Index of Corporate Accountability and Disclosure ("Zicklin Index") ranked Aetna 15th among the top 200 companies in the S&P 500 Index . . . The Zicklin Index is intended to provide a comprehensive portrait of disclosure practices of the largest U.S. public companies.

The proposal asks that the Board amend its political contributions policy to include provisions regarding Board oversight of the Company's political expenditures. We do not believe such amendment is necessary because the Board (acting on its own or through the Audit Committee) already oversees the Company's political expenditures. As outlined in more detail on our political contributions website, the Board currently has a robust oversight role over the Company's political contributions, policies and practices. Among other activities, the Board reviews the Company's list of government affairs priorities, reviews the Company's Political Contributions and Related Activities Report and oversees compliance with political contribution policy and process.

40.     Thus, in its statement opposing the UUAC resolution, the Board stressed the importance of the issue to the Company and suggested the Company goes well beyond expectations to provide meaningful transparency about its political contributions. Notably, however, in 2013 Aetna lost the 15th place ranking on the Zicklin Index of which it had boasted. In fact, as a direct result of revelations about the Company's true spending, Aetna fell to number 52 on the Index, singling out the Company's performance in a footnote, stating:

> In June 2012, Aetna inadvertently disclosed in its filings to the National Association of Insurance Commissioners that it gave $4.05 million in donations to the U.S. Chamber of Commerce and $3 million to the American Action Network, a politically active 501(c)(4) group. Aetna disclosed its payment to the U.S. Chamber as having been used for "voter education initiatives" in its disclosure report for 2011; the company continues to not disclose its payments to 501(c)(4) groups. Some critics of Aetna noted that the phrase "educational initiatives" is often used as a euphemism for issue ads. See CNN Money article, "Oops! Aetna discloses political donations," published on June 15, 2013, and Bloomberg Business News, "NY state urges Aetna to reveal political spending," published December 20, 2012.

41.     Thus, Aetna has boasted to its shareholders that its political contributions are the model of transparency, relying on the Zicklin Index to buttress those claims, while simultaneously secretly making political donations that, once exposed, undermine those very claims – so much so that the Zicklin Index singled Aetna out for criticism in its most recent report.

42.     Defendant directors claim to have reviewed the Political Contribution Reports and oversee compliance with policy and process. If true, defendant directors were aware the Political Contribution Reports omitted material information and were misleading, but nevertheless allowed the Proxy Statements, which referred shareholders to the reports, to omit material facts about the deficient nature of the reports. Alternatively, in the exercise of reasonable care, defendants should have known the Political Contribution Reports omitted material information

and were misleading and, therefore, that the Proxy Statements were materially deficient, but nevertheless took no steps to remedy or inquire about the deficiencies.

## COUNT I

For Violation of Section 14(a) of the Exchange Act, 15 U.S.C. § 78n(a)
and SEC Rule 14a-9, 17 C.F.R. § 240.14a-9 (2012 Proposal)

43.     Plaintiff repeats and reincorporates by reference the allegations contained above.

44.     SEIU's shareholder proposal required the approval of the Company's shareholders to be adopted.

45.     Individual defendants Fernando Aguirre, Frank M. Clark, Betsy Z. Cohen, Roger N. Farah, Gerald Greenwald, Barbara Hackman Franklin, Jeffrey E. Garten, Ellen M. Hancock, Richard J. Harrington, Edward J. Ludwig, and Joseph P. Newhouse are now, and have been at all relevant times, the members of the Board of Directors of the Company with the exception of Gerald Greenwald who retired from the Board in May 2012.  Defendant Bertolini is now, and has been at all relevant times, the Chairman, Chief Executive Officer and President of the Company.

46.     In the 2012 Proxy Statement, all the Defendants opposed the SEIU shareholder proposal and recommended a vote against it.  Defendants used the mails and/or a means or instrumentality of interstate commerce to transmit the 2012 Proxy Statement.

47.     With respect to the solicitation of proxies for the annual meeting of shareholders in 2012, the 2012 Proxy Statement contains materially false and misleading statements and omits material facts, as set forth above.  As a result, the 2012 Proxy Statement renders the shareholders unwitting agents of self-inflicted damage.

48.     Defendants' false and misleading statements were intended to persuade shareholders to vote against the SEIU shareholder proposal.

49.     First, Defendants' assertion in the 2012 Proxy Statement that "the Company's Audit Committee reviews the Company's Political Contribution Report prior to publication," was designed to persuade them that members of the Board reviewed the Company's political contributions. Either defendant Directors knew about the false and misleading nature of the Political Contribution Reports but nevertheless allowed the Proxy Statement to refer shareholders to those reports without advising shareholders of the reports' deficiencies, or defendant Directors should have been aware of the false and misleading statements in the reports and taken steps to remedy or inquire about them.

50.     Second, the 2010 Political Contribution Report referenced and relied on by the Company, and a link to which was provided in the 2012 Proxy Statement, omitted material information and included inaccurate information. In addition, given the Company's pattern and practice of failing to include political contributions in its Political Contribution Reports, and its pattern of making misleading statements about its political activities for the purpose of giving shareholders the impression that the Company was fully disclosing its political activity when it was not, it is likely Aetna made other contributions not included on the 2010 Political Contribution Report.

51.     Had they been aware of the false and misleading statements in the 2012 Proxy Statement and the omissions and inaccuracies – as well as the history of omissions and inaccuracies – in the annual Political Contribution Reports cited to in the 2012 Proxy Statement, there is a substantial likelihood Company shareholders would have considered this information material in deciding how to vote on the SEIU shareholder proposal.

52.     Therefore, the 2012 Proxy Statement failed to provide the Company's shareholders with material information and provided them with materially misleading

information, thereby rendering the shareholders unable to cast informed votes on the SEIU

shareholder proposal in violation of § 14(a) of the Exchange Act and SEC Rule 14a-9 and the

resolution failed to pass.

53.     This Count is brought within the time permitted by law.

## COUNT II

For Violation of Section 14(a) of the Exchange Act, 15 U.S.C.§ 78n(a)
and SEC Rule 14a-9, 17 C.F.R. § 240.14a-9 (2013 Proposal)

54.     Plaintiff repeats and reincorporates by reference the allegations contained above.

55.     UUAC's shareholder proposal required the approval of the Company's

shareholders to become adopted.

56.     The individual defendants Fernando Aguirre, Frank M. Clark, Betsy Z. Cohen,

Molly J. Coye, Roger N. Farah, Barbara Hackman Franklin, Jeffrey E. Garten, Ellen M.

Hancock, Richard J. Harrington, Edward J. Ludwig, and Joseph P. Newhouse are now, and have

been at all relevant times, the members of the Board of Directors of the Company. Defendant

Bertolini is now, and was at all relevant times, the Chairman, Chief Executive Officer and

President of the Company.

57.     In the 2013 Proxy Statement, all the Defendants opposed the proposal and

recommended a vote against it. Defendants used the mails and/or a means or instrumentality of

interstate commerce to transmit the 2013 Proxy Statement.

58.     With respect to the solicitation of proxies for the annual meeting of shareholders

in 2013, the 2013 Proxy Statement contains materially false and misleading statements and omits

material facts, as set forth above. As a result, the 2013 Proxy Statement renders the shareholders

unwitting agents of self-inflicted damage.

59.     Defendants' false and misleading statements were designed to persuade shareholders to vote against the UUAC shareholder proposal.

60.     First, Defendants' assertion in the 2013 Proxy Statement, that "the Company's Audit Committee reviews the Company's Political Contribution Report prior to publication," was designed to persuade shareholders that members of the Board reviewed the Company's political contributions.  Either defendant Directors knew about the false and misleading nature of the Political Contribution Reports but nevertheless allowed the Proxy Statement to refer shareholders to those reports without advising them of the reports' deficiencies, or defendant Directors should have been aware of the false and misleading statements in the reports and taken steps to remedy or inquire about them.

61.     Second, Defendants represented that information regarding the Company's political contributions already was disclosed on the Company's website, and relied on, referenced, and provided a website link to the Company's 2011 Political Contribution Report. The 2011 Political Contribution Report, however, included inaccurate information and omitted information about significant political contributions.  Further, in its statement opposing UUAC's shareholder proposal, the Board referenced all of the Company's prior political contribution reports, all of which provide significantly inaccurate information.

62.     Had they been aware of the omissions and inaccuracies – as well as the history of omissions and inaccuracies – in the Political Contribution Reports cited to in the 2013 Proxy Statement, there is a substantial likelihood Company shareholders would have considered this information material in deciding how to vote on the UUAC shareholder proposal.

63.     Therefore, the 2013 Proxy Statement failed to provide the Company's shareholders with material information and provided them with materially misleading

information, thereby rendering the shareholders unable to cast informed votes on the UUAC

shareholder proposal in violation of § 14(a) of the Exchange Act and SEC Rule 14a-9, and the

resolution failed to pass.

64.     This Count is brought within the time permitted by law.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief and judgment as follows:

A.     Declaring void the vote of the Aetna shareholders in opposition to the 2012 SEIU

shareholder resolution;

B.     Declaring void the vote of the Aetna shareholders in opposition to the 2013

UUAC shareholder resolution;

C.     Requiring Defendants to amend the Company's Political Contribution Reports for

the years 2006-2012 to provide full and accurate information regarding all of the Company's

political contributions;

D.     Requiring Defendants to inform shareholders that the Company provided

inaccurate and incomplete information in the 2012 Proxy Statement in its statement in opposition

to the SEIU shareholder proposal;

E.     Requiring Defendants to inform shareholders that the Company provided

inaccurate and incomplete information in the 2013 Proxy Statement in its statement in opposition

to the UUAC shareholder proposal;

F.     Requiring Defendants to inform Aetna shareholders of the judgment in this

action;

G.     Requiring Defendants to resubmit the SEIU and UUAC shareholder proposals at

the Company's 2014 shareholder meeting;

H.      Appointing an individual within the Company, who reports directly to the Board of Directors, with the responsibility for ensuring that all future Company Political Contribution Reports accurately and completely reflect the Company's political contributions.

I.      Awarding Plaintiff his reasonable costs and expenses incurred in this action, including reasonable experts' and attorneys' fees to the full extent permitted by law; and

J.      Granting such other, further relief as this Court deems just and proper.

Respectfully submitted,

Melanie Sloan (DC 434584)
Anne Weismann
Citizens for Responsibility and Ethics
   in Washington
1400 Eye Street, NW, Suite 450
Washington, DC 20005
202-408-5565 (phone)
202-588-5020 (fax)
msloan@citizensforethics.org

# EXHIBIT 1

## Omissions and Inaccuracies in Aetna's 2010-2012 Political Contribution Reports

**OMISSIONS**

| Year | ST | Candidate or Committee | FEC/State Authorities [1] | Aetna's Disclosures [2] | Type | Total | Source |
|---|---|---|---|---|---|---|---|
| 2010 | DC | AHIP PAC | $5,000 | $0 | Undisclosed | | Aetna PAC, FEC Form 3X, 2010 September Monthly Report, Sept. 15, 2010. |
| 2010 | DC | PCMA PAC | $5,000 | $0 | Undisclosed | | Aetna PAC, FEC Form 3X, 2010 September Monthly Report, Sept. 15, 2010. |
| 2010 | FL | Sen. Bill Montford (D) | $500 | $0 | Undisclosed | | FL Div. of Elections, Contributions Search, Contributor Lookup, Aetna, 2010. |
| 2010 | FL | U.S.–Cuba Democracy PAC | $300 | $0 | Undisclosed | | Aetna PAC, FEC Form 3X, 2010 Year-End Report, Amend., Mar. 14, 2011. |
| 2010 | GA | Rep. Jerry Keen (R) | $500 | $0 | Undisclosed | | GA Gov. Trans. & Camp. Fin. Comm., Contributions Search, Contributor Lookup, Aetna, 2010. |
| 2010 | GA | Sen. David Shafer (R) | $1,000 | $0 | Undisclosed | | GA Gov. Trans. & Camp. Fin. Comm., Contributions Search, Contributor Lookup, Aetna, 2010. |
| 2010 | NY | Rob Astorino (R) | $2,850 | $0 | Undisclosed | | NY Board of Elections, Contributor Lookup, Aetna, 2010. |
| 2010 | OR | Rep. Greg Walden (R) | $1,000 | $0 | Undisclosed | | Aetna PAC, FEC Form 3X, 2010 July Monthly Report, July 19, 2010. |
| 2010 | TX | Rep. John Davis (R) | $1,000 | $0 | Undisclosed | | Aetna PAC, FEC Form 3X, 2010 April Monthly Report, Apr. 13, 2010; Aetna PAC, FEC Form 3X, 2010 October Monthly Report, Amended, Dec. 15, 2010; Aetna PAC, FEC Form 3X, 2010 Year-End Report, Amend., Mar. 14, 2011. |
| | | TOTAL | $17,150 | | | $17,150 | |

**INACCURACIES**

| Year | ST | Candidate or Committee | FEC/State Authorities [1] | Aetna's Disclosures [2] | Type | Total | Source |
|---|---|---|---|---|---|---|---|
| 2010 | DC | Councilman Tommy Wells (D) | $0 | $500 | Inaccurate | | DC Office of Campaign Finance, Contributor Lookup, Aetna, 2010. |
| 2010 | DC | AHIP Administrative PAC Fund | $0 | $6,000 | Inaccurate | | DC Office of Campaign Finance, Contributor Lookup, Aetna, 2010. |
| 2010 | FL | Republican Party of Florida | $35,000 | $40,000 | Inaccurate | | FL Div. of Elections, Contributions Search, Contributor Lookup, Aetna, 2010. |
| 2010 | FL | Rep. Matt Gaetz (R) | $0 | $500 | Inaccurate | | FL Div. of Elections, Contributions Search, Contributor Lookup, Aetna, 2010. |
| 2010 | GA | Sen. Don Balfour (R) | $2,000 | $1,000 | Inaccurate | | GA Gov. Trans. & Camp. Fin. Comm., Contributions Search, Contributor Lookup, Aetna, 2010. |
| 2010 | GA | Rep. Richard Golick (R) | $1,000 | $500 | Inaccurate | | GA Gov. Trans. & Camp. Fin. Comm., Contributions Search, Contributor Lookup, Aetna, 2010. |
| 2010 | GA | Sen. Tim Golden (R) | $250 | $500 | Inaccurate | | GA Gov. Trans. & Camp. Fin. Comm., Contributions Search, Contributor Lookup, Aetna, 2010. |
| 2010 | IL | Sen. Dan Cronin (R) | $0 | $500 | Inaccurate | | IL State Bd. of Elections, Contributions Search, Contributor Lookup, Aetna, 2010. |
| | | TOTAL | $38,250 | $49,500 | | | |
| | | | *Underreported by Aetna* | | | *$1,500* | |
| | | | *Overreported by Aetna* | | | *$12,750* | |

## OMISSIONS

| Year | ST | Candidate or Committee | FEC/State Authorities[1] | Aetna's Disclosures[2] | Type | Total | Source |
|------|----|------------------------|--------------------------|------------------------|------|-------|--------|
| 2011 | DC | HMO Health PAC | $1,520 | $0 | Undisclosed | | DC Office of Campaign Finance, Contributor Lookup, Aetna, 2011. |
| 2011 | DC | AHIP PAC | $5,000 | $0 | Undisclosed | | Aetna PAC, FEC Form 3X, 2011 Mid-Year Report, July 29, 2011. |
| 2011 | DC | PCMA PAC | $5,000 | $0 | Undisclosed | | Aetna PAC, FEC Form 3X, 2011 Mid-Year Report, July 29, 2011. |
| 2011 | FL | Sen. John Thrasher (R) | $500 | $0 | Undisclosed | | FL Div. of Elections, Contributions Search, Contributor Lookup, Aetna, 2011. |
| | | TOTAL | $12,020 | | | $12,020 | |

## INACCURACIES

| Year | ST | Candidate or Committee | FEC/State Authorities[1] | Aetna's Disclosures[2] | Type | Total | Source |
|------|----|------------------------|--------------------------|------------------------|------|-------|--------|
| 2011 | DC | DC Assoc. of Health Plans PAC | $0 | $4,000 | Inaccurate | | DC Office of Campaign Finance, Contributor Lookup, Aetna, 2011. |
| 2011 | FL | Republican Party of Florida | $190,000 | $200,000 | Inaccurate | | FL Div. of Elections, Contributions Search, Contributor Lookup, Aetna, 2011-12. |
| 2011 | FL | Esteban Bovo (R) | $0 | $500 | Inaccurate | | FL Div. of Elections, Contributions Search, Contributor Lookup, Aetna, 2011. |
| 2011 | FL | Sen. Don Gaetz (R) | $0 | $500 | Inaccurate | | FL Div. of Elections, Contributions Search, Contributor Lookup, Aetna, 2011. |
| 2011 | FL | Sen. Bill Montford (D) | $0 | $500 | Inaccurate | | FL Div. of Elections, Contributions Search, Contributor Lookup, Aetna, 2011. |
| 2011 | GA | Sen. Don Balfour (R) | $2,000 | $1,000 | Inaccurate | | GA Gov. Trans. & Camp. Fin. Comm., Contributions Search, Contributor Lookup, Aetna, 2011. |
| 2011 | GA | Thomas P. Knox (R) | $0 | $500 | Inaccurate | | GA Gov. Trans. & Camp. Fin. Comm., Contributions Search, Contributor Lookup, Aetna, 2011. |
| 2011 | GA | Sen. David Shafer (R) | $0 | $500 | Inaccurate | | GA Gov. Trans. & Camp. Fin. Comm., Contributions Search, Contributor Lookup, Aetna, 2011. |
| 2011 | IN | Rep. Gerald Torr (R) | $250 | $500 | Inaccurate | | Aetna PAC, FEC Form 3X, 2011 Mid-Year Report, July 29, 2011. |
| 2011 | NH | Bass Victory Comm. | $7,000 | $7,500 | Inaccurate | | Aetna PAC, FEC Form 3X, 2011 Mid-Year Report, July 29, 2011; Aetna PAC, FEC Form 3X, 2011 Year-End Report, Jan. 30, 2012. |
| 2011 | UT | Hatch Election Comm. | $3,500 | $4,500 | Inaccurate | | Aetna PAC, FEC Form 3X, 2011 Mid-Year Report, July 29, 2011; Aetna PAC, FEC Form 3X, 2011 Year-End Report, Jan. 30, 2012. |
| | | TOTAL | $202,750 | $220,000 | | $1,000 *Underreported by Aetna* $18,250 *Overreported by Aetna* | |

2

## OMISSIONS

| Year | ST | Candidate or Committee | FEC/State Authorities[1] | Aetna's Disclosures[2] | Type | Total | Source |
|---|---|---|---|---|---|---|---|
| 2012 | FL | Comm. for a Conservative House | $10,000 | $0 | Undisclosed | | FL Div. of Elections, Contributions Search, Contributor Lookup, Aetna, 2012. |
| 2012 | FL | Making the Right Call for Fla. | $2,500 | $0 | Undisclosed | | FL Div. of Elections, Contributions Search, Contributor Lookup, Aetna, 2012. |
| 2012 | FL | Sen. Don Gaetz (R) | $500 | $0 | Undisclosed | | FL Div. of Elections, Contributions Search, Contributor Lookup, Aetna, 2012. |
| 2012 | GA | Sen. William Cowsert (R) | $1,500 | $0 | Undisclosed | | GA Gov. Trans. & Camp. Fin. Comm., Contributions Search, Contrib. Lookup, Aetna, 2012. |
| 2012 | ID | Gov. Butch Otter (R) | $2,500 | $0 | Undisclosed | | Office of the Idaho Sec. of State, Contributor Lookup, Aetna, 2012. |
| 2012 | IL | Democratic Majority | $2,000 | $0 | Undisclosed | | IL State Bd. of Elections, Contributions Search, Contrib. Lookup, Aetna, 2012. |
| 2012 | IL | IL Chamber of Commerce PAC | $2,500 | $0 | Undisclosed | | IL State Bd. of Elections, Contributions Search, Contrib. Lookup, Aetna, 2012. |
| 2012 | NY | Dem. Assembly Campaign Comm. | $2,000 | $0 | Undisclosed | | Aetna PAC-NY, NY Bd. of Elections Fin. Disc. Report, 11 Day Pre-Prim. |
| | | TOTAL | $23,500 | | | $23,500 | |

## INACCURACIES

| Year | ST | Candidate or Committee | FEC/State Authorities[1] | Aetna's Disclosures[2] | Type | Total | Source |
|---|---|---|---|---|---|---|---|
| 2012 | FL | Rep. Janet Adkins (R) | $0 | $500 | Inaccurate | | FL Div. of Elections, Contributions Search, Contributor Lookup, Aetna, 2012. |
| 2012 | FL | Sen. Lizbeth Benacquisto (R) | $0 | $500 | Inaccurate | | FL Div. of Elections, Contributions Search, Contributor Lookup, Aetna, 2012. |
| 2012 | FL | Rep. Clay Ford (R) | $0 | $500 | Inaccurate | | FL Div. of Elections, Contributions Search, Contributor Lookup, Aetna, 2012. |
| 2012 | FL | Rep. Doug Holder (R) | $0 | $500 | Inaccurate | | FL Div. of Elections, Contributions Search, Contributor Lookup, Aetna, 2012. |
| 2012 | FL | Joshua Shulman (D) | $0 | $500 | Inaccurate | | FL Div. of Elections, Contributions Search, Contributor Lookup, Aetna, 2012. |
| 2012 | FL | AIF Political Council | $0 | $5,000 | Inaccurate | | FL Div. of Elections, Contributions Search, Contributor Lookup, Aetna, 2012. |
| 2012 | FL | Keystone Leader's PAC | $1,000 | $2,000 | Inaccurate | | Aetna PAC, FEC Form 3X, 2012 April Monthly Report, Amend., Nov. 27, 2012. |
| 2012 | PA | Rep. Nicholas Micozzie (R) | $2,000 | $1,000 | Inaccurate | | Aetna PAC, FEC Form 3X, 2012 Pre-General Election Report, Amend., Nov. 30, 2012; Aetna PAC, FEC Form 3X, 2012 March Monthly Report, Amend., Nov. 27, 2012. |
| | | TOTAL | $3,000 | $10,500 | _Underreported by Aetna_ / _Overreported by Aetna_ | $1,000 / $8,500 | |

| | | |
|---|---|---|
| **TOTAL Undisclosed 2010-12** | | **$52,670** |
| **TOTAL Underreported 2010-12** | | **$3,500** |
| **TOTAL Overreported 2010-12** | | **$39,500** |

Key:
1: Amount Disclosed by Campaign Finance Authorities
2: Amount Disclosed by Aetna in Political Contributions Reports