USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: APR 0 9 2014

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
STEPHEN W. SILBERSTEIN,

                         Plaintiff,

      -v-

AETNA, INC., et al.,

                         Defendants.
------------------------------------------------------------X

13 Civ. 8759 (AJN)

MEMORANDUM &
ORDER

ALISON J. NATHAN, District Judge:

On April 8, 2014, following oral argument, this Court denied Plaintiff Stephen W. Silberstein's motion for a preliminary injunction on the ground that he had failed to demonstrate irreparable harm. The reasons for that ruling are set forth below.

I.     BACKGROUND

In this action, Plaintiff alleges that Aetna, Inc. ("Aetna") and certain of its officers and directors (collectively, "Defendants") violated Section 14(a) of the Exchange Act, 15 U.S.C. § 78n(a)(1), and the SEC's Rule 14a-9, 17 C.F.R. § 240.14a-9, which prohibits false or misleading statements and omissions in proxy materials. His claims center on Aetna's response to two proposed shareholder resolutions involving the company's political spending.

In its 2012 and 2013 proxy statements, Aetna opposed two shareholder resolutions proposed by the Service Employees International Union ("SEIU") and the Unitarian Universalist Association of Congregations ("UUAC"), respectively. The SEIU's 2012 proposal noted that while Aetna disclosed certain categories of its political contributions, including the nondeductible portion of its trade association dues, Aetna did not disclose "which individual

1

candidates or ballot measures its trade associations and other financially-supported tax-exempt groups support or oppose and with which levels of monetary support." Def. Ex. 2 at 82. As a result, the SEIU's proposal called for Aetna to issue an annual report describing its policies for indirect political contributions and disclosing any contributions made through tax-exempt entities and trade associations. *Id.* Aetna opposed this proposal, noting among other things that it published an annual "Political Contributions and Related Activity Report" and that it complied with "all state and federal laws concerning the disclosure of its political and lobbying activity." *Id.* at 83. The SEIU's proposal was defeated at Aetna's annual meeting. Am. Compl. ¶ 52.

The UUAC's 2013 proposal called for greater oversight of Aetna's political spending by the company's board and audit committee. Def. Ex. 1 at 77. In advocating for its proposal, the UUAC stated that Aetna had given $4 million to the U.S. Chamber of Commerce for attack ads, which Aetna described as "voter education initiatives," and $3 million to the American Action Network ("AAN"), "a social welfare organization that sponsors ads regarding political candidates." *Id.* Aetna opposed this resolution as well, stating that it published annual political contribution reports containing "extensive information about its political contributions," and that the board "has a robust oversight role over the Company's political contributions, policies and practices." *Id.* at 78. It also noted that the Zicklin Index, which "is intended to provide a comprehensive portrait of disclosure practices of the largest U.S. public companies," ranked Aetna fifteenth on a list of 200 companies. *Id.* Like the SEIU's proposal, the UUAC's proposal was defeated at Aetna's annual meeting. Am. Compl. ¶ 63.

Plaintiff filed a complaint on December 10, 2013, alleging that Aetna's responses to the SEIU and UUAC proposals contained false and misleading statements and omissions. For example, Plaintiff claims that the political contribution reports themselves were inaccurate

because they omitted contributions to tax-exempt organizations, such as AAN; that the 2012 report mischaracterized Aetna's donation to the Chamber of Commerce; and that, judging from tax filings by the Democratic and Republican Governors Associations, Aetna's political contribution reports repeatedly misstated its contributions to those and other organizations over a period of years. Am. Compl. ¶¶ 25–37. Plaintiff also claims that given these errors and omissions, Aetna's representations in its proxy statements as to its "extensive" disclosures and "robust" oversight were false or misleading. *Id.* ¶¶ 41–42; Pl. Br. at 11–13. He therefore asks the Court to void the 2012 and 2013 votes and to require Aetna to resubmit the defeated resolutions after correcting any errors in its proxy statements and political contribution reports and advising its shareholders about those errors. Am. Compl. at 20–21. He also asks the Court to appoint an individual at Aetna to ensure that the company's future political contribution reports are complete and accurate. *Id.* at 21.

After commencing this action, Plaintiff learned that at Aetna's 2014 annual meeting, shareholders will vote on two resolutions similar to the ones proposed by the SEIU and UUAC in 2012 and 2013. As a result, he filed a motion for a preliminary injunction on March 6, 2014, seeking to enjoin Defendants from:

> sending any proxy materials for [Aetna's] upcoming 2014 Annual Shareholder Meeting or holding that meeting until such time as the Company has amended its 2010, 2011, and 2012 Political Contribution Reports to accurately reflect all of its political contributions, including its contributions to section 501(c)(4) and 501(c)(6) organizations, has issued an accurate and complete 2013 Political Contribution Report, and has advised shareholders about the specific errors and omissions in its previous reports.

Dkt. No. 22. That motion is fully briefed, and the Court heard oral argument on April 8, 2014.

## II.  DISCUSSION

"A plaintiff seeking a preliminary injunction must establish [1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of

preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). The "extraordinary and drastic remedy" of a preliminary injunction "should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Grand River Enter. Six Nations, Ltd. v. Pryor*, 481 F.3d 60, 66 (2d Cir. 2007) (quoting *Moore v. Consol. Edison Co.*, 409 F.3d 506, 510 (2d Cir. 2005)) (internal quotation mark omitted). Regardless of the strength of the movant's showing on the other three factors, a failure to demonstrate irreparable harm is dispositive: "the moving party must first demonstrate that such injury is likely before the other requirements for the issuance of an injunction will be considered." *Rodriguez ex rel. Rodriguez v. DeBuono*, 175 F.3d 227, 234 (2d Cir. 1999) (quoting *Reuters Ltd. v. United Press Int'l, Inc.*, 903 F.2d 904, 907 (2d Cir. 1990)) (internal quotation marks omitted). For the following reasons, Plaintiff has not sufficiently demonstrated that he is likely to suffer irreparable harm in the absence of a preliminary injunction. Therefore, even assuming that he is likely to succeed on the merits of his claims, he is not entitled to the relief he seeks.

Plaintiff suggests that irreparable harm "necessarily follows" from a showing that Aetna made material omissions and misstatements in its 2012 and 2013 proxy statements. Pl. Br. at 16. For several reasons, this argument is not persuasive.

To begin, Plaintiff's argument is undermined by *eBay Inc. v. MercExchange L.L.C.*, 547 U.S. 388 (2006). In *eBay*, the Supreme Court rejected a rule, previously recognized by some lower courts, that a plaintiff seeking a permanent injunction against patent infringement need only show that its patent was valid and had been infringed. *Id.* at 393–94. That is, the Court denied that irreparable harm flowed directly from a likelihood of success on the merits, and insisted that lower courts instead apply traditional equitable principles when deciding whether to

issue injunctive relief. Plaintiff argues that *eBay* does not apply outside the patent context or to preliminary injunctions, Pl. Reply at 8 n.5, but the Second Circuit specifically rejected that argument in *Salinger v. Colting*, 607 F.3d 68 (2d Cir. 2010), stating that *eBay* "applies with equal force . . . to preliminary injunctions" and is applicable to all cases, regardless of subject matter. *Id.* at 77–78 & n.7. Indeed, the court of appeals explicitly dismissed as "not binding precedent" the very case that Plaintiff cites to suggest that *eBay* does not apply to false advertising cases. *See id.* at 77 n.6 (discussing *Time Warner Cable, Inc. v. DIRECTV, Inc.*, 497 F.3d 144 (2d Cir. 2007)). Accordingly, under *eBay* and *Salinger*, Plaintiff cannot rely on a presumption of irreparable harm flowing from the violations that he alleges—he must make a separate showing of irreparable harm. Pre-*eBay* cases suggesting the contrary are not good law. *E.g., Krauth v. Exec. Telecard, Ltd.*, 890 F. Supp. 269, 287 (S.D.N.Y. 1995).

A second and related flaw in Plaintiff's argument is that the cases he cites as establishing that misleading proxy statements frequently lead to irreparable harm arise in materially different factual contexts. Because not all misleading proxy statements engender the same harms, Plaintiff cannot carry his burden by lumping this case together with factually dissimilar Rule 14a-9 cases in which preliminary injunctions issued. A more contextual approach is required: rather than adopting "a 'categorical' or 'general' rule," the Court must "actually consider the injury the plaintiff will suffer if he . . . loses on the preliminary injunction but ultimately prevails on the merits." *Salinger*, 607 F.3d at 80 (quoting *eBay*, 547 U.S. at 391).

For example, in many of the cases Plaintiff cites, the misleading proxy statements were distributed to shareholders in connection with major corporate transactions that would have been difficult to reverse if they were not enjoined from happening in the first place. *See MONY Grp., Inc. v. Highfields Capital Mgmt., L.P.*, 368 F.3d 138 (2d Cir. 2004) (merger); *Sonesta Int'l*

5

*Hotels Corp. v. Wellington Assocs.*, 483 F.2d 247 (2d Cir. 1973) (tender offer); *Am. Insured Mortg. Investors v. CRI, Inc.*, Nos. 90 Civ. 6630 (MBM), 1990 WL 192561 (S.D.N.Y. Nov. 26, 1990) (exchange offer); *see also Bank of N.Y. Co v. Ne. Bancorp, Inc.*, 9 F.3d 1065, 1067 (2d Cir. 1993) ("[W]here a merger has been consummated, restoration of the *status quo* may be impossible."). In these cases, courts have often employed the same apt metaphor: "'a preliminary injunction is generally the only effective remedy'. . . , since 'once a tender offer has been consummated, it becomes difficult and sometimes virtually impossible for a court to unscramble the eggs.'" *Am. Insured Mortg. Investors*, 1990 WL 192561, at *6 (quoting *Consol. Gold Fields PLC v. Minorco, S.A.*, 871 F.2d 252, 261 (2d Cir.), *amended on other grounds*, 890 F.2d 569 (2d Cir. 1989)) (some internal quotation marks omitted). Any broad language in these cases concerning the appropriateness of preliminary relief merely suggests that where the "eggs" would, in fact, be difficult to "unscramble," such relief is the proper remedy for a Rule 14a-9 violation. The inverted reading urged by Plaintiff—that where there is a Rule 14a-9 violation, it follows that the eggs will be difficult to unscramble—defies both common sense and the fact-specific approach that the Court must take in determining the propriety of a preliminary injunction.

In short, Plaintiff cannot rely on conclusory assertions that irreparable harm flows directly from a Rule 14a-9 violation, and the Court must scrutinize Plaintiff's claims regarding the actual harm that will befall Aetna shareholders if the Court does not issue a preliminary injunction. These arguments do not succeed in demonstrating *irreparable* harm. As noted earlier, a preliminary injunction is appropriate only if the remedies available after a merits determination has been reached are likely to be inadequate. But Plaintiff himself clearly believes that an uninformed shareholder vote can be remedied after the fact—a significant part of the

relief he seeks in this lawsuit is voiding the 2012 and 2013 votes that rejected the SEIU's and UUAC's resolutions and requiring Aetna to resubmit those resolutions to shareholders after providing a complete and accurate proxy statement. Am. Compl. at 20–21; *see also* Tr. at 5:23–6:5 (suggesting that shareholders would be "made whole" by requiring such corrections and "having a process in place going forward that insured the accuracy and integrity of the political contribution reporting"). Indeed, as Defendants point out, other courts have denied preliminary relief upon finding that a prior vote could be voided after it occurs, instead requiring the voting item to be resubmitted to shareholders along with corrected disclosures. *See, e.g., Deborah G. Mallow IRA SEP Inv. Plan v. McClendon*, No. CIV-12-436-M, 2012 WL 2036748, at *3 (W.D. Okla. June 6, 2012) (collecting cases).

The Court acknowledges the possibility that even if retrospective relief—voiding any uninformed votes and requiring Aetna to resubmit the defeated proposals after providing shareholders with complete and accurate information—is *possible*, it may not be *adequate*, in the sense required to render a preliminary injunction unnecessary. However, Plaintiff's arguments to this effect are not persuasive in the context of this case.

First, Plaintiff argues from Section 14(a)'s purposes and legislative history that the very act of holding an uninformed vote works a specific, concrete harm on shareholders. *E.g.*, Pl. Reply at 7; Tr. at 7:18–8:23. But as Plaintiff's counsel has acknowledged, that is equivalent to saying that a violation of Rule 14a-9 will always lead to irreparable harm unless the associated shareholder vote is preliminarily enjoined, and therefore runs counter to *eBay*'s instruction that irreparable harm must be demonstrated separately. Tr. at 33:17–19 (conceding that on Plaintiff's theory, "[i]t's difficult to think of a case" in which an injunction against a future vote would not issue once a violation was shown). Most laws are designed to prevent specific harms, but the

desirability of preventing those harms generally does not justify preliminary relief unless the harm cannot be remedied by other means. The Court rejects Plaintiff's theory that Congress's intentions justify a broad, virtually per se exception to these traditional principles[1]: "federal courts in the wake of the Supreme Court's decision in [*eBay*] have rejected the per se rule . . . that 'denying stockholders their right to cast an informed vote constitutes irreparable harm.'" *Masters v. Avanir Pharm., Inc.*, — F. Supp. 2d —, 2014 WL 545138, at *10 (C.D. Cal. Feb. 12, 2014) (citing *Deborah G. Mallow*, 2012 WL 2036748, at *3). Indeed, the merger and tender offer cases that Plaintiff cites undermine his argument: by stressing the difficulties inherent in unwinding large corporate transactions, they imply that an uninformed vote does not itself amount to irreparable harm if such difficulties are absent.

Plaintiff points to some authority finding irreparable harm outside the context of mergers and tender offers, but those cases does not stand for the proposition that irreparable harm results from the mere occurrence of an uninformed shareholder vote. Consistent with the context-specific approach that *eBay* requires, they involve additional, more concrete harms. For example, in *Greenlight Capital, L.P. v. Apple, Inc.*, No. 13 Civ. 900 (RJS), 2013 WL 646547 (S.D.N.Y. Feb. 22, 2013), Judge Sullivan preliminarily enjoined a shareholder vote on proposals that had been illegally "bundled" because he found it "unclear whether or how [the company] could unwind shareholder ratified amendments to its Articles . . . that may trigger filings with

---

[1] Both *eBay* and *Salinger* recognize that courts may disregard ordinary equitable principles where Congress so intends. *See eBay*, 547 U.S. at 391–92; *Salinger*, 607 F.3d at 80. But "a major departure from the long tradition of equity practice should not be lightly implied," *eBay*, 547 U.S. at 391 (quoting *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 320 (1982)), and Plaintiff's citations to Section 14(a)'s legislative history do not reveal any specific indication that Congress intended such a departure in this context. Moreover, the statute itself—the best indicator of congressional intent—does not address judicial remedies at all. And although it is now established that a private right of action is available under Section 14(a), *see J.I. Case Co. v. Borak*, 377 U.S. 426 (1964), the Supreme Court has specifically denied that private rights of action under the securities laws displace traditional equitable principles governing remedies, *see Rondeau v. Mosinee Paper Corp.*, 422 U.S. 49, 64–65 (1975).

the California Secretary of State, as well as multiple other states' agencies." *Id.* at *9. The resolutions at issue in this case do not involve amending Aetna's articles of incorporation, and Plaintiff does not point to any similar complications that would make the vote he challenges difficult to reverse.

Two other cases that Plaintiff cites, which both pre-date *eBay*, involved other concerns not present here. In *Lone Star Steakhouse & Saloon, Inc. v. Adams*, 148 F. Supp. 2d 1141 (D. Kan. 2001), the court enjoined a vote that could have installed a new director based on false information about the current board, thereby damaging the board's reputation and raising the possibility of a "major change" to the board. *Id.* at 1150; *see also Delcath Sys, Inc. v. Ladd*, No. 06 Civ. 6420 (LAP), 2006 WL 2708459, at *5 (S.D.N.Y. Sept. 20, 2006) (relying in part on *Lone Star* to continue a temporary restraining order against the submission of consents obtained by defendants through an allegedly deceptive proxy solicitation seeking to replace a company's directors and thereby force a sale of the company), *modified*, 466 F.3d 257 (2d Cir. 2006). In *Chambers v. Briggs & Stratton Corp.*, 863 F. Supp. 900 (E.D. Wis. 1994), shareholders would have been denied the chance to vote for a director whose candidacy was omitted from the company's proxy statement. To the extent that *Chambers* suggests that voiding a vote after the fact "is not an adequate alternative" simply because "the court can prevent [the vote] in advance," *id.* at 906, it appears to be at odds with the principle that a preliminary injunction is an "extraordinary and drastic remedy" that should be granted only when other remedies are inadequate. *Grand River*, 481 F.3d at 66.

Plaintiff does contend, in his only gesture at real-world consequences for Aetna's shareholders, that money spent on political contributions "cannot be retrieved and its impact on political elections cannot be undone." Pl. Br. at 18. Maybe so. But Plaintiff never asks the

Court to enjoin Aetna's spending—he asks only that an allegedly uninformed vote not go forward at the 2014 shareholders' meeting. Were the Court to enter a preliminary injunction, that vote would not occur until Aetna distributes a proxy statement accurately disclosing its record of political contributions and correcting any relevant misstatements or omissions. Armed with that information, the company's shareholders might well adopt a proposal similar to the ones they rejected—mistakenly, in Plaintiff's view—in 2012 and 2013. But an informed vote still would not go forward at the 2014 meeting, because what qualifies as an informed vote would be the very subject of ongoing litigation. Plaintiff himself suggests that determining Aetna's actual record of contributions—the record he asks the Court to make the company disclose before a vote can take place—requires further discovery. *See* Pl. Br. at 9 ("[I]t is likely the Company made other political contributions that similarly remain undisclosed."). And while his counsel suggested at oral argument that Aetna could correct its earlier misstatements and omissions quickly enough to distribute accurate materials before the 2014 meeting, the parties dispute what changes, if any, would have to be made. The Court would be required to make that decision, and will not be in a position to do so until a final merits determination is reached. As a result, allowing the meeting to take place will not affect Aetna's near-term disclosure and oversight policies—unless shareholders ratify any resolutions even on (what Plaintiff alleges is) an uninformed basis.

Indeed, this nuance further distinguishes much of the authority on which Plaintiff relies, because in the typical Rule 14a-9 case, the plaintiff seeks a preliminary injunction against a shareholder vote that, if successful, will result in some undesirable change to the status quo. *See Bank of N.Y.*, 9 F.3d at 1067 ("A preliminary injunction preserves the *status quo* pending final resolution of litigation."). Here, by contrast, Plaintiff is seeking to change policies currently in

10

place—that is, no "eggs" will be "scrambled" in the first place. As a result, the only harm that will occur absent a preliminary injunction is the legal harm flowing from an allegedly uninformed vote. *See Jayaraj v. Scappini*, 66 F.3d 36, 40 (2d Cir. 1995) ("[I]rreparable harm is measured in terms of the harm arising during the interim between the request for an injunction and final disposition of the case on the merits . . . ."). And as explained above, that is insufficient to justify the extraordinary remedy of a preliminary injunction.

### III.  CONCLUSION

For the foregoing reasons, the Court concludes that Plaintiff has not carried his burden of demonstrating that he is "likely to suffer irreparable harm in the absence of preliminary relief." *Winter*, 555 U.S. at 20. His motion for a preliminary injunction is therefore denied.

SO ORDERED.

Dated: April 9, 2014
New York, New York

_____
ALISON J. NATHAN
United States District Judge