UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

Stephen M. Silberstein,

Plaintiff,

- against -

Aetna Inc., Mark T. Bertolini, Fernando Aguirre,
Frank M. Clark, Betsy Z. Cohen, Molly J. Coye,
Roger N. Farah, Barbara Hackman Franklin,
Jeffrey E. Garten, Gerald Greenwald, Ellen M.
Hancock, Richard J. Harrington, Edward J.
Ludwig, and Joseph P. Newhouse,

Defendants.

13-CV-8759 (AJN)

ORAL ARGUMENT REQUESTED

**MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT**

DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, New York 10017
(212) 450-4000
*Attorneys for Defendants*

Dated: April 25, 2014

# TABLE OF CONTENTS

PAGE

PRELIMINARY STATEMENT ........................................................................1

BACKGROUND ...............................................................................................3

    A.    Aetna Voluntarily Agrees to Enhance Its
           Disclosure of Certain Political Contributions ..............................................3

    B.    2012 and 2013 Shareholder Proposals Regarding
           Political Contributions .................................................................................4

    C.    The Current Litigation ..................................................................................7

APPLICABLE PLEADING STANDARDS ........................................................7

ARGUMENT .....................................................................................................8

I.    AETNA'S POLITICAL CONTRIBUTIONS REPORTS ARE NOT
     ACTIONABLE UNDER SECTION 14 .................................................................9

    A.    Aetna's 2010 and 2011 Political Contributions Reports
           Were Not Incorporated by Reference, Respectively,
           into Aetna's 2012 and 2013 Proxy Statements ...........................................9

    B.    Aetna's 2010 and 2011 Political Contributions Reports Do
           Not Otherwise Constitute "Proxy Solicitation Materials" ........................11

II.    COUNT I MUST BE DISMISSED BECAUSE PLAINTIFF FAILS TO
     ALLEGE A MATERIAL MISSTATEMENT OR OMISSION IN THE
     2012 PROXY STATEMENT, AND HIS CLAIM IS TIME-BARRED
     IN ANY EVENT .................................................................................................12

    A.    Plaintiff Fails to Allege a Misstatement or Omission in
           the 2012 Proxy Statement, Let Alone One that Is Material ......................13

           1.    Plaintiff Does Not Allege that Aetna's Audit Committee
                  Did Not Review the Company's Political Contributions
                  Reports Prior to Publication .........................................................13

           2.    None of the Alleged Misstatements or
                  Omissions Identified by Plaintiff Is Material ...............................14

           3.    Plaintiff Does Not Allege That Any Statements Made in
                  the 2012 Proxy Statement Were Themselves Misleading .............15

    B.    Plaintiff's Claim Based on the 2012 Proxy Statement Is Time-Barred .....16

III. COUNT II MUST BE DISMISSED BECAUSE PLAINTIFF FAILS TO
ALLEGE A MATERIAL MISSTATEMENT OR OMISSION IN THE
2013 PROXY STATEMENT ...............................................................................18

  A. None of the Alleged Misstatements or
Omissions Identified by Plaintiff Is Material.............................................18

  B. Plaintiff Does Not Allege That Any Statements Made in
the 2013 Proxy Statement Were Themselves Misleading ........................20

IV. PLAINTIFF'S AMENDED COMPLAINT MUST BE DISMISSED
BECAUSE HE IS NOT ENTITLED TO THE EXCLUSIVELY
EQUITABLE RELIEF HE SEEKS .....................................................................23

CONCLUSION.............................................................................................................26

# TABLE OF AUTHORITIES

### CASES

PAGE(S)

Amoco Prod. Co. v. Vill. of Gambell,
    480 U.S. 531 (1987)..................................................................................................24

Arnold v. KPMG LLP,
    334 F. App'x 349 (2d Cir. 2009) ............................................................................11

Ashcroft v. Iqbal,
    556 U.S. 662 (2009).............................................................................................7, 22

Barnum v. Millbrook Care Ltd. P'ship,
    850 F. Supp. 1227 (S.D.N.Y. 1994).........................................................................8

Basic Inc. v. Levinson,
    485 U.S. 224 (1988)................................................................................................15

Bond Opportunity Fund v. Unilab Corp.,
    No. 99 Civ. 11074 (JSM), 2003 WL 21058251 (S.D.N.Y. May 9, 2003)............13, 17, 18, 21

Bond Opportunity Fund v. Unilab Corp.,
    87 F. App'x 772 (2d Cir. 2004) ............................................................................8, 9

Ceres Partners v. GEL Assocs.,
    918 F.2d 349 (2d Cir. 1990)...................................................................................16

City of Austin Police Ret. Sys. v. Kinross Gold Corp.,
    957 F. Supp. 2d 277 (S.D.N.Y. 2013)....................................................................16

DCML LLC v. Danka Bus. Sys. PLC,
    No. 08 Civ. 5829 (SAS), 2008 WL 5069528 (S.D.N.Y. Nov. 26, 2008) ................8

DiFolco v. MSNBC Cable LLC,
    622 F.3d 104 (2d Cir. 2010).....................................................................................8

eBay Inc. v. MercExchange, LLC,
    547 U.S. 388 (2006)................................................................................................23

ECA & Local 134 IBEW Joint Pension Trust of Chi. v. JPMorgan Chase Co.,
    553 F.3d 187 (2d Cir. 2009).......................................................................15, 16, 20

Gibbons v. Malone,
    703 F.3d 595 (2d Cir. 2013).....................................................................................7

In re Global Crossing, Ltd. Sec. Litig.,
    313 F. Supp. 2d 189 (S.D.N.Y. 2003).................................................................................17

Halebian v. Berv,
    644 F.3d 122 (2d Cir. 2011)..............................................................................................8

Hulliung v. Bolen,
    548 F. Supp. 2d 336 (N.D. Tex. 2008) ............................................................................11

Int'l Paper Co. v. Suwyn,
    966 F. Supp. 246 (S.D.N.Y. 1997)...................................................................................24

Johnson v. Sequans Commc'ns S.A.,
    No. 11 Civ. 6341 (PAC), 2013 WL 214297 (S.D.N.Y. Jan. 17, 2013) .................................16

In re JPMorgan Chase Sec. Litig.,
    363 F. Supp. 2d 595 (S.D.N.Y. 2005)................................................................................9

Kass v. Arden-Mayfair, Inc.,
    431 F. Supp. 1037 (C.D. Cal. 1977) ................................................................................12

Kelen v. World Fin. Network Nat'l Bank,
    763 F. Supp. 2d 391 (S.D.N.Y. 2011).............................................................................24

LC Capital Partners v. Frontier Ins. Grp.,
    318 F.3d 148 (2d Cir. 2003)..............................................................................................17

Litwin v. OceanFreight, Inc.,
    865 F. Supp. 2d 385 (S.D.N.Y. 2011).............................................................................11

Long Island Lighting Co. v. Barbash,
    779 F.2d 793 (2d Cir. 1985)......................................................................................11, 12

Mangiafico v. Blumenthal,
    471 F.3d 391 (2d Cir. 2006)..............................................................................................8

Markewich v. Adikes,
    422 F. Supp. 1144 (E.D.N.Y. 1976) ................................................................................11

NRG Energy, Inc. v. Exelon Corp.,
    646 F. Supp. 2d 431 (S.D.N.Y. 2009)........................................................................23, 25

Parnes v. Gateway 2000, Inc.,
    122 F.3d 539 (8th Cir. 1997) ..........................................................................................15

In re Pfizer Inc. S'holder Derivative Litig.,
    722 F. Supp. 2d 453 (S.D.N.Y. 2010)........................................................................8

Poindexter v. EMI Record Grp., Inc.,
    No. 11 Civ. 559 (LTS)(JLC), 2012 WL 1027639 (S.D.N.Y. Mar. 27, 2012) .........................8

Rabbani v. Enzo Biochem, Inc.,
    682 F. Supp. 2d 400 (S.D.N.Y. 2010)........................................................................12

Resnik v. Swartz,
    303 F.3d 147 (2d Cir. 2002)..............................................................................9, 19

RxUSA Wholesale, Inc. v. Alcon Labs., Inc.,
    661 F. Supp. 2d 218 (E.D.N.Y. 2009) .....................................................................11

Salinger v. Colting,
    607 F.3d 68 (2d Cir. 2010)..................................................................................23

SEC v. First Jersey Sec., Inc.,
    101 F.3d 1450 (2d Cir. 1996)...............................................................................25

Seinfeld v. Gray,
    404 F.3d 645 (2d Cir. 2005).................................................................................9

Silberstein v. Aetna, Inc.,
    No. 13 Civ. 8759 (AJN), 2014 WL 1388790 (S.D.N.Y. Apr. 9, 2014)..............................7, 24

Silverstein v. Penguin Putnam, Inc.,
    368 F.3d 77 (2d Cir. 2004) ................................................................................23

Smallwood v. Pearl Brewing Co.,
    489 F.2d 579 (5th Cir. 1974) ..............................................................................12

Socialist Workers Party v. Att'y Gen. of the U.S.
    642 F. Supp. 1357 (S.D.N.Y. 1986)........................................................................24

Take-Two Interactive Software, Inc. v. Brant,
    No. 06 Civ. 5279 (LTS), 2010 WL 1257351 (S.D.N.Y. Mar. 31, 2010)..............................16

United Canso Oil & Gas Ltd. v. Clark,
    497 F. Supp. 111 (S.D.N.Y. 1980)..........................................................................25

United Paperworkers Int'l Union v. Int'l Paper Co.,
    801 F. Supp. 1134 (S.D.N.Y. 1992)......................................................................22, 23

Va. Bankshares, Inc. v. Sandberg,
    501 U.S. 1083 (1991).............................................................................................21

In re Westinghouse Sec. Litig.,
    832 F. Supp. 989 (W.D. Pa. 1993)....................................................................11

Woodward v. Raymond James Fin., Inc.,
    732 F. Supp. 2d 425 (S.D.N.Y. 2010)..............................................................16

<u>S</u>TATUTES & <u>R</u>ULES

Fed. R. Civ. P. 12(b)(6).............................................................................................1, 7, 8

Section 14(a) of the Sec. Exch. Act of 1934, 15 U.S.C. § 78n(a).......................... <u>passim</u>

15 U.S.C. § 78u-4(b)(1) ..............................................................................................8

26 U.S.C. § 501(c)(4)..........................................................................................1, 3, 4

26 U.S.C. § 527 ................................................................................................. 1, 3, 4

SEC Rule 14a-1, 17 C.F.R. § 240.14a-1(l)(1)(iii) ...................................................9, 11

SEC Rule 14a-9, 17 C.F.R. § 240.14a-9 ......................................................... <u>passim</u>

SEC Rule 14a-101, 17 C.F.R. § 240.14a-101 Note D ................................................10

Defendants Aetna Inc. ("Aetna" or the "Company"), and Mark T. Bertolini, Fernando Aguirre, Frank M. Clark, Betsy Z. Cohen, Molly J. Coye, Roger N. Farah, Barbara Hackman Franklin, Jeffrey E. Garten, Gerald Greenwald, Ellen M. Hancock, Richard J. Harrington, Edward J. Ludwig, and Joseph P. Newhouse (together with Aetna, "Defendants"), by and through their undersigned attorneys, respectfully submit this memorandum of law in support of their motion to dismiss Plaintiff's amended complaint ("Amended Complaint") pursuant to Federal Rule of Civil Procedure 12(b)(6).

## PRELIMINARY STATEMENT

Plaintiff's Amended Complaint fails to remedy any of the disqualifying defects identified by Defendants in their motion to dismiss his first complaint.  Plaintiff again fails to identify any material misstatement or omission in Aetna's 2012 or 2013 Proxy Statement or to satisfy in any way the stringent standards for permanent injunctive relief.  Plaintiff nevertheless seeks to employ the Court's equitable powers to award this "extraordinary" remedy based upon allegations that Aetna's 2012 and 2013 Proxy Statements were materially misleading in violation of Section 14(a) of the Securities Exchange Act of 1934 ("Section 14(a)") insofar as they failed to disclose certain information about the Company's political contributions.  Plaintiff cannot sustain such a claim, as Aetna's 2012 and 2013 Proxy Statements complied with all laws and regulations and were complete and accurate in all material respects.

Plaintiff's claims arise out of two shareholder proposals—similar to two proposals included in Aetna's 2014 Proxy Statement—that were advanced in 2012 and 2013 and sought, respectively, increased disclosure of Aetna's political contributions to entities under Sections 501(c)(4) and 527 of the United States Tax Code and increased Board oversight of Aetna's political contributions process—measures substantially identical to the relief sought by Plaintiff here.  Each of the 2012 and 2013 proposals was put to Aetna's shareholders and rejected by

overwhelming margins, with nearly 90% of the shares voting on the 2012 proposal voted against it and more than 93% of the shares voting on the 2013 proposal voted against it.  Plaintiff has advanced no reason why his judgment should be substituted for that of his fellow shareholders, not to mention the judgment of Congress and the SEC, neither of which requires Aetna to disclose more information about its political spending than it already discloses voluntarily.

Plaintiff's claims turn almost entirely on his assertion that each of Aetna's annual Political Contributions and Related Activity Report ("Political Contributions Report" or "Report") for 2010 and 2011 was materially misstated because it failed to disclose certain political contributions and either over-reported or underreported other contributions.  These Reports, however, are not proxy solicitations and, thus, are not actionable under Section 14(a).  The 2010 and 2011 Reports were neither incorporated by reference into the 2012 and 2013 Proxy Statements, respectively, nor do they constitute proxy solicitation communications in their own right.  Incorporation by reference requires an express statement to that effect, which is nowhere to be found in either the 2012 or 2013 Proxy Statements, and the Political Contributions Reports are not published for the purpose of procuring, withholding, or revoking a proxy.  To the contrary, the Reports are published voluntarily by Aetna on an annual basis <u>after</u> Aetna's annual meeting and irrespective of whether there is a related proxy solicitation as part of a shareholder meeting for a given year.

Even if the 2010 and 2011 Political Contributions Reports were actionable, which they are not, Plaintiff's claims cannot be sustained because he has failed to identify a material misstatement or omission in either Report.  The alleged misstatements and omissions identified by Plaintiff are either not actually alleged to be false or are so "small," in the words of Plaintiff, that they are immaterial as a matter of law.  Plaintiff further has identified no duty on Aetna's

part to disclose the allegedly omitted contributions to Section 501(c)(4) or 527 organizations, rendering their alleged omission immaterial as a matter of law as well.

Plaintiff also fails to allege any false or misleading statement in either the 2012 or 2013 Proxy Statements.  To the extent Plaintiff now claims that the Proxy Statements themselves gave the misleading impression that Aetna discloses more about its political spending than it actually does, or that the Board's oversight of the political contribution process is more comprehensive than it actually is, there is no support for such a claim.  Moreover, statements concerning the extent or nature of Aetna's political disclosures and Board oversight are non-actionable puffery, if not statements of opinion that are only actionable if the opinions are alleged with the requisite specificity to be objectively and subjectively false.  Plaintiff makes no such allegations here.

For these reasons, and for the additional reasons set forth below, Defendants respectfully request that the Court grant Defendants' motion to dismiss Plaintiff's Amended Complaint.

## BACKGROUND

Aetna, as a leading provider of diversified health care benefits, helps shape public policy solutions to various issues affecting the industry, including by its sponsorship of a political action committee that makes contributions to federal and state candidates, parties, and committees.  (See, e.g., 2010 Political Contributions Report, attached as Exhibit 1 to the Declaration of Dana M. Seshens, dated April 25, 2014 ("Ex.__"), at 3-5; 2011 Political Contributions Report, Ex. 2, at 5-6.)  When permissible, Aetna also pays dues to state and federal trade associations and coalitions and has made contributions to tax-exempt organizations.

### A.   Aetna Voluntarily Agrees to Enhance Its Disclosure of Certain Political Contributions

Since at least 2004, Aetna has prepared and published voluntarily annual Political Contributions Reports that disclose the activities of Aetna's political action committee and other

corporate campaign and lobbying contributions.[1]  During the 2006-2007 proxy season, two Aetna shareholders, Mercy Investment Program and Sisters of Mercy Regional Community of Detroit, submitted a proposal requesting that Aetna make additional and more detailed disclosures of its use of corporate funds for political expenditures.  (Am. Compl. ¶ 9.)  In a January 22, 2007 letter agreement, these shareholders agreed to withdraw their proposal and Aetna agreed to make certain voluntary disclosures, (id. ¶ 10), which Aetna subsequently incorporated into its Political Contributions Reports.  Aetna did not agree to disclose contributions made for educational purposes or to tax exempt organizations under Sections 501(c)(4) and 527 of the United States Tax Code.

**B.      2012 and 2013 Shareholder Proposals Regarding Political Contributions**

During the 2011-2012 proxy season, the Service Employees International Union Master Trust ("SEIU") proposed a shareholder resolution requesting that Aetna disclose additional information regarding political contributions, including "[i]ndirect monetary and non-monetary political contributions or expenditures through contributions to tax-exempt social welfare entities" and "all recipients and the amount paid to each recipient from Company funds used by the organizations described above."  (Am. Compl. ¶ 12; 2012 Proxy Statement, Ex. 3, at 82.)  In support thereof, the SEIU told Aetna's shareholders in part:

> Presently, Aetna discloses its direct corporate contributions to state candidates and party committees, and the nondeductible portion of its dues to "state and federal trade associations, coalitions, and similar organizations" where the total annual amount of such payments are equal to or greater than $50,000.
>
> While we commend Aetna for this disclosure, we believe it is inadequate because Aetna does not disclose which individual candidates or ballot measures its trade

---

[1] Political Contributions Reports from 2004 through 2012 are available on Aetna's website at http://www.aetna.com/about-aetna-insurance/initiatives/aetna-political-contributions-related-activity-reports.html (last visited Apr. 24, 2014).

associations and other financially-supported tax-exempt groups support or oppose
and with what levels of monetary support.

(2012 Proxy Statement, Ex. 3, at 82.)  The SEIU further argued for support of the proposal

because, among other things, "Aetna is not disclosing additional donations to third parties that

may be earmarked for political purposes without being traced to Aetna."  (Id.)

The SEIU proposal was included in Aetna's 2012 Proxy Statement and put to a vote at

Aetna's 2012 annual meeting.  (Am. Compl. ¶ 12.)  Aetna's Board of Directors (the "Board")

opposed the SEIU proposal and recommended that shareholders vote against it.  (Id. ¶ 13.)  The

Board stated in relevant part:

> We agree that transparency and accountability with respect to political
> expenditures are important.  That is why the Company publishes annually its
> Political Contributions and Related Activity Report.  Our 2010 Report is available
> on our website www.aetna.com.
>
> The Company complies fully with all state and federal laws concerning the
> disclosure of its political and lobbying activity.  With respect to oversight, the
> Company's Audit Committee reviews the Company's Political Contributions
> Report prior to publication. In addition, management regularly discusses public
> policy issues and political activities with our full Board.
>
> We believe that the information currently available to shareholders is easily
> accessible and understandable and, coupled with the oversight of the Company's
> political activities by the Board, is in the best interest of the Company.  As a
> result, we do not believe additional disclosure is warranted at this time.

(2012 Proxy Statement, Ex. 3, at 83; Am. Compl. ¶¶ 13-16.)  Aetna's shareholders

overwhelmingly rejected the SEIU proposal: nearly 90% of the shares voted on the proposal

were voted against it.  (Aetna Inc., Item 5.07 Submission of Matters to a Vote of Security

Holders (Form 8-K), at No. 4 (May 21, 2012), Ex. 4, at 2.)

During the 2012-2013 proxy season, the Unitarian Universalist Association of

Congregations ("UUAC") proposed a shareholder resolution regarding Board oversight of

Aetna's political contributions.  (Am. Compl. ¶ 22.)  This proposal requested, <u>inter alia</u>, that Aetna:

> Assign to the Board responsibility for (a) formulating and revising [Aetna's Political Contributions Policy (the "Policy")] and (b) establishing the parameters of Aetna's commitment to publicly disclose political expenditures (in addition to legal disclosure requirements);
>
> Assign to the Audit Committee responsibility for analyzing and reporting to the full Board annually on (a) compliance with the Policy; and (b) the risks associated with Aetna's political activities, including those undertaken through politically active intermediaries such as trade associations and social welfare organizations[.]

(<u>Id.</u>; 2013 Proxy Statement, Ex. 5, at 77.)  The UUAC's Supporting Statement asserted that the proposed oversight was necessary because Aetna had donated "$4,000,000 to the US Chamber of Commerce for unspecified 'voter education initiatives' and $3,000,000 to the American Action Network, a social welfare organization that sponsors ads regarding political candidates, in 2011."

(2013 Proxy Statement, Ex. 5, at 77.)

The UUAC proposal was included in Aetna's 2013 Proxy Statement and put to a vote at Aetna's 2013 annual meeting.  (Am. Compl. ¶ 22.)  The Board opposed the UUAC proposal and recommended that shareholders vote against it.  (<u>Id.</u> ¶ 23.)  The Board stated, in relevant part:

> [Aetna] recently expanded the information available on its website about its policies and procedures regarding political contributions and the related oversight of those activities. . . . [T]he Company annually publishes a Political Contributions and Related Activity Report with extensive information about its political contributions. . . .
>
> The Company complies fully with all state and federal laws concerning the disclosure of its political and lobbying activity.  In addition, it makes available additional information beyond that required by current laws and regulations.  The 2012 [Zicklin Index] ranked Aetna 15th among the top 200 companies in the S&P 500 Index. . . .
>
> [T]he Board, (acting on its own or through the Audit Committee) already oversees the Company's political expenditures. . . . [T]he Board currently has a robust oversight role over the Company's political contributions, policies and practices. Among other activities, the Board reviews the Company's list of government

affairs priorities, reviews the Company's Political Contributions and Related Activities Report and oversees compliance with political contribution policy and process. In addition . . . management regularly discusses public policy issues and related political activities with the Board.

(2013 Proxy Statement, Ex. 5, at 77-78; Am. Compl. ¶ 23.)

Aetna's shareholders overwhelmingly rejected the UUAC proposal: over 93% of the shares voted on the proposal were voted against it. (Aetna Inc., Item 5.07 Submission of Matters to a Vote of Security Holders (Form 8-K), at No. 7 (May 22, 2013), Ex. 6, at 3.)

### C.     The Current Litigation

Plaintiff filed this action on December 10, 2013, (Dkt. No. 1), and on February 10, 2014, Defendants moved to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), (Dkt. No. 14). Plaintiff thereafter filed an Amended Complaint on March 3, 2014. (Dkt. No. 27.) On March 6, 2014, Plaintiff filed a motion for a preliminary injunction. (Dkt. No. 22.) Following oral argument on April 8, 2014, the Court denied Plaintiff's motion because Plaintiff had "not established irreparable harm." (Oral Arg. Tr., Apr. 8, 2014 ("Tr."), 43:15-21; Silberstein v. Aetna, Inc., No. 13 Civ. 8759 (AJN), 2014 WL 1388790, at *6 (S.D.N.Y. Apr. 9, 2014).)

## APPLICABLE PLEADING STANDARDS

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Gibbons v. Malone, 703 F.3d 595, 599 (2d Cir. 2013) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)). A claim is not "plausible" if it rests on "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." Iqbal, 556 U.S. at 678. Rather, a plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

7

"[I]t is well established that on a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), the court may also rely upon 'documents attached to the complaint as exhibits[] and documents incorporated by reference in the complaint.'" Halebian v. Berv, 644 F.3d 122, 130 n.7 (2d Cir. 2011) (quoting DiFolco v. MSNBC Cable LLC, 622 F.3d 104, 111 (2d Cir. 2010)). Courts may also consider on a motion to dismiss any other documents "integral" to the complaint where the complaint "relies heavily upon [the document's] terms and effect." DiFolco, 622 F.3d at 111 (quoting Mangiafico v. Blumenthal, 471 F.3d 391, 398 (2d Cir. 2006)). "If a document relied on in the complaint contradicts allegations in the complaint, the document, not the allegations, control, and the court need not accept the allegations in the complaint as true." Poindexter v. EMI Record Grp., Inc., No. 11 Civ. 559 (LTS)(JLC), 2012 WL 1027639, at *2 (S.D.N.Y. Mar. 27, 2012) (citing Barnum v. Millbrook Care Ltd. P'ship, 850 F. Supp. 1227, 1232-33 (S.D.N.Y. 1994)).

## ARGUMENT

To state a claim for violation of Section 14(a) and Rule 14a-9 promulgated thereunder ("Rule 14a-9"), Plaintiff must allege facts that show: (1) the proxy solicitation contained a material misrepresentation or omission, which (2) caused his injury, and (3) the proxy solicitation was an essential link in the accomplishment of the corporate action at issue. See Bond Opportunity Fund v. Unilab Corp., 87 F. App'x 772, 773 (2d Cir. 2004); In re Pfizer Inc. S'holder Derivative Litig., 722 F. Supp. 2d 453, 463 (S.D.N.Y. 2010). Under the Private Securities Litigation Reform Act (the "PSLRA"), which applies to claims asserted under Section 14(a) and Rule 14a-9, Plaintiff must specify "each statement alleged to have been misleading" and explain "the reason or reasons why the statement is misleading." 15 U.S.C. § 78u-4(b)(1); see DCML LLC v. Danka Bus. Sys. PLC, No. 08 Civ. 5829 (SAS), 2008 WL 5069528, at *1 (S.D.N.Y. Nov. 26, 2008) (PSLRA's heightened pleading standards apply to Section 14(a)

claims); <u>In re JPMorgan Chase Sec. Litig.</u>, 363 F. Supp. 2d 595, 636 (S.D.N.Y. 2005) (same).

Claims based on an alleged omission must show either that SEC regulations "specifically require

disclosure" of the omitted information, or that the omission makes other statements in the proxy

statement materially false or misleading.  <u>Seinfeld v. Gray</u>, 404 F.3d 645, 650 (2d Cir. 2005);

<u>Resnik v. Swartz</u>, 303 F.3d 147, 151 (2d Cir. 2002).

I.      **AETNA'S POLITICAL CONTRIBUTIONS REPORTS ARE NOT ACTIONABLE
        UNDER SECTION 14**

Section 14(a) and Rule 14a-9 require Plaintiff to allege a misstatement in any <u>proxy

solicitation</u>.  <u>See</u> 17 C.F.R. § 240.14a-9(a) (prohibiting proxy solicitation "by means of a proxy

statement . . . or other communication which . . . is false or misleading); <u>Bond Opportunity Fund</u>,

87 F. App'x at 773 ("In order to recover under Section 14(a) and Rule 14a-9, plaintiffs must

show that . . . a <u>proxy statement contained</u> a material misrepresentation or omission.") (emphasis

added).  Rule 14a-1 defines "solicitation," to include, among other things, "[t]he furnishing of

a . . . communication to security holders under circumstances reasonably calculated to result in

the procurement, withholding or revocation of a proxy."  17 C.F.R. § 240.14a-1(l)(1)(iii).

A.      **Aetna's 2010 and 2011 Political Contributions Reports
        Were Not Incorporated by Reference, Respectively,
        into Aetna's 2012 and 2013 Proxy Statements**

Plaintiff does not—because he cannot—allege that the Reports themselves are proxy

solicitations.  Indeed, Plaintiff does not contest that the Political Contributions Reports are

published on Aetna's website and are not distributed with Aetna's proxy materials or otherwise

in connection with the shareholder proposals.  (<u>See</u> Am. Compl. ¶¶ 50, 61.)  Instead, Plaintiff

asserts that because Aetna allegedly "referenced" and "relied" upon its website and its prior

Political Contributions Reports to oppose the SEIU and UUAC shareholder proposals in its 2012

9

and 2013 Proxy Statements, the Reports and any related website statements are incorporated by reference therein.  (Id.)  Plaintiff's argument lacks merit.

As Aetna has previously demonstrated in its opposition to Plaintiff's Motion for a Preliminary Injunction, SEC rules governing proxy statements dictate that documents are not incorporated into a proxy statement by reference unless the issuer expressly states "on the last page(s) of the proxy statement as to which documents, or portions of documents, are incorporated by reference."  17 C.F.R. § 240.14a-101 Note D; see Litwin v. OceanFreight, 865 F. Supp. 2d 385, 394 n.6 (S.D.N.Y. 2011) (rejecting Section 14(a) claim alleging that certain materials referenced in a Form F-4 were incorporated by reference because, with respect to SEC filings, "'incorporation by reference' is a precise term of art").  Here, there is no dispute that Aetna's 2012 and 2013 Proxy Statements specifically informed shareholders that information contained on Aetna's website was not incorporated by reference.  Aetna's 2012 Proxy Statement clearly stated that "[t]he information contained on Aetna's website, including our summary Annual Report, is not part of this proxy solicitation and is not incorporated by reference into this Proxy Statement or any other proxy materials."  (2012 Proxy Statement, Ex. 3 at 84.)  Its 2013 Proxy Statement similarly provided that:

> The information contained on websites referred to in this Proxy Statement (other than Aetna's website referred to herein as required by the SEC's rules) is not part of this proxy solicitation and is not incorporated by reference into this Proxy Statement or any other proxy materials.

(2013 Proxy Statement, Ex. 5, at 79.) [2]

Without express incorporation by reference by the issuer—as required by SEC rules— courts have routinely refused to deem materials referred to in a proxy statement as incorporated

---

[2] The 2013 Proxy Statement's exception for certain information on Aetna's website applied only to certain matters that SEC regulations specifically required to be disclosed by reference to Aetna's website, such as the board committee charters required under Item 407 of Regulation S-K.  See Instructions to Item 407.

by reference.  See, e.g., Litwin, 865 F. Supp. 2d at 394 n.6 (explaining that materials are not

deemed part of the proxy materials if "the registrant does not use [the] term ["incorporation by

reference"] in the proxy, but merely alludes to other documents without expressly incorporating

them by reference"); Hulliung v. Bolen, 548 F. Supp. 2d 336, 340 (N.D. Tex. 2008); In re

Westinghouse Sec. Litig., 832 F. Supp. 989, 1001 (W.D. Pa. 1993); Markewich v. Adikes, 422 F.

Supp. 1144, 1147 (E.D.N.Y. 1976).  The same result should follow here.

### B.   Aetna's 2010 and 2011 Political Contributions Reports Do Not Otherwise Constitute "Proxy Solicitation Materials"

Nowhere in Plaintiff's Amended Complaint does he allege that either the 2010 or 2011

Political Contributions Report constitutes a "proxy solicitation" subject to Rule 14a-9.[3]  But even

if Plaintiff could so argue, he would have no greater success in basing his claims upon the

Reports because they do not constitute proxy solicitation communications.

Under Section 14 and Rule 14a-9, a proxy solicitation communication must be

"reasonably calculated to result in the procurement, withholding or revocation of a proxy" based

on an examination of the purposes and nature of the communication and the circumstances of its

distribution.  17 C.F.R. §240.14a-1(l)(1)(iii); Long Island Lighting Co. v. Barbash, 779 F.2d 793,

796 (2d Cir. 1985).  Aetna's Political Contributions Reports have been published pursuant to

Aetna's policy of voluntary disclosure since at least 2004, years before any shareholder proposal

regarding disclosure of political spending.  Further, the Reports are published annually without

regard to whether a proposal relating to political contributions was introduced at the prior year's

annual meeting or will be proposed at the following year's annual meeting.  And, most notably,

the Reports typically are published after the annual meeting and many months before the next

---

[3]  Nor can Plaintiff attempt to amend his complaint a second time through his opposition to this motion to dismiss to argue that the Reports themselves are proxy solicitations.  See Arnold v. KPMG LLP, 334 F. App'x 349, 352-53 (2d Cir. 2009); RxUSA Wholesale, Inc. v. Alcon Labs., Inc., 661 F. Supp. 2d 218, 248 (E.D.N.Y. 2009).

year's proxy season, as opposed to in and around the time of a particular proxy solicitation.

(See, e.g., 2013 Proxy Statement, Ex. 5, at 78 (noting that the 2012 Report "will become

available after it has been reviewed and approved by the Audit Committee").)

     Under such circumstances, Aetna's Political Contributions Reports cannot be construed

as proxy solicitation materials, even if Plaintiff had so alleged.  See, e.g., Long Island Lighting

Co., 779 F.2d at 796 (solicitation communications must be "designed ultimately" to procure

proxies and "reasonably calculated" to influence shareholder voting to constitute solicitations

subject to Section 14(a)); Smallwood v. Pearl Brewing Co., 489 F.2d 579, 600-01 (5th Cir. 1974)

(letter regarding a proposed merger was not "reasonably calculated to result in the procurement

of a proxy" because, inter alia, it was sent at a time no proxies had been requested and no

stockholder's meeting had been called; "the further removed the statement is from an act of

shareholder suffrage, the less likely it is that the statement will leave its imprint upon that

shareholder action."); Rabbani v. Enzo Biochem, Inc., 682 F. Supp. 2d 400, 410 (S.D.N.Y. 2010)

(letter nominating candidates for board of directors was not a solicitation when it was not

directed to the shareholders, and it "was not a request for a proxy, to execute or revoke a proxy,

or to furnish a form of proxy"); Kass v. Arden-Mayfair, Inc., 431 F. Supp. 1037, 1046 (C.D. Cal.

1977) (letter was not a solicitation when it "appear[ed] to have been sent pursuant to

management's policy to stay in touch with the shareholders" and was sent over a month before

the proxy contest was initiated).

## II.     COUNT I MUST BE DISMISSED BECAUSE PLAINTIFF FAILS TO ALLEGE A MATERIAL MISSTATEMENT OR OMISSION IN THE 2012 PROXY STATEMENT, AND HIS CLAIM IS TIME-BARRED IN ANY EVENT

     Count I of the Amended Complaint asserts that Aetna's 2012 Proxy Statement contained

material false or misleading statements because (A) its statement that the Audit Committee

reviews Aetna's Political Contributions Reports prior to publication was misleading; and (B) the

2010 Political Contributions Report rendered the 2012 Proxy Statement inaccurate because (i) the 2010 Report contained an admittedly "small discrepanc[y]" (of less than $2,000) between the amounts donated to the Democratic Governors Association ("DGA") and Republican Governors Association ("RGA") and the amounts disclosed in the 2010 Report; and (ii) the 2010 Report allegedly failed to disclose $17,150 in political contributions, over-reported the amounts of certain contributions by a total of $12,750, and underreported the amount of certain other contributions by a total of $1,500.  (Am. Compl. ¶¶ 27-28, 49-50.)  None of these allegations can support a claim for relief under Section 14(a), and Count I also is barred by the applicable one-year statute of limitations.

     **A.**    **Plaintiff Fails to Allege a Misstatement or Omission in the 2012 Proxy Statement, Let Alone One that Is Material**

Of Plaintiff's two alleged bases for misstatements in the 2012 Proxy Statement, one is not alleged to be false, while the second is not even in the Proxy Statement—and all are immaterial as a matter of law.

          1.    *Plaintiff Does Not Allege that Aetna's Audit Committee Did Not Review the Company's Political Contributions Reports Prior to Publication*

Plaintiff does not allege that the statement "the Company's Audit Committee reviews the Company's Political Contributions Report prior to publication" (Am. Compl. ¶ 49) is false. Instead, Plaintiff concedes that the allegation is true, (id. ¶ 21 ("According to this statement, it appears the Board reviews only that information included in the Political Contribution and Related Activity Reports.")), but contends that the statement "was designed to persuade shareholders that members of the Board reviewed the Company's political contributions," (id.). Plaintiff cannot state a claim based upon the contention that a true statement is "designed" to mean something other than what it actually says.  See Bond Opportunity Fund v. Unilab Corp., No. 99 Civ. 11074 (JSM), 2003 WL 21058251, at *5 (S.D.N.Y. May 9, 2003) (dismissing proxy

misrepresentation claims where plaintiff's allegations depended on "impermissible speculation and extensive extrapolation as to defendants' purposes and motives") aff'd, 87 F. App'x 772 (2d Cir. 2004).

>    2.    *None of the Alleged Misstatements or*
>           *Omissions Identified by Plaintiff Is Material*

As demonstrated above, the 2010 Political Contributions Report was neither incorporated by reference into the 2012 Proxy Statement nor constituted a proxy communication on its own. But even if it were actionable—which it is not—the Amended Complaint would not support a Section 14(a) claim because Plaintiff does not allege that the 2010 Report contained a material misstatement or omission.

Plaintiff effectively concedes that the alleged underreporting of the RGA and DGA contributions is immaterial, himself calling the discrepancies "small."  (See Am. Compl. ¶ 27.) The 2010 Report disclosed contributions to the RGA and DGA of $70,000 and $50,000, respectively; thus, the allegedly underreported amounts were only 1.93% and 0.63%, respectively, of the contributions to the RGA and DGA.  (Id.)  Further, the alleged omitted contributions, alleged underreported amounts, and alleged over-reported amounts were only 1.52%, 0.13%, and 1.13%, respectively, of the more than $1.1 million in contributions detailed in the 2010 Report, and only 0.24%, 0.02%, and 0.18%, respectively, of the over $7 million in political spending disclosed in the 2010 Report.  (2010 Political Contributions Report, Ex. 1, at 6-14.)

Even taking the allegations as true, these alleged discrepancies are immaterial as a matter of law, individually and in the aggregate, because there is not "a substantial likelihood that a

reasonable shareholder would consider [them] important in deciding how to [act]."[4]  ECA & Local 134 IBEW Joint Pension Trust of Chi. v. JPMorgan Chase Co., 553 F.3d 187, 197 (2d Cir. 2009) (quoting Basic Inc. v. Levinson, 485 U.S. 224, 231-32 (1988)); see also id. at 204 (affirming dismissal of Section 10(b) claim alleging a $2 billion misclassification; change in "accounting treatment of approximately 0.3% of JPM Chase's total assets [$2 billion of $715 billion] from trades to loans would not have been material to investors"); Parnes v. Gateway 2000, Inc., 122 F.3d 539, 547 (8th Cir. 1997) (finding that "[d]efendants' alleged overstatement of assets by $6.8 million was immaterial as a matter of law [because] [t]aken in context, this amount represented only 2% of Gateway's total assets").

3.     *Plaintiff Does Not Allege That Any Statements Made in the 2012 Proxy Statement Were Themselves Misleading*

Finally, Plaintiff has not alleged and cannot allege that any statement made in the 2012 Proxy Statement itself was misleading.  Although Plaintiff asserts that the 2012 Proxy Statement "gav[e] shareholders the impression that the Company was fully disclosing its political activity," (Am. Compl. ¶ 50), there is no such representation in the 2012 Proxy Statement.  To the contrary, the 2012 Proxy Statement included the SEIU shareholder proposal, which sought to compel Aetna to make additional disclosures about its political spending, and Aetna's Board responded by stating that it did not believe the additional disclosures were necessary.  (2012 Proxy Statement, Ex. 3 at 83.)

Moreover, the only statement in the 2012 Proxy Statement that arguably concerns the scope of Aetna's political-spending disclosures is the statement that "[the Board agrees] that

---

[4]  Put another way, there is not a "substantial likelihood" that a reasonable shareholder evaluating whether to vote for, against, or to abstain from voting on the 2012 SEIU proposal regarding increased disclosure of indirect political contributions would have considered it "important" to his or her decision had the 2010 Political Contributions Report stated that the figures disclosed were subject to a 1-2% margin of error.

transparency and accountability with respect to political expenditures are important."  (Am. Compl. ¶ 13.)  Plaintiff does not allege that this statement is false or misleading.  At most he has intimated in his preliminary injunction papers that he thinks a statement of this nature gives the false impression to shareholders that Aetna discloses more information about its political spending than it actually does.  (See Pl.'s Prelim. Inj. Mem. 11-12.)  Even if such a speculative interpretation were appropriate, which it is not, such a statement is a textbook example of a generic platitude that is non-actionable "puffery" under Section 14(a).  See, e.g., ECA & Local 134 IBEW Joint Pension Trust of Chi., 553 F.3d at 206 (finding issuer's statements that it had "highly disciplined" risk management, which "set the standard for integrity," was "not more than puffery which does not give rise to securities violations") (internal quotation marks omitted); Johnson v. Sequans Commc'ns. S.A., No. 11 Civ. 6341 (PAC), 2013 WL 214297, at *14 (S.D.N.Y. Jan. 17, 2013) (finding statement that issuer was "an early leader" in the market was "a non-actionable statement of puffery"); Woodward v. Raymond James Fin., Inc., 732 F. Supp. 2d 425, 434-35 (S.D.N.Y. 2010) (finding issuer's statement that it had a "commitment to risk management and conservative lending practices" was "the quintessence of non-actionable puffery."); see also City of Austin Police Ret. Sys. v. Kinross Gold Corp., 957 F. Supp. 2d 277, 297 (S.D.N.Y. 2013) (finding issuer's statement that it had conducted "extensive due diligence" was non-actionable puffery in connection with a §10(b) claim).

### B.   Plaintiff's Claim Based on the 2012 Proxy Statement Is Time-Barred

Even if Plaintiff had alleged a Section 14(a) claim in Count I—which he has not—Count I nonetheless fails for the separate and independent reason that the claim is time barred.  Claims brought pursuant to Section 14(a) and Rule 14a-9 must be filed within one year of the discovery of the alleged violation.  Ceres Partners v. GEL Assocs., 918 F.2d 349, 364 (2d Cir. 1990); Take-Two Interactive Software, Inc. v. Brant, No. 06 Civ. 05279 (LTS), 2010 WL 1257351, at *4

(S.D.N.Y. Mar. 31, 2010); In re Global Crossing, Ltd. Sec. Litig., 313 F. Supp. 2d 189, 198

(S.D.N.Y. 2003).  "The one-year limitations period applicable to discovery of the violation

begins to run after the plaintiff obtains actual knowledge of the facts giving rise to the action or

notice of the facts, which in the exercise of reasonable diligence, would have led to actual

knowledge."  LC Capital Partners LP v. Frontier Ins. Grp., 318 F.3d 148, 154 (2d Cir. 2003)

(internal quotations omitted); Bond Opportunity Fund, 2003 WL 21058251, at *12 (applying

inquiry notice standard to Section 14(a) claims).

　　　　The limitations period for Plaintiff's 2012 Proxy Statement claim began to run on April

9, 2012, the date the 2012 Proxy Statement was filed.  All of the documentation underlying

Plaintiff's claim, including the 2010 Political Contributions Report and the state and federal

disclosure forms upon which Plaintiff relies for the supposed discrepancies in the 2010 Political

Contributions Report, were publicly available no later than January 2012.  (See Am. Compl. Ex.

1; 2010 RGA Form 8872, Ex. 7; 2010 DGA Form 8872, Ex 8.)  In addition, as early as June

2012, there was information in the public domain about Aetna's supposedly undisclosed political

contributions, including from Plaintiff's counsel.  (See Press Release, Citizens for Responsibility

and Ethics in Washington, Aetna Hides $7 Million in Political Spending; CREW Calls for

Greater Disclosure (June 14, 2012);[5] see also CNNMoney, Oops! Aetna discloses political

donations (June 15, 2012)[6].)

---

[5] This press release is publicly available on CREW's website at
http://www.citizensforethics.org/press/entry/aetna-political-spending-american-action-network-chamber-of-commerce (last visited Apr. 24, 2014).

[6] This article is available at http://money.cnn.com/2012/06/14/news/economy/aetna-political-contributions/
(last visited Apr. 24, 2014).

Plaintiff nevertheless waited until December 10, 2013 to file this action—more than sixteen months after the 2012 Proxy Statement was issued.  His claim, therefore, is time barred and must be dismissed.  See Bond Opportunity Fund, 2003 WL 21058251, at *12-13.

III.   **COUNT II MUST BE DISMISSED BECAUSE PLAINTIFF FAILS TO ALLEGE A MATERIAL MISSTATEMENT OR OMISSION IN THE 2013 PROXY STATEMENT**

Count II of the Amended Complaint asserts that Aetna's 2013 Proxy Statement was materially misstated because (A) its statement that the Audit Committee reviews Aetna's Political Contributions Reports prior to publication was misleading; and (B) the 2011 Political Contributions Report rendered the 2013 Proxy Statement inaccurate because (i) it did not disclose the correct amounts of Aetna's 2011 political contributions to the DGA and RGA; (ii) it failed to disclose $12,020 in other contributions, underreported certain contributions by $1,000 in the aggregate and over-reported others by a total of $18,250; (iii) it disclosed in a footnote (and in the wrong amount) a 2011 contribution to the Chamber of Commerce for voter education initiatives; and (iv) it did not disclose a 2011 contribution to the American Action Network ("AAN"), a Section 501(c)(4) organization.  (Am. Compl. ¶¶ 29-32.)  Count II fails for much of the same reasons that Count I fails, and it too must be dismissed.

A.   **None of the Alleged Misstatements or Omissions Identified by Plaintiff Is Material**

As a threshold matter, the 2011 Political Contributions Report was neither incorporated by reference into the 2013 Proxy Statement nor constituted proxy solicitation materials on its own; thus, it cannot give rise to a Section 14(a) violation.  Even if it could, however, Plaintiff has

failed to state a claim upon which relief can be granted because he alleges no material misstatement or omission in the 2013 Proxy Statement.[7]

Plaintiff's contention that the 2013 Proxy Statement is misleading because the 2011 Political Contributions Report failed to disclose Aetna's donation to AAN is unsupportable.  (See id. ¶ 30.)  That donation is disclosed in the 2013 Proxy Statement.  (2013 Proxy Statement, Ex. 5, at 77.)  Furthermore, Plaintiff has identified no duty on Aetna's part to disclose the AAN contribution—nor could he, as Plaintiff himself has recognized that Aetna has no such duty to disclose.[8]  (Pl.'s Prelim. Inj. Mem. 4 ("Aetna is not required to, and does not disclose, contributions to section 501(c)(4) or 501(c)(6) tax-exempt organizations.").)  Absent such a duty—or a representation by Aetna that it disclosed 501(c)(4) contributions—the alleged omission of the AAN contribution cannot be material as a matter of law.  See Resnik, 303 F.3d at 154 (affirming dismissal of Section 14(a) claim because issuer's accurate disclosures regarding value of certain options at exercise was not rendered misleading by absence of disclosure of value of options at grant date).  Indeed, Plaintiff concedes that Aetna discloses what the law requires and then some.  (Pl.'s Prelim. Inj. Mem. 4, 12. ("[Aetna] reveals publicly that information about its political contributions the law requires, but little more.").)

The remaining alleged inaccuracies in the 2011 Political Contributions Report also are immaterial as a matter of law.  The supposed discrepancy between the $100,000 contributions to the DGA and RGA disclosed in the 2011 Political Contributions Report and the $350,000 in

---

[7]  As is the case in connection with the 2012 Proxy Statement, the statement in the 2013 Proxy Statement that Aetna's Board (as opposed to Aetna's Audit Committee) reviews the Political Contributions Reports is not alleged to be false; accordingly, it cannot provide the basis for a federal securities claim.  (See Am. Compl. ¶¶ 21, 60.)

[8]  In fact, Plaintiff's counsel has recently petitioned the SEC to promulgate a new rule "to require public companies to disclose to shareholders the use of corporate resources for political activities."  See SEC File No. 4-637-2 (Apr. 15, 2014).

contributions that these entities reported in their IRS filings could not impact how a shareholder would vote on the UUAC proposal concerning increased Board oversight of Aetna's political contribution process.  See ECA & Local 134 IBEW Joint Pension Trust of Chi., 553 F.3d at 197. Aetna accurately disclosed the amounts of its contributions to the DGA and RGA attributable to 2011; the $350,000 of payments made in 2011 included a late 2011 prepayment of dues for 2012, which were subsequently disclosed in the Company's 2012 Political Contributions Report. (2012 Political Contributions Report, Ex. 9, at 17.)  Nor could the supposed omission of $12,020 in contributions, the underreporting of a total of $1,000 in contributions, or over-reporting of a total of $18,250 in other contributions be material, given that these amounts are approximately 1.05%, 0.09 %, and 1.60%, respectively, of the over $1.1 million in contributions itemized in the 2011 Political Contributions Report, and approximately 0.11%, 0.01%, and 0.17%, respectively, of the $10.8 million in political spending disclosed in the 2011 Report.  See ECA & Local 134 IBEW Joint Pension Trust of Chi., 553 F.3d at 204.[9]

### B. Plaintiff Does Not Allege That Any Statements Made in the 2013 Proxy Statement Were Themselves Misleading

Count II further fails because Plaintiff has not identified an allegedly material misstatement or omission in the 2013 Proxy Statement itself.  At most Plaintiff appears to contend that Aetna's 2013 Proxy Statement gave shareholders the misleading impression that Aetna's disclosure of political contributions was more robust than it is by boasting about the nature and extent of such disclosures.  (See, e.g., Am. Compl. ¶¶ 38, 41.)  Such an assertion, however, cannot sustain Plaintiff's claim.

---

[9]  Plaintiff also alleges that the 2011 Report itself "suggest[ed]" that the Report includes all of Aetna's corporate political contributions because it purportedly describes the Report as "detailing the corporate political contributions of Aetna and its subsidiaries."  (Am. Compl. ¶ 24.)  The Report does no such thing.  (See 2011 Political Contributions Report, Ex. 2 at 5.)

First, to the extent Plaintiff is claiming as false the statement in the 2013 Proxy Statement that "the Company annually publishes a Political Contributions and Related Activity Report with extensive information about its political contributions," such a statement is not actionable.  (Id. ¶ 23.)  Like the statement in the 2012 Proxy Statement about the Board's view on the importance of transparency and accountability in connection with political spending disclosures, the Board's description of the disclosures as "extensive" is also non-actionable puffery.  (See Section II.A.3, supra, at 16.)  Even if this were not the case, the statement is not a statement of material fact; rather, it is a statement of opinion that is not actionable absent particularized factual allegations of objective and subjective falsity.  Bond Opportunity Fund, 2003 WL 21058251, at *5 (citing Va. Bankshares, Inc. v. Sandberg, 501 U.S. 1083, 1093-98 (1991)).  Such particularized factual allegations, if taken as true, "must show both that the directors did not actually hold the belief or opinion stated, and that the opinion stated was in fact incorrect."  Id.  No such allegations are found in the Amended Complaint.  Indeed, the Amended Complaint alleges nothing about Aetna's or the Board's subjective belief regarding whether the scope of the Political Contributions Reports was "extensive," let alone particularized factual allegations that, if true, would show that either the Company or its directors did not actually believe that the Reports were "extensive" or that the Reports were not, in fact, "extensive" as described.[10]

---

[10]  Plaintiff spills much ink on the Zicklin Index in an effort to demonstrate how Aetna supposedly touted its ranking in the 2013 Proxy Statement only to see its ranking fall thereafter, purportedly "as a direct result of revelations about the Company's true spending."  (Am. Compl. ¶ 40.)  On the face of the Zicklin Index for 2012 and 2013, however, Plaintiffs' contention does not hold up.  In the 2012 Zicklin Index, published on September 25, 2012, Aetna was ranked 15th out of 200 with a raw score of 52 and a percentage score of 72.  (2012 Zicklin Index, Ex. 10, at 30.)  In the 2013 Zicklin Index, published on September 24, 2013, Aetna's raw score was 53 and its percentage score was 75.7.  (2013 Zicklin Index, Ex. 11, at 30.)  Accordingly, Aetna's overall score—both in raw numbers and as a percentage—increased from 2012 to 2013, and its score regarding contributions to 501(c)(6) and 501(c)(4) organizations remained unchanged from year to year.  (2012 Zicklin Index, Ex. 10, at 30; 2013 Zicklin Index, Ex. 11, at 30.)

Second, to the extent that Plaintiff is claiming as false the statement in the 2013 Proxy Statement that the UUAC proposal was not necessary because "the Board currently has a robust oversight role over the Company's political contributions, policies, and practices," such a statement also cannot sustain Plaintiff's claim.  (See, e.g., Am. Compl. ¶ 42.)  Plaintiff does not dispute that, "[a]mong other activities, the Board reviews the Company's list of government affairs priorities, reviews the Company's [Political Contributions Reports] and oversees compliance with political contribution policy and process."  (2013 Proxy Statement, Ex. 5, at 78.)  Plaintiff instead appears to assume that the Board must not have carried out its responsibilities or else there would not be the alleged immaterial errors in the Political Contributions Reports themselves.  (Am. Compl.¶ 42.)  Not only are such allegations woefully inadequate to state a claim, see Iqbal, 556 U.S. at 678, but any claim based upon the description of the Board's oversight as robust also is not actionable for the same reasons discussed above. (See, supra, at 21.)

Finally, to the extent Plaintiff claims injunctive relief is warranted because this case is comparable to United Paperworkers Int'l Union v. Int'l Paper Co., 801 F. Supp. 1134 (S.D.N.Y. 1992), aff'd 985 F.2d 1190 (2d Cir. 1993), Plaintiff's argument also fails.  In that case the defendant was found to have issued a misleading proxy when it recommended a vote against a shareholder proposal intended to enhance accountability for environmental issues by stating that "environmental stewardship has always been an important part" of its business and that it had a "strong environmental compliance program," despite having "pled guilty to five felonies[] relating both to violations of hazardous waste laws and falsification of environmental reports;" agreeing to pay a fine that was "the second largest [criminal] fine ever assessed" for such crimes; being subject to Environmental Protection Agency "proceedings to debar [the issuer] from doing

business with the federal government;" and being subject to numerous civil and regulatory proceedings for environmental wrongdoing—none of which had been disclosed in the proxy statement.  See id. at 1137-39.  No facts or supposed discrepancies even remotely comparable to those at issue in United Paperworkers are alleged here.

## IV.   PLAINTIFF'S AMENDED COMPLAINT MUST BE DISMISSED BECAUSE HE IS NOT ENTITLED TO THE EXCLUSIVELY EQUITABLE RELIEF HE SEEKS

The Amended Complaint also must be dismissed because Plaintiff seeks solely equitable relief, yet fails to allege any of the elements required to obtain a permanent injunction.[11]  In addition to actual success on the merits—success that Plaintiff cannot achieve here—a plaintiff seeking permanent equitable relief must "demonstrate: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction."  eBay Inc. v. MercExchange, LLC, 547 U.S. 388, 391 (2006); see also Salinger v. Colting, 607 F.3d 68, 77-78 & n.7 (2d Cir. 2010); NRG Energy, Inc. v. Exelon Corp., 646 F. Supp. 2d 431, 448 (S.D.N.Y. 2009) (applying eBay to Section 14(e) claim seeking permanent injunction).  The Amended Complaint fails to adequately allege each of these elements, and, thus, Plaintiff is not entitled to the "extraordinary remedy" he seeks here. See Silverstein v. Penguin Putnam, Inc., 368 F.3d 77, 84 (2d Cir. 2004).

Plaintiff's claim of irreparable harm in support of his Section 14(a) claims is no different from his claim of irreparable harm that the Court rejected in connection with his preliminary

---

[11]   Among other relief, Plaintiff seeks to (i) void the votes of Aetna's shareholders rejecting the 2012 SEIU and the 2013 UUAC proposals; (ii) require Aetna to amend its Political Contributions Reports for 2006 through 2012 "to provide full and accurate information"; (iii) require Aetna to "inform shareholders that [it] provided inaccurate and incomplete information" in the 2012 and 2013 Proxy Statements; and (iv) appoint an individual within Aetna with the responsibility for ensuring that future Reports "accurately and completely reflect [Aetna's] political contributions."  (Am. Compl. ¶¶ A-J.)

injunction motion.  See Silberstein, 2014 WL 1388790, at *3 ("Plaintiff cannot rely on a

presumption of irreparable harm flowing from the violations that he alleges—he must make a

separate showing of irreparable harm."); see also Amoco Prod. Co. v. Vill. of Gambell, 480 U.S.

531, 546 n.12 (1987) ("The standard for a preliminary injunction is essentially the same as for a

permanent injunction with the exception that the plaintiff must show a likelihood of success on

the merits rather than actual success.").  To obtain an injunction, a plaintiff must allege not only

a past injury, but also a "real and immediate threat that the injury will be continued or repeated,"

Socialist Workers Party v. Att'y Gen. of the U.S., 642 F. Supp. 1357, 1425 (S.D.N.Y. 1986), and

"must show that irreparable harm is 'likely' to occur" in the absence of a permanent injunction,

Int'l Paper Co. v. Suwyn, 966 F. Supp. 246, 256 (S.D.N.Y. 1997).

   The Amended Complaint, however, only contains the formulaic recitations that Aetna's

2012 and 2013 Proxy Statements "render[ed] the shareholders unable to cast informed votes" on

the SEIU and UUAC proposals, (Am. Compl. ¶¶ 52, 63), and rendered shareholders "unwitting

agents of self-inflicted damage," (id. ¶¶ 47, 58).  Plaintiff does not allege that he—or any other

shareholder—would have voted differently had Aetna corrected the alleged errors in the Political

Contributions Reports, nor does he allege any harm that befell the Company as a result of the

allegedly uninformed votes.  Plaintiff's conclusory declaration of harm is insufficient here, just

as it was in the preliminary injunction context.  See Kelen v. World Fin. Network Nat'l Bank,

763 F. Supp. 2d 391, 394 (S.D.N.Y. 2011) (dismissing claim seeking equitable relief for

plaintiff's failure to "allege that she would suffer any injury whatsoever, let alone any irreparable

harm, if a permanent injunction were not granted").

   Plaintiff further is silent about the remaining elements required for the issuance of a

permanent injunction.  He includes no allegation that legal remedies cannot make him whole and

thus pleads no justification for the Court's use of its equitable powers.  Indeed, as a shareholder

Plaintiff has several alternative remedies available to him that do not require court intervention.

See, e.g., NRG Energy, Inc., 646 F. Supp. 2d at 448 (denying permanent injunction and noting

that plaintiff "is free to make its case to its shareholders as to why [the proposal] should be

rejected").  Plaintiff does not allege how, if at all, the balance of hardships warrants equitable

relief,[12] nor that a permanent injunction would not disserve the public interest.

Finally, Plaintiff's delay in bringing this litigation subverts his demand for equitable

relief.  The Political Contributions Reports underlying his claims were published in 2011 and

2012; the 2012 and 2013 Proxy Statements were filed on April 9, 2012 and April 5, 2013,

respectively.  Plaintiff nevertheless waited until December 2013 to bring this suit and should not

be rewarded for his delay by the award of equitable relief to which he is not entitled in any event.

See United Canso Oil & Gas Ltd. v. Clark, 497 F. Supp. 111, 115 (S.D.N.Y. 1980).

---

[12]  Not only would the relief Plaintiff seeks impose a burden on Defendants, including the expenditure of time, effort, and resources, but Plaintiff's request that the Court appoint an individual to oversee Aetna's political-contributions disclosure process also goes far beyond what is alleged in the Amended Complaint and what would be necessary to ensure compliance with an injunction in this matter.  See SEC v. First Jersey Sec., Inc., 101 F.3d 1450, 1478 (2d Cir. 1996) (finding the appointment of an investigator to determine whether defendant committed additional violations improper because the appointment was not to "oversee compliance with the court's final judgment.").

## CONCLUSION

For the foregoing reasons, Plaintiff cannot state a claim upon which relief can be granted, and Defendants respectfully request that the Court dismiss the Amended Complaint with prejudice.

Respectfully Submitted,

New York, New York
April 25, 2014

DAVIS POLK & WARDWELL LLP

By:  /s/ Dana M. Seshens
      Dana M. Seshens
      Jonathan D. Martin

450 Lexington Avenue
New York, New York 10017
(212) 450-4000

*Attorneys for Defendants Aetna Inc., Mark. T. Bertolini, Fernando Aguirre, Frank M. Clark, Betsy Z. Cohen, Molly J. Coye, Roger N. Farah, Barbara Hackman Franklin, Jeffrey E. Garten, Gerald Greenwald, Ellen M. Hancock, Richard J. Harrington, Edward J. Ludwig, and Joseph P. Newhouse.*