UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

Stephen M. Silberstein,

                Plaintiff,

     - against -

Aetna Inc., Mark T. Bertolini, Fernando Aguirre,
Frank M. Clark, Betsy Z. Cohen, Molly J. Coye,
Roger N. Farah, Barbara Hackman Franklin,
Jeffrey E. Garten, Gerald Greenwald, Ellen M.
Hancock, Richard J. Harrington, Edward J.
Ludwig, and Joseph P. Newhouse,

                Defendants.

13-CV-8759 (AJN)

ORAL ARGUMENT REQUESTED

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF
DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT**

DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, New York 10017
(212) 450-4000
*Attorneys for Defendants*

Dated:  June 6, 2014

# TABLE OF CONTENTS

PAGE

PRELIMINARY STATEMENT ................................................................................................1

ARGUMENT .............................................................................................................................2

I.      AETNA'S POLITICAL CONTRIBUTIONS REPORTS ARE NOT
        ACTIONABLE UNDER SECTION 14 ............................................................................3

        A.      Plaintiff Concedes That Aetna's 2012 and 2013 Proxy Statements Did
                Not "Incorporate by Reference" Aetna's Political Contributions Reports .............3

        B.      Aetna's 2010 and 2011 Political Contributions Reports Are Not Otherwise
                Actionable As "Proxy Solicitation Materials" ......................................................4

II.     COUNT I MUST BE DISMISSED BECAUSE PLAINTIFF FAILS TO ALLEGE
        A MATERIAL MISSTATEMENT OR OMISSION IN THE 2012 PROXY
        STATEMENT, AND HIS CLAIM IS TIME-BARRED IN ANY EVENT ......................5

III.    COUNT II MUST BE DISMISSED BECAUSE PLAINTIFF FAILS TO
        ALLEGE A MATERIAL MISSTATEMENT OR OMISSION IN THE 2013
        PROXY STATEMENT ....................................................................................................8

IV.     PLAINTIFF'S AMENDED COMPLAINT MUST BE DISMISSED BECAUSE
        HE IS NOT ENTITLED TO THE EXCLUSIVELY EQUITABLE RELIEF HE
        SEEKS .............................................................................................................................10

CONCLUSION ............................................................................................................................11

# TABLE OF AUTHORITIES

PAGE(S)

CASES

Ashcroft v. Iqbal,
   556 U.S. 662 (2009) ....................................................................................... 2, 3, 5

Bond Opportunity Fund v. Unilab Corp.,
   No. 99 Civ. 11074 (JSM), 2003 WL 21058251 (S.D.N.Y. May 9, 2003) .................................. 6

City of Pontiac Policemen's and Firemen's Ret. Sys. v. UBS AG,
   No. 12-4355-cv, 2014 WL 1778041 (2d. Cir. May 6, 2014) .................................... 8

eBay Inc. v. MercExchange, LLC,
   547 U.S. 388 (2006) ........................................................................................... 10

ECA & Local 134 IBEW Joint Pension Trust of Chicago v. JPMorgan Chase Co.,
   553 F.3d 187 (2d Cir. 2009) .................................................................................. 7

Fait v. Regions Fin. Corp.,
   655 F.3d 105 (2d Cir. 2011) .................................................................................. 8

Ganino v. Citizens Utils. Co.,
   228 F.3d 154 (2d Cir. 2000) .............................................................................. 6, 7

Hecco Ventures v. Avalon Energy Corp.,
   606 F. Supp. 512 (S.D.N.Y. 1985) ........................................................................ 6

Lapin v. Goldman Sachs Group, Inc.,
   506 F Supp. 2d 221 (S.D.N.Y. 2006) ..................................................................... 8

Lentell v. Merrill Lynch & Co., Inc.,
   396 F.3d 161 (2d Cir. 2005) .................................................................................. 7

Long Island Lighting Co. v. Barbash,
   779 F.2d 793 (2d Cir. 1985) .................................................................................. 5

Markewich v. Adikes,
   422 F. Supp. 1144 (E.D.N.Y. 1976) ...................................................................... 7

Resnik v. Swartz,
   303 F.3d 147 (2d Cir. 2002) .................................................................................. 2

Seinfeld v. Gray,
   404 F.3d 645 (2d Cir. 2005) .................................................................................. 2

Silverstein v. Penguin Putnam, Inc.,
   368 F.3d 77 (2d Cir. 2004)..................................................................................... 10

United Paperworkers Int'l Union v. Int'l Paper Co.,
   985 F.2d 1190 (2d Cir. 1993).................................................................................. 10

STATUTES & RULES

Fed. R. Civ. P. 12(b)(6)................................................................................................. 3

Fed. R. Civ. P. 12(f)...................................................................................................... 3

Section 14(a) of the Sec. Exch. Act of 1943, 15 U.S.C. § 78n(a)........................................ passim

SEC Rule 14a-1, 17 C.F.R. § 240.14a-1(l)(1)(iii) .............................................................. 5

SEC Rule 14a-9, 17 C.F.R. § 240.14a-9 ........................................................................... 2

15 U.S.C. § 78u-4(b)(3)(B)............................................................................................ 3

## PRELIMINARY STATEMENT

In what amounts to Plaintiff's fourth attempt to articulate a plausible basis for the relief that he seeks, Plaintiff fails yet again to do so.  Devoid of legal authority, replete with misstatements of law and fact, and analytically unsound, his opposition ("Opposition" or "Pl. Opp.") to Defendants' Motion to Dismiss effectively ignores his Amended Complaint and instead tries to convert Defendants' motion to dismiss into a mini-trial on the propriety of Aetna's political contributions.  Like the claims he asserts, Plaintiff's arguments in his Opposition are unfounded.

First, Aetna's 2010 and 2011 Political Contributions Reports, on which Plaintiff's claims almost exclusively are based, are not actionable under Section 14.[1]  As Plaintiff's Amended Complaint, preliminary injunction motion, and Opposition make clear, the immaterial alleged errors about which Plaintiff complains are not set forth in Aetna's 2012 or 2013 Proxy Statements; rather, they are set forth in Aetna's 2010 and 2011 Political Contributions Reports. Apparently abandoning his prior "incorporation by reference" theory to try and construe the Reports as proxy solicitations, Plaintiff now argues that the Reports are "proxy communications" by definition, even though the Amended Complaint contains no such allegation and the Reports are not published for the purpose—directly or indirectly—of procuring, withholding, or revoking a proxy.

Second, Plaintiff has failed to identify a single material misstatement or omission in either the 2012 or 2013 Proxy Statement.  With respect to the 2012 Proxy Statement, Plaintiff does not dispute that his claim hinges almost exclusively on an admittedly true statement of fact—that the Audit Committee reviews the Political Contributions Reports—and his suggestion

---

[1] Capitalized terms not defined herein have the definitions ascribed to them in Defendants' Memorandum of Law in Support of Defendants' Motion to Dismiss the Amended Complaint ("Defs. Mem.").

that this true statement is rendered false because it was "designed to persuade" shareholders to reach a conclusion with which Plaintiff disagrees is legally untenable.  Plaintiff otherwise attempts to rely on the alleged errors in the 2010 Political Contributions Report, which cannot sustain Plaintiff's 2012 Proxy Statement claim, even if the Report were actionable, because the alleged errors are immaterial as a matter of law.

With respect to the 2013 Proxy Statement, Plaintiff concedes that his claims rely on generic statements that Aetna's Political Contributions Reports contain "extensive" disclosures and that Board oversight of Aetna's political expenditures is "robust," but he fails to refute that such statements are not actionable because they are quintessential "puffery."  Controlling Second Circuit law disposes of his argument that puffery can become actionable if alleged to be "knowingly false," and he offers no support for his contention that Defendants can be held liable for "omitting" from the 2011 Political Contributions Report facts that were disclosed in the 2013 Proxy Statement itself.

Finally, Plaintiff's policy arguments in favor of injunctive relief cannot excuse his failure to allege any of the prerequisites for this "extraordinary" remedy.  For all of these reasons, and for the reasons set forth in Defendants' opening brief and below, Defendants respectfully submit that Plaintiff's Amended Complaint should be dismissed with prejudice.

## ARGUMENT

Plaintiff's Amended Complaint lacks the requisite factual allegations that, if taken as true, plausibly would show that Aetna's 2012 or 2013 Proxy Statement contained a false statement of material fact or omitted a material fact, the omission of which makes other statements in the Proxy Statements materially false or misleading.  17 C.F.R. § 240.14a-9; Seinfeld v. Gray, 404 F.3d 645, 650 (2d Cir. 2005); Resnik v. Swartz, 303 F.3d 147, 150-51 (2d Cir. 2002); see also Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  Plaintiff's improper attempt to

introduce evidence in his Opposition;[2] to circumvent the automatic statutory stay of discovery in

this case;[3] and to ignore Supreme Court precedent and argue for the abandoned "no set of facts"

standard on a motion to dismiss[4] cannot remedy his deficient pleading or salvage his

unsustainable claims.

## I.   AETNA'S POLITICAL CONTRIBUTIONS REPORTS ARE NOT ACTIONABLE UNDER SECTION 14

As Defendants demonstrated in their opening brief, Aetna's 2010 and 2011 Political

Contributions Reports are not actionable and, therefore, cannot provide a basis for Plaintiff's

Section 14(a) claims.  (See Defs. Mem. 9-12.)  Plaintiff now appears to agree with Defendants

that the Reports are not incorporated by reference into the 2012 and 2013 Proxy Statements,

respectively, and his argument that the Reports constitute proxy solicitations in their own right is

without merit.

### A.   Plaintiff Concedes That Aetna's 2012 and 2013 Proxy Statements Did Not "Incorporate by Reference" Aetna's Political Contributions Reports

Plaintiff no longer argues that the 2010 and 2011 Political Contributions Reports were

"incorporated by reference" into the 2012 and 2013 Proxy Statements, respectively.  (See Pl.

---

[2]  Either misunderstanding the parameters of a motion to dismiss, or electing to ignore them altogether, Plaintiff inexplicably has tried to create his own evidentiary record based on materials outside of his Amended Complaint, including witness declarations.  Not only is this type of evidence improper on a motion to dismiss pursuant to Rule 12(b)(6), but the evidence submitted also is riddled with errors and omissions, including in the sworn declarations themselves.  Defendants respectfully submit that Plaintiff's "evidence" is improper for consideration and should be stricken from the record.  See Fed. R. Civ. P. 12(f).  To the extent Plaintiff has included these materials in an effort to augment the allegations in his Amended Complaint, Plaintiff cannot amend his pleading through his Opposition.  (See Defs. Mem. 11 n.3.)

[3]  On May 20, 2014, Aetna received a letter from Plaintiff's attorneys demanding under Pennsylvania law that Aetna permit Plaintiff to examine Aetna's books and records relating to Aetna's political expenditures from January 2010 to the present.  Given the overlap between the subject matter and time frame covered by Plaintiff's demand letter and this litigation, Plaintiff's demand letter on its face appears designed to circumvent the PSLRA's automatic discovery stay, 15 U.S.C. § 78u-4(b)(3)(B), that indisputably applies in this case.

[4]  Plaintiff's purported reliance upon the pre-Iqbal "no set of facts" motion-to-dismiss standard at best reflects an inexcusable mistake of law.  (Pl. Opp. 8.)  Not only did Defendants cite to and rely on Iqbal, (see Defs. Mem. 7), but the "no set of facts" standard also was displaced by the Supreme Court's 2009 Iqbal ruling, which has been followed by courts in this—and in every—Circuit ever since.

Opp. 18-20.)  He instead advances the seemingly irrelevant argument that "incorporation by reference" does not "bar" the Court's "consideration" of the contents of the Reports.  (Id. at 18-19.)  He does not state for what purpose or to what end the Court can or should consider the Reports, nor does he articulate how such an argument supports his claims.  Rather, Plaintiff appears to conflate the distinct legal questions of what constitutes an actionable proxy solicitation under Section 14 and what comprises the "total mix of information" when assessing materiality to argue that the Political Contributions Reports can be considered as part of the "total mix of information."  Whether or not that is the case, it does not answer, let alone address, the threshold question presented by Defendants' Motion—whether the Political Contributions Reports can be considered a proxy solicitation in the first place.  Even if Plaintiff's failure to address this argument did not concede Defendants' point, which it does, Defendants have conclusively demonstrated that statements in the Reports are not actionable under Section 14(a) because such extrinsic statements are not incorporated by reference into the Proxy Statements as a matter of law.  (See Defs. Mem. 9-11.)

### B.    Aetna's 2010 and 2011 Political Contributions Reports Are Not Otherwise Actionable As "Proxy Solicitation Materials"

Plaintiff's newfound argument that the Political Contributions Reports constitute "proxy solicitation materials"—even though he does not allege this in his Amended Complaint and never before has raised this argument[5]—lacks merit.  (See id. at 11-12.)  Plaintiff agrees that governing SEC rules and controlling precedent require a proxy communication to be "reasonably calculated to result in the procurement, withholding or revocation of a proxy" and "designed

---

[5]  Plaintiff's footnote protestation to the contrary, i.e., that a "careful review" of his Amended Complaint will reveal such a theory, finds no support in the allegations Plaintiff cites (or in any others).  (See Pl. Opp. 21 n.13 (citing Am. Compl. ¶ 50 (alleging that 2010 report was "relied on" in 2012 Proxy Statement); id. ¶ 51(alleging that errors in 2010 report were material); id. ¶ 61 (alleging that 2013 Proxy Statement "relied on" and "referenced" 2011 report)).)

ultimately to accomplish such a result." (Pl. Opp. 20); 17 C.F.R. § 240.14a-1(l)(1)(iii); Long

Island Lighting Co. v. Barbash, 779 F.2d 793, 796 (2d Cir. 1985). But, rather than point to a

single factual allegation in the Amended Complaint that would demonstrate that the Political

Contributions Reports were "reasonably calculated" or "designed" to solicit a proxy—because

no such allegations exist—Plaintiff simply recites the standard and concludes, without support,

that the Reports were "designed ultimately" to "persuade" or convince shareholders—not in

connection with a particular proxy—but that "further disclosure and oversight were

unnecessary." (Pl. Opp. 20.) Such conclusory assertions, even if they had been included in the

Amended Complaint, which they are not, cannot survive a motion to dismiss.[6] See Iqbal, 556

U.S. at 678.

## II.   COUNT I MUST BE DISMISSED BECAUSE PLAINTIFF FAILS TO ALLEGE A MATERIAL MISSTATEMENT OR OMISSION IN THE 2012 PROXY STATEMENT, AND HIS CLAIM IS TIME-BARRED IN ANY EVENT

Plaintiff fails to identify a single material misstatement or omission in the 2012 Proxy

Statement. The sole "specific statement" that Plaintiff identifies as false and misleading is the

very statement that he alleges to be true—that "the Company's Audit Committee reviews the

Company's Political Contribution Report prior to publication." (Pl. Opp. 9-10; Am. Compl.

¶¶ 20-21.) Although Plaintiff argues that this admittedly true statement was false because it

"clearly was designed to persuade" shareholders that "current Board oversight was sufficient,"

(Pl. Opp. 9), Plaintiff makes no allegations to this effect and his unsubstantiated speculation

about Aetna's alleged motives cannot render a true statement materially misleading. See Bond

---

[6] Furthermore, as Defendants previously demonstrated and as Plaintiff fails to address, courts have long rejected the argument that a communication is a solicitation because it concerns a subject relevant to a later proxy solicitation. (See Defs. Mem. 12 (citing cases).) Plaintiff's argument, by contrast, ignores the focus of Rule 14a-1(l)(1)(iii)—whether a communication, when made, is "reasonably calculated" to result in proxy solicitation—and instead turns on whether a third party may decide at some future time to submit a shareholder proposal on a subject related to the prior corporate communication.

<u>Opportunity Fund v. Unilab Corp.</u>, No. 99 Civ. 11074 (JSM), 2003 WL 21058251, at *5 (S.D.N.Y. May 9, 2003).[7]

Plaintiff further argues that this true statement is misleading because it conveys the impression that Board political-expenditure oversight was sufficient when, in reality, political contributions not included in the Reports "escaped any Board review." (Pl. Opp. 9.)  Simply because the Audit Committee reviews the Political Contributions Reports does not mean that the Board or the Audit Committee is unaware of, or fails to exercise oversight over, Aetna's other political activities.  To the contrary, as the Board stated in its opposition to the 2012 SEIU proposal concerning additional disclosure of indirect political expenditures (and, notably, not enhanced Board oversight), "management regularly discusses public policy issues and <u>political activities</u> with our full Board."  (2012 Proxy Statement, attached as Exhibit 3 to the Declaration of Dana M. Seshens, dated April 25, 2014 (Dkt. No. 45), at 83 (emphasis added).)

Defendants also demonstrated in their opening brief that the supposed discrepancies in the 2010 Political Contributions Report would be immaterial as a matter of law even if they were made in a proxy solicitation—which they were not.  (<u>See</u> Defs. Mem. 14-15.)  Plaintiff disagrees because Defendants' purportedly "purely quantitative" standard for materiality cannot be sustained.  (Pl. Opp. 10-11 (citing <u>Ganino v. Citizens Utils. Co.</u>, 228 F.3d 154, 162 (2d Cir. 2000)).)  But the Second Circuit has rejected Plaintiff's very argument:

---

[7] Plaintiff's attempt to distinguish <u>Bond Opportunity Fund</u> is belied by the case itself.  (<u>See</u> Pl. Opp. 9.)  There the plaintiff alleged that a statement in the proxy regarding the retention of shares in a merger was false because the defendant did not disclose its "real reason" for retaining the shares.  In dismissing this claim, the court found that allegations as to "defendants' purposes and motives," supported only by "impermissible speculation and extrapolation," were insufficient to find that the plaintiffs adequately alleged a misleading statement under Section 14(a).  <u>Bond Opportunity Fund</u>, 2003 WL 21058251, at *5; <u>see also</u> <u>id.</u> at *6; <u>Hecco Ventures v. Avalon Energy Corp.</u>, 606 F. Supp. 512, 518 (S.D.N.Y. 1985) (finding that plaintiff "failed to provide a factual basis for its accusation that pertinent sections of the Proxy Statement . . . are in any respect false or misleading" based on the "true undisclosed reason" for defendants' actions).  The same circumstances are present here.

> While Ganino held that bright-line numerical tests for materiality are inappropriate, it did not exclude analysis based on, or even emphasis of, quantitative considerations.  According to Ganino, an alleged misrepresentation relating to less than two percent of defendant's assets, when taken in context, could be immaterial as a matter of law.

ECA & Local 134 IBEW Joint Pension Trust of Chicago v. JP Morgan Chase Co., 553 F.3d 187, 204 (2d Cir. 2009) (citing Ganino, 228 F.3d at 164).  Accordingly, the uncontested quantitative metrics set forth in Defendants' opening brief alone are sufficient to demonstrate that the alleged discrepancies in the 2010 Political Contributions Report are immaterial as a matter of law.  (See Defs. Mem. 14 (providing that the alleged errors in the 2010 Report constitute less than 1.52% of the political contributions and less than 0.24% of the political spending disclosed).)

But even if the Court were to consider qualitative materiality here, Plaintiff's claim fares no better.  The SEIU proposal included in the 2012 Proxy Statement asked shareholders to vote in favor of requiring Aetna to disclose its indirect political contributions or expenditures, if any, to certain types of organizations.  Whether the 2010 Political Contributions Report reflected a limited universe of quantitatively immaterial errors in connection with the disclosure of direct political contributions, as alleged, is unrelated to the purpose for which the proxy was solicited.  See Markewich v. Adikes, 422 F. Supp. 1144, 1147 (E.D.N.Y. 1976) ("What the cases clearly hold, however, is that in order to constitute a proxy violation an omission or misrepresentation of material fact must also relate to the purpose for which proxies are solicited."); cf. Lentell v. Merrill Lynch & Co., Inc., 396 F.3d 161, 174-75 (2d Cir. 2005).  Thus, far from being "clearly relevant" from a qualitative materiality perspective, (Pl. Opp. 11), these immaterial alleged errors are at most tangentially relevant, if at all.

Finally, Count I also must be dismissed for the independent reason that it is time-barred.  (See Defs. Mem. 16-18.)  Even if, as Plaintiff contends, he was not on inquiry notice at the time

the 2012 Proxy Statement was filed, he was placed on inquiry notice no later than June 2012, when—by Plaintiff's own admission—a journalist reported on Aetna's supposedly undisclosed AAN contribution, (see Pl. Opp. 6 n.7), and Plaintiff's own counsel issued a press release regarding the same, (see Defs. Mem. 17).

### III.    COUNT II MUST BE DISMISSED BECAUSE PLAINTIFF FAILS TO ALLEGE A MATERIAL MISSTATEMENT OR OMISSION IN THE 2013 PROXY STATEMENT

Plaintiff's claim based on the 2013 Proxy Statement similarly fails.  As set forth in Defendants' opening brief, this claim also must be dismissed because it is founded on statements that are non-actionable puffery, that are indisputably accurate, or that actually were disclosed in the 2013 Proxy Statement.

First, although Plaintiff admits that "'expressions of puffery and corporate optimism' may not give rise to securities violations," (Pl. Opp. 17), he argues that the statements in the 2013 Proxy Statement that Aetna's Political Contributions Reports contain "extensive" information and that Board oversight of Aetna's political expenditures is "robust" nevertheless are actionable because they are "false arguments" that Aetna should have known to be false, (id. at 17-18).[8]  This argument, too, is foreclosed by the Second Circuit, which recently held that puffery is not actionable even if alleged to be knowingly false.  City of Pontiac Policemen's and Firemen's Ret. Sys. v. UBS AG, No. 12-4355-cv, 2014 WL 1778041, at *5 (2d Cir. May 6, 2014) ("[g]eneral statements about reputation, integrity, and compliance with ethical norms are

---

[8]  To the extent Plaintiff's citation to Lapin v. Goldman Sachs Group, Inc., 506 F. Supp. 2d 221, 239 (S.D.N.Y. 2006), is an attempt to argue that these statements are actionable false statements of opinion, such an argument also fails.  (See Pl. Opp. 17.)  Even if Plaintiff had adequately alleged that Defendants could not reasonably hold these opinions—which he has not—that would allege only objective falsity (i.e., that the opinion is wrong).  For an opinion to be actionable, Plaintiff must also allege that Defendants did not actually believe the opinions at the time they were expressed, which he has not even attempted to do.  (See Defs. Mem. 21); Fait v. Regions Fin. Corp., 655 F.3d 105, 112 (2d Cir. 2011) (dismissing Securities Act claims where plaintiff alleged that "defendants should have reached different conclusions" regarding expressed opinion, but the complaint did not "plausibly allege that defendants did not believe the statements . . . at the time they made them").

inactionable 'puffery' . . . .  Plaintiffs' claim that these statements were knowingly and verifiably false when made does not cure their generality, which is what prevents them from rising to the level of materiality."); (see also Defs. Mem. 16 (citing cases).)

Second, Plaintiff cannot state a claim based on the concededly accurate statement of its rank on the 2012 Zicklin Index.  Plaintiff does not claim that Aetna misrepresented its ranking on the Index, and his newfound argument that Aetna's 2012 rank was "incomplete and inaccurate" because Aetna did not disclose its contribution to AAN is irrelevant and untrue.  (See Pl. Opp. 14.)  Aetna's Zicklin Index score for the disclosure of contributions to 501(c)(4) organizations was no different in 2013, after the AAN contribution was disclosed, than it was in 2012.[9]  (See Defs. Mem. 21 n.10.)

Third, Plaintiff cannot base his 2013 Proxy Statement claim on the alleged nondisclosure of contributions to the Chamber and AAN in the 2011 Political Contributions Report.  Even if the 2011 Report were actionable, which it is not, Plaintiff admits that the Chamber contribution was disclosed.  (See Pl. Opp. 6.)  Plaintiff further does not dispute that the AAN contribution also was disclosed in Aetna's 2013 Proxy Statement, which renders any omission of the contribution from the 2011 Political Contributions Report immaterial as a matter of law, (see Defs. Mem. 19), and Plaintiff offers no authority to the contrary.[10]  The remaining alleged errors in the 2011 Political Contributions Report are both quantitatively and qualitatively immaterial for

---

[9]  As Plaintiff admits, Aetna's  2013 Zicklin Index rank fell because other companies' scores increased, (see Pl. Opp. 6 n.8), not as a "result" of the disclosure of Aetna's AAN contribution, (id. at 14).

[10]  Plaintiff also argues that Aetna's alleged 2007 letter agreement with what is now referred to as Mercy Investment Services ("Mercy") obligated Aetna to disclose these contributions, among other things.  (See, e.g., Pl. Opp. 2, 10, 12, 13; see also Am. Compl. ¶¶ 10-11.)  Plaintiff—who obviously is not Mercy—offers no support for this contention, nor does he offer any support for how this supposed agreement could give rise to a Section 14(a) violation.  Furthermore, as noted, supra, at 3 n.2, the inclusion of evidence from Mercy is improper, and the Mercy declaration and attached exhibits are incomplete and inaccurate in several material respects.

the reasons set forth in Defendants' opening brief and above.  (See Defs. Mem. 18-20; supra, at 6-7.)

Finally, Plaintiff's reliance on United Paperworkers Int'l Union v. Int'l Paper Co., 985 F.2d 1190 (2d Cir. 1993), is misplaced.  (See Pl. Opp. 14-15.)  The severity of the undisclosed facts in United Paperworkers—which included guilty pleas to five felonies, the "second largest [criminal fine] ever assessed" for such crimes, and numerous civil and regulatory proceedings for wrongdoing—drove the conclusion that "the Company's record" rendered its proxy materially misleading.  United Paperworkers, 985 F.2d at 1198.  Further animating the court's decision was that, even when the company disclosed some information about its true environmental record in its annual report, those disclosures also were misleading, as well as the court's view that the board's response to the proposal at issue was a "calculated attempt" to mislead shareholders.  Id. at 1195-96.  No such facts are alleged here—nor could they be.  Because Plaintiff has not alleged any material omission—let alone an omission of the magnitude found in United Paperworkers—United Paperworkers has no application here.

## IV.    PLAINTIFF'S AMENDED COMPLAINT MUST BE DISMISSED BECAUSE HE IS NOT ENTITLED TO THE EXCLUSIVELY EQUITABLE RELIEF HE SEEKS

Plaintiff's public policy arguments regarding equitable relief fail to remedy any of the obvious deficiencies in his pleadings.  See Silverstein v. Penguin Putnam, Inc., 368 F.3d 77, 84 (2d Cir. 2004).  Plaintiff contends that Defendants' arguments would create a situation in which there is "no effective remedy" for Section 14(a) violations, (see Pl. Opp. 24), yet he fails to point to any allegation in his Amended Complaint that alleges any of the required elements of a permanent injunction.  See eBay Inc. v. MercExchange, LLC, 547 U.S. 388, 391 (2006).  Plaintiff's failure to plead these basic elements precludes him, as a threshold matter, from obtaining the "extraordinary relief" that he seeks.

## <u>CONCLUSION</u>

For the foregoing reasons, and for the reasons set forth in the Memorandum of Law in Support of Defendants' Motion to Dismiss Plaintiff's Amended Complaint, Defendants respectfully request that the Court dismiss the Amended Complaint with prejudice.

Respectfully submitted,

New York, New York
June 6, 2014

DAVIS POLK & WARDWELL LLP


By:   /s/ Dana M. Seshens
     Dana M. Seshens
     Jonathan D. Martin

450 Lexington Avenue
New York, New York 10017
(212) 450-4000

*Attorneys for Defendants Aetna Inc., Mark. T. Bertolini, Fernando Aguirre, Frank M. Clark, Betsy Z. Cohen, Molly J. Coye, Roger N. Farah, Barbara Hackman Franklin, Jeffrey E. Garten, Gerald Greenwald, Ellen M. Hancock, Richard J. Harrington, Edward J. Ludwig, and Joseph P. Newhouse.*

11